MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

HARTLEY M.K. WEST (CABN 191609)
WADE M. RHYNE (CABN 216799)
Assistant United States Attorneys

   1301 Clay Street, Suite 340S
   Oakland, CA 94612
   Telephone: (510) 637-3680
   Fax: (510) 637-3724
   E-Mail:   hartley.west@usdoj.gov
              wade.rhyne@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | ) | No. CR-11-00288 SBA |
|---|---|---|
| Plaintiff, | ) ) | **UNITED STATES' DESIGNATION OF EXPERT WITNESSES; SUMMARY OF TESTIMONY AND QUALIFICATIONS PURSUANT TO FED. R. CRIM. P. 16(a)(1)(G)** |
| v. | ) ) | |
| SUSAN XIAO-PING SU, | ) ) | |
| Defendant. | ) ) ) | Trial Date:  September 30, 2013<br>Time:  8:30 a.m.<br>Judge:  Hon. Saundra B. Armstrong |

     Plaintiff United States of America, by and through Assistant United States Attorneys Hartley M. K. West and Wade M. Rhyne, hereby discloses to defendant Susan Xiao-Ping Su a written summary of testimony that the government intends to use under Federal Rules of Evidence 702, 703, and/or 705 during its case in chief at trial. This disclosure is made pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G).

///

///

///

UNITED STATES' EXPERT DESIGNATION
No. CR-11-00288 SBA              -1-

Pursuant to Federal Rules of Criminal Procedure 16(b)(1)(C) and 16(a)(1)(G), the United States hereby requests that Defendant disclose any testimony that she intends to use at trial under Federal Rules of Evidence 702, 703, and/or 705. The United States hereby reserves the right to supplement this designation as warranted.

DATED: July 9, 2013            Respectfully submitted,

MELINDA HAAG
United States Attorney

/s/ WMR

WADE M. RHYNE
HARTLEY M.K. WEST
Assistant United States Attorneys

**I.      SUMMARY OF TESTIMONY OF CAROLYN BAYER-BORING**

The government intends to offer the testimony of Carolyn Bayer-Boring, Forensic Document Examiner, United States Department of Homeland Security (DHS), under Federal Rules of Evidence 702, 703, and/or 705.

**A.      The Witness's Opinions**

Ms. Bayer-Boring, will testify, among other things, about her forensic examination of and conclusions regarding certain documents in this case. She will opine that: (1) the signatures of defendant and Xiao Gang Su on the two-page "Articulation Agreement" dated February 2, 2009, were made by a blue ball point pen and by a color ink jet, respectively; (2) the signatures of defendant and Shy-Shenq Liou on the two-page "Articulation Agreement" dated February 2, 2009, were made by a blue gel-type or roller-ball pen and by an electrostatic printing process, respectively; (3) the signatures of defendant and Xiao Gan Su on the two-page "Course Articulation Agreement" dated May 1, 2008, were both made by an electrostatic printing process; and (4) the signature of Shy Shenq Liou on the two-page undated "Course Articulation Agreement" was made by an electrostatic printing process. She will explain that the electrostatic printing process is a widely-available office machine system that uses colored toner, such as photocopier, facsimile, or laser printer.

Ms. Bayer-Boring will also testify about her examination process, which included microscopic, instrumental, and comparative examinations. She will state that defendant's signatures were original and authentic signatures (not traced or modeled), but that the Xiao Gang Su and Shy-Shenq Liou signatures both overlaid exactly, indicating a common-source association. Put another way, the Xiao Gang Su and Shy-Shenq Liou signatures are copies that were inserted into these documents by an ink jet printer.

**B.      The Witness's Qualifications**

The witness's qualifications are fully set forth in the attached curriculum vitae. (See Attachment 1.)

///

///

UNITED STATES' EXPERT DESIGNATION
No. CR-11-00288 SBA                    -3-

**C.     The Bases and Reasons for the Witness's Opinions**:

The bases and reasons for Ms. Bayer-Boring's opinions are her training, experience, and familiarity with the forensic document analysis and examinations, and may include the evidence analyzed in this case and the reports of the various law enforcement agents involved in the current case. All documents supporting Ms. Bayer-Boring's opinions have been disclosed to Defendant.

**II.    SUMMARY OF TESTIMONY OF WILLIAM ELLIOT**

The government intends to use the testimony of Special Agent William R. Elliott of the United States Department of State under Federal Rules of Evidence 702, 703, and/or 705.

**A.     The Witness's Opinions**

Special Agent Elliot will testify about the United States' student visa program. He will explain that the Immigration and Nationality Act, 8 U.S.C. § 1101, identifies several categories of foreign nationals who may be admitted to the United States for nonimmigrant purposes. One such category, designated "F-1" based on the applicable statutory subsection, comprises bona fide students coming temporarily to study at an approved school. He will explain the mechanics for an alien to obtain an F-1 visa and to obtain entry into the United States, including the need to present a Certificate of Eligibility for Nonimmigrant (F-1) Student Status, also known as a Form I-20. SA Elliott will testify that students entering the United States on a F-1 visa are admitted for a temporary period called "duration of status." Whether a student is in status is determined by DHS.

**B.     The Witness's Qualifications**

The witness's qualifications are fully set forth in the attached curriculum vitae. (See Attachment 2.)

