MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

DAVID COUNTRYMAN (CABN 226995)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7303
    FAX: (415) 436-7234
    david.countryman@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>SUSAN XIAO-PING SU,<br><br>    Defendant. | CASE NO. CR 11-00288 JST<br><br>APPLICATION OF THE UNITED STATES FOR A PRELIMINARY ORDER OF FORFEITURE |

The United States of America, by and through the undersigned Assistant United States Attorney(s), respectfully submits this Application of the United States for Issuance of a Preliminary Order of Forfeiture in the above-captioned case. In support thereof, the United States sets forth the following:

### BACKGROUND

Between September 2008 and January 2011, defendant Susan Su engaged in a scheme to defraud non-immigrant aliens of money and property, specifically tuition and other fees, through her establishment of a school called Tri-Valley University ("TVU"), located in Pleasanton, California. In furtherance of her scheme, she fraudulently obtained authorization from the U.S. Department of

Homeland Security ("DHS"), Student and Exchange Visitor Program ("SEVP"), to admit foreign students. Su then collected more than $5.6 million in tuition and other payments from the aliens in exchange for maintaining them in an active student visa status. Su employed some of these aliens at TVU to process student payments, causing them to access government databases without authorization and to create fraudulent visa-related documents. Defendant Su then laundered some of these proceeds through the purchase of millions of dollars of real property and a Mercedes.

On November 10, 2011, the Grand Jury returned a thirty-five count Superseding Indictment, charging Su with wire fraud, in violation of 18 U.S.C. § 1343 (Counts 1-12); mail fraud, in violation of 18 U.S.C. § 1341 (Counts 13-14); conspiracy to commit visa fraud, in violation of 18 U.S.C. § 371 (Count 15); visa fraud, in violation of 18 U.S.C. § 1546(a) (Counts 16-19); use of a false document, in violation of 18 U.S.C. § 1001(a)(3) (Count 20); false statements, in violation of 18 U.S.C. § 1001(a)(2) (Count 21); alien harboring, in violation of 8 U.S.C. § 1324(a)(1)(A) (Counts 22-24); unauthorized access, in violation of 18 U.S.C. § 1030(a)(3) (Count 25); and money laundering, in violation of 18 U.S.C. § 1957 (Counts 26-35). The Superseding Indictment also contains four forfeiture allegations. United States v. Su, CR 11-00288 JST, Docket No. ("ECF") 21.[1]

On March 24, 2014, the jury returned guilty verdicts against Su, finding her guilty of all remaining counts charged in the Superseding Indictment. ECF 119.

## LEGAL DISCUSSION

Criminal forfeiture is part of the sentence imposed on a person who has been found guilty in a criminal case. Libretti v. United States, 516 U.S. 29 (1995). As a part of the criminal sentence, the government need only establish the forfeiture by a preponderance of the evidence. Id. However, unlike discretionary sentencing considerations, criminal forfeiture is mandatory. United States v. Monsanto, 491 U.S. 600, 606 (1989); United States v. Davis, 706 F.3d 1081, 1084 (9th Cir. 2013); United States v. Newman, 659 F.3d 1235, 1239 (9th Cir. 2011). Therefore, "unlike a fine, which the district court retains discretion to reduce or eliminate, the district court has no discretion to reduce or eliminate mandatory criminal forfeiture." Newman, 659 F.3d. at 1240. Similarly, because forfeiture is separate from

---

[1] On March 18, 2014, the United States dismissed Counts 23s, 28s, 30s, and 33s.

restitution, defendants may be required to pay restitution in addition to forfeiture for the same criminal activity, and payment of restitution does not entitle a defendant to a reduction in the forfeiture amount. Id. at 1241.