**C.     The Bases and Reasons for the Witness's Opinions**

The bases and reasons for Special Agent Elliot's opinions are his training, experience, and familiarity with F-1 visa program, statutes, and regulations along with the evidence developed in this case. All documents supporting Special Agent Elliot's opinions have been disclosed to Defendant.

III. **SUMMARY OF TESTIMONY OF JASON KANNO**

The government intends to offer the testimony of Jason Kanno, who is an Adjudicator at the Analysis and Operations Center of the Student and Exchange Visitor Program for DHS, under Federal Rules of Evidence 702, 703, and/or 705.

A. **The Witness's Opinions**

Mr. Kanno will testify that a school seeking approval to admit foreign students must submit a Petition for Approval of School for Attendance by Nonimmigrant Student, also called a Form I-17, to DHS, Student and Exchange Visitor Program (SEVP) in Washington, DC. Through the I-17, the school must establish that (1) it is a bona fide school; (2) it is an established institution of learning; (3) it has the necessary facilities, personnel, and finances to instruct recognized courses; and (4) it actually is engaged in instructing those courses. An unaccredited school must also provide "articulation agreements" establishing that its courses have been and are unconditionally accepted to at least three accredited institutions of higher learning. Mr. Kanno will explain that DHS relies on the material representations made by the school within the Form I-17.

He will also state that a school's Form I-17 must identify "Designated School Officials" (DSOs), who certify their knowledge of and intent to comply with student immigration laws and regulations. Once a school is approved, its DSOs are issued login IDs and passwords enabling them to access the Student and Exchange Visitor Information System (SEVIS). He will explain that SEVIS is a nonpublic computer system located in Rockville, Maryland, which is used by the United States government and operated through SEVP for the purpose of collecting nonimmigrant student information from approved schools and monitoring such aliens' status. Upon login, a pop-up warning banner advises the user that SEVIS is a Privacy Act system of records for authorized users only, and that use evidencing possible criminal activity may be reported to law enforcement. He will describe the functionality of SEVIS along with the rules and regulations as to who may access SEVIS and how it may be lawfully used as part of SEVP.

Mr. Kanno will testify that, to enter the United States on a student visa, a foreign national must present a Certificate of Eligibility for Nonimmigrant (F-1) Student Status, also known as a

UNITED STATES' EXPERT DESIGNATION
No. CR-11-00288 SBA                    -5-

Form I-20, which is printed from SEVIS. He will explain that an initial I-20 certifies that the student has been accepted for enrollment in a full course of study, and is signed by a DSO. Mr. Kanno will further testify that I-17 schools activate the student's SEVIS record and prints an "active I-20" after the student arrives and begins making normal progress toward a full course of study, with physical attendance as an element.

Mr. Kanno will testify that students entering the United States on a F-1 visa are admitted for a temporary period called "duration of status," which federal regulations define as the time during which the student is pursuing a full course of study at an approved school. He will further explain that pursuing a full course of study includes a physical attendance requirement for classes and that, when a student stops pursuing a full course of study, the duration of status ends and the temporary period for which the individual was admitted expires. The school's DSOs are required to report in SEVIS within 21 days the failure of any student to maintain active status.

Mr. Kanno will explain that DHS relies on the material representations entered into SEVIS by the DSOs, including all student biographical information, financial information, the level of degree sought, address or record, and other contact information. He will explain that the level of the degree the student is pursuing will determine whether the student will qualify for work authorization while attending school. Mr. Kanno will also discuss the requirements for an F-1 student to properly transfer to another institution.

Mr. Kanno will further testify about SEVP's process of reviewing submissions from schools and students, and how SEVP looks for certain "fraud indicators" during its review process.

**B.     The Witness's Qualifications**:

The witness's qualifications are fully set forth in the attached curriculum vitae. (See Attachment 3.)

**C.     The Bases and Reasons for the Witness's Opinions**:

The bases and reasons for Mr. Kanno's opinions are his training, experience, and familiarity with SEVIS and the pertinent statutes and regulations, along with the evidence

developed in this case.  All documents supporting Mr. Kanno's opinions have been disclosed to Defendant.

### IV. SUMMARY OF TESTIMONY OF MICHAEL BROWN

The government intends to offer the testimony of Computer Forensic Analyst Michael Brown, DHS Homeland Security Investigations, under Federal Rules of Evidence 702, 703, and/or 705.

**A.  The Witness's Opinions**:

Mr. Brown will testify, among other things, about the foundation for admitting evidence that was extracted from the digital media in this case.  He will describe the process and procedure in extracting emails, documents, correspondence, transcripts, diplomas, and evidence from the digital storage devices seized from TVU and defendant.  He will also explain how emails are sent, received, and stored on a computer or on an Internet Service Provider's server.

**B.  The Witness's Qualifications**:

The witness's qualifications are fully set forth in the attached curriculum vitae.  (See Attachment 4.)

**C.  The Bases and Reasons for the Witness's Opinions**:

The bases and reasons for Mr. Brown's opinions are his training, experience, and familiarity with computer forensic analysis, extraction of evidence from computers, to include email and file header information.  Computer forensic guy will also testify about his review of the emails as extracted from the seized computers in this case.  All documents supporting Mr. Brown's opinions have been disclosed to Defendant.