One of the chief goals of forfeiture is to remove the profit from crime by separating the criminal from his or her dishonest gains. See Newman, 659 F.3d 1235, 1242 (9th Cir. 2011); United States v. Casey, 444 F.3d 1071, 1073 (9th Cir. 2006). To that end, if property appreciates in value or earns interest, any appreciation or interest is subject to forfeiture. See United States v. Betancourt, 422 F.3d 240, 250 (5th Cir. 2005); United States v. Hawkey, 148 F.3d 920, 928 (8th Cir. 1998). Conversely, forfeiture is not limited to specific assets directly traceable to the offense: it can also take the form of an *in personam* judgment against the defendant, even where the defendant has spent or otherwise dissipated the funds and is insolvent. See United States v. Newman, 659 F.3d 1235, 1242-43 (9th Cir. 2011) citing Federal Rule of Criminal Procedure 32.2.[2]

The United States is entitled to criminal forfeiture under three theories: (1) forfeiture of the proceeds from Su's fraudulent scheme; (2) forfeiture of property "involved in" her money laundering; and (3) any property that facilitated the alien harboring. ECF 21 12:6-18:11.

Pursuant to 28 U.S.C. § 2461(c), 18 U.S.C. § 981(a)(1)(C), and 18 U.S.C. § 982(a)(6)(A)(ii), upon conviction, the government is entitled to criminally forfeit any property, real or personal, which constitutes or is derived from proceeds traceable to the charged wire fraud, mail fraud, visa fraud, and alien harboring. In determining proceeds where the defendant has entered into a conspiracy, the proceeds of his or her crime is equal the total amount of the proceeds obtained by the conspiracy as a whole. United States v. Newman, 659 F.3d 1235, 1243-46 (9th Cir. 2011).

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction, the government is entitled to criminally forfeit any property, real or personal, "involved in" the charged money laundering. Property that is the subject of a purchase, sale, exchange, or disbursement—the subject matter or corpus of the transaction— is involved in the purchase, sale, or exchange. See United States v. Nektalov, 461 F.3d 309, 319 (2d

---

[2] "Congress sought to punish equally the thief who carefully saves his stolen loot and the thief who spends the loot on 'wine, women, and song.'" Newman, 659 F.3d at 1243 citing Casey, 444 F.3d at 1073-74.

Cir. 2006); United States v. Kennedy, 201 F.3d 1324, 1326 (11th Cir. 2000); United States v. One 1988 Prevost Liberty Motor Home, 952 F. Supp. 1180, 1210 (S.D. Tex. 1996). Such property is forfeitable in its entirety, even if some legitimate funds were also invested in the property. See United States v. Kivanc, 714 F.3d 782, 794-95 (4th Cir. 2013); United States v. Huber, 404 F.3d 1047, 1060 n.11 (8th Cir. 2005).

Pursuant to 18 U.S.C. § 982(a)(6)(A)(ii)(II), upon conviction, the government is entitled to criminally forfeit any property, real or personal, that is used to facilitate, or is intended to be used to facilitate the charged alien harboring. "Facilitating property," is not limited to property that is integral, essential or indispensable to the offense, but includes any property that makes the prohibited conduct "less difficult or more or less free from obstruction or hindrance." See United States v. Huber, 404 F.3d 1047, 1060 (8th Cir. 2005); see also United States v. Schifferli, 895 F.2d 987, 990 (4th Cir. 1990). This includes real property where harbored aliens are employed. See United States v. Sabhnani, 599 F.3d 215, 263 (2d Cir. 2010).

Rule 32.2 (b)(1) of the Federal Rules of Criminal Procedure provides that as soon as practicable after entering a guilty verdict or accepting a plea of guilty or nolo contendere on any count in an indictment or information with regard to which criminal forfeiture is sought, the court shall determine what property is subject to forfeiture under the applicable statute. If the government seeks a personal money judgment against the defendant, the court shall determine the amount of money that the defendant will be ordered to pay. Rule 32.2(b)(1)(A). The court's determination may be based on evidence already in the record, or on evidence or information presented by the parties at a hearing after the verdict or finding of guilt. Pursuant to Rule 32.2(b)(2), if the court finds that property is subject to forfeiture, it shall promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment or directing the forfeiture of specific property without regard to any third party's interest in all or part of it. Determining whether a third party has such an interest shall be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c).

Rule 32.2(b)(3) further provides that the entry of a preliminary order of forfeiture authorizes the Attorney General (or a designee) to seize the specific property subject to forfeiture; to conduct any

discovery the court considers proper in identifying, locating, or disposing of the property; and to commence proceedings that comply with any statutes governing third party rights. At sentencing or at any time before sentencing if the defendant consents the order of forfeiture becomes final as to the defendant and shall be made part of the sentence and included in the judgment. The court may include in the order of forfeiture conditions reasonably necessary to preserve the property's value pending any appeal.

## SU'S SCHEME GENERATED MORE THAN $5.6 MILLION IN PROCEEDS

Count 15 of the Superseding Indictment charged defendant Su with participating in a conspiracy to commit visa fraud. ECF 21, 6:20-28. Specifically, it was charged that between February 2009 through and January 19, 2011, defendant Su conspired to commit fraud against the United States by forging and falsely making "Certificates of Eligibility for Nonimmigrant (F-1) Student Status," known as Forms I-20. Id. At trial, the government presented evidence that TVU's "Petition for Approval of School for Attendance by Nonimmigrant Student," known a Form I-17, which authorized TVU to issue Forms I-20, contained materially false statements. These fraudulent submissions formed the basis of Counts 1, 13, and 14 (the "I-17 Counts"). On March 24, 2014, the jury found the defendant guilty of that conspiracy, the I-17 Counts, as well as 15 related counts of fraud (Counts 2-12 and 16-19) and two counts of alien harboring (Counts 22 and 24). ECF 119.

Without the fraudulently obtained I-17, TVU could not have generated Forms I-20 or admitted F-1 students. See March 4, 2014 Trial Transcript, Susan Warren. Thus, all tuition payments from F-1 students are proceeds of the visa fraud conspiracy and the I-17 Counts. At trial, Special Agent Jason Mackey testified that he reviewed bank records, invoices, and credit card receipts for payments made to Tri Valley University. He compared tuition payments with names on the SEVIS database to determine whether or not the payment was coming from or on behalf of an F-1 student. March 18, 2014 Trial Transcript, Mackey Testimony ("Mackey Tr."), pp. Mackey Tr., pp. 7-18. Special Agent Mackey used that information to calculate that TVU and defendant Su received a total of $5,601,844.72 of tuition fees from F-1 students.

///

| Bank Accounts | Total F-1 Payments by Account |
|---|---|
| WFB# 0454 | $2,571,927.00 |
| WFB# 3640 | $105,628.52 |
| WFB# 4780 | $16,517.00 |
| PayPal# 1921 | $2,907,772.20 |
| F-1 Payment Total | $5,601,844.72 |

See Trial Exhibits 109 and 653. Therefore, because these tuition payments are fraud proceeds, the government is entitled to forfeiture of the $5,601,844.72 of proceeds from the fraud for which defendant Su has been convicted pursuant to 28 U.S.C. § 2461(c), 18 U.S.C. § 981(a)(1)(C), and 18 U.S.C. § 982(a)(6)(A)(ii).

The United States has shown that funds seized from the following accounts consisted of proceeds traceable to the defendant's fraud:

1. $63,317.59 from Wells Fargo account ending in 9937 held in the name TRI-VALLEY UNIVERSITY, INC. / Susan Xiao-Ping SU (hereafter "Account 9937");

2. $3,000.18 from Wells Fargo account ending in 6782 held in the name TRI-VALLEY UNIVERSITY, INC. / Susan Xiao-Ping SU ("Account 6282");

3. $100.00 from Wells Fargo account ending in 2773 held in the name TRI-VALLEY UNIVERSITY, INC. / Susan Xiao-Ping SU ("Account 2773");

4. $37,526.98 from Citibank account ending in 3045 held in the name Susan X SU ("Account 3045");

5. $934,058.04 seized from Pay Pal account ending in 1921 held in the name Susan SU / ssu@trivalleyuniversity.org ("Account 1921");

6. $15,184.71 seized from Wells Fargo account ending in 3640 held in the name TRI-VALLEY UNIVERSITY, INC. / Susan Xiao-Ping SU ("Account 3640");

7. $338,319.07 seized from Wells Fargo account ending in 4780 held in the name TRI-VALLEY UNIVERSITY, INC. / Susan Xiao-Ping SU ("Account 4780");

8. $227,439.98 seized from Wells Fargo account ending in 0454 held in the name TRI-VALLEY UNIVERSITY, INC. / Susan Xiao-Ping SU ("Account 0454");

9. $30,000.00 seized from Citibank account ending in 5029 held in the name Susan X. SU ("Account 5029" collectively the "Bank Proceeds");

Special Agent Mackey traced the deposit of over $5.6 million in fraud proceeds deposits into Accounts 1921, 0454, 3640, and 4780. See Mackey Tr. 22-32; Trial Exhibits 109, 501, 501A, 501B, 502, 503, 503A, 650, and 651. He then followed the movement of fraud proceeds between and among those accounts and into Accounts 9937, 6782, 2773, 5029, and 3045. Mackey Tr. 22-32, 55-58; Trial Exhibits 109, 504, 505, 505A, 505B, 506, 507, 508, 509 and 651; see also January 18, 2011 Affidavit by Special Agent Jason Mackey in Support of Seizure Warrants ¶¶ 11-13, attached hereto as Exhibit A; January 21, 2011 Affidavit by Special Agent Bryan Jang in Support of Seizure Warrant ¶¶ 16-17, attached hereto as Exhibit B. Therefore, the Bank Proceeds are subject to forfeiture pursuant to 28 U.S.C. § 2461(c), 18 U.S.C. § 981(a)(1)(C), and 18 U.S.C. § 982(a)(6)(A)(ii).

## PROPERTY INVOLVED IN MONEY LAUNDERING

The jury found the defendant guilty of seven counts of money laundering, in violation of 18 U.S.C. § 1957: Counts 26, 27, 29, 31, 34, and 35. Verdict Form, ECF 119. Each of those counts involved the purchase of a vehicle or one of five pieces of real property in violation of 18 U.S.C. § 1957:

1. Count 26, a $36,783.61 check used to purchase a 2009 Mercedes Benz, VIN XXXXXXXX;
2. Count 27, a $78,700.00 wire transfer to purchase 1087 Murrieta Blvd., #113, Livermore, CA;
3. Count 29, a $160,986.87 cashier's check used to purchase 405 Boulder Court, Suite 800, Pleasanton, CA;
4. Counts 31, a $261,307.49 cashier's check used to purchase 405 Boulder Court, Suite 700, Pleasanton, CA;
5. Count 32, a $700,000.00 cashier's check used to purchase 2890 Victoria Ridge Court, Pleasanton, CA;
6. Counts 34, a $600,000.00 wire transfer used to purchase 1371 Germano Way, Pleasanton, CA; and

APP. PRELIM. ORDER OF FORFEITURE
CR 11-00288 JST

7

7. Counts 34, a $1,200,000.00 wire transfer used to purchase 1371 Germano Way, Pleasanton, CA; (collectively the "Money Laundering Property").

ECF 119; see also Mackey Tr., pp. 32-37, 39-55. Therefore, because the Money Laundering Property was subject matter of the money laundering transactions for which defendant Su was convicted, the Money Laundering Property is subject to forfeiture pursuant to 18 U.S.C. § 982(a)(1).

## PROPERTY THAT FACILITATED ALIEN HARBORING

The jury found the defendant guilty of two counts of alien harboring, in violation of 8 U.S.C. § 1324(a)(1)(A): Counts 22 and 24. Verdict Form, ECF 119. Those counts charged Su with harboring and shielding aliens from detection through employment at TVU for the purpose of commercial advantage and private financial gain. Superseding Indictment, ECF 21. 18 U.S.C. § 982(a)(6)(A)(ii)(II) explicitly authorizes the forfeiture of real property used to facilitate alien harboring, and courts have forfeited real property where aliens are employed. See United States v. Sabhnani, 599 F.3d 215, 263 (2d Cir. 2010). From the evidence presented at trial, it is clear the TVU's offices were integral to the harboring of the aliens it employed.

In Sabhnani, 599 F.3d at 225, the defendants were convicted of harboring aliens, who were forced to work as domestic servants. Upon conviction, the district court forfeited the defendants' home, which contained a home office, where the aliens worked but did not live. Id. 261-62. On appeal, the defendants challenged the forfeiture of the office. In upholding the forfeiture of the office, the Court of Appeals held it had "no difficulty concluding that the office was 'used or intended to be used to commit or to facilitate the commission of' the crimes." Id. at 261. The court noted:

> The testimony at trial establishing that Samirah and Enung cleaned the bathroom of the office on Mahender's instructions, washed the office floor, and served Mahender drinks in the office, demonstrates that some of the labor the maids were forced to do took place in the office. Moreover, because the maids were "concealed" within the residence and they entered the office on occasion, the office was also used to "conceal" them in violation of the harboring statute. Consequently Mahender's office was used to commit the crimes at issue, and it was properly included in the forfeiture.

Id. at 261-62. Like Sabhnani, the aliens Su harbored were employed at TVU's offices at 405 Boulder Court, Suites 700 and 800. Similarly, because the aliens physically worked in the offices, and their

student visas provided them with a purported reason to be in the county, the offices concealed them in violation of the harboring statute. Therefore, 405 Boulder Court, Suites 700 and 800 are subject to forfeiture pursuant to 18 U.S.C. § 982(a)(6)(A)(ii), as property used to facilitate, or intended to be used to facilitate the charged alien harboring.

## CONCLUSION

WHEREFORE, for the foregoing reasons, and based on the record herein, the United States respectfully requests that this Court enter a Preliminary Order of Forfeiture which provides for the following:

a. forfeiture of the Money Laundering Property and the Bank Proceeds, and all interest and appreciation accrued thereon, to the United States;

b. to the extent that forfeiture of the Money Laundering Property and the Bank Proceeds does not total at least $5,601,844.72, entry of a forfeiture money judgment in the amount of the difference between the forfeited funds and $5,601,844.72;

c. directs the United States, through its appropriate agency, to seize the forfeited property forthwith;

d. authorizes the government to conduct discovery in order to identify, locate or dispose of property subject to forfeiture in accordance with Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure;

e. directs the United States to publish on a government website for at least thirty days, notice of this Order, notice of the government's intent to dispose of the property in such manner as the Attorney General may direct and provide notice that any person, other than the defendants, having or claiming a legal interest in the property must file a petition with the Court and serve a copy on government counsel within thirty (30) days of the final publication of notice or of receipt of actual notice, whichever is earlier; and

///

///

///

1     f.     the Court retains jurisdiction to enforce the Preliminary Order of Forfeiture, and to amend it as necessary, pursuant to Federal Rule of Criminal Procedure 32.2(e).

DATED:                              Respectfully submitted,

MELINDA HAAG
United States Attorney

/s/
DAVID COUNTRYMAN
Assistant United States Attorney

APP. PRELIM. ORDER OF FORFEITURE
CR 11-00288 JST

10

# Exhibit A

# SEALED

Case4:11-cr-00288-JST Document129 Filed05/01/14 Page12 of 14

# Exhibit B

# SEALED