MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

DAVID B. COUNTRYMAN (CABN 226995)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7303
    FAX: (415) 436-7234
    Email: david.countryman@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 11-0288 JST |
| Plaintiff, | NOTICE OF FILING EXHBITS A AND B TO THE APPLICATION OF THE UNITED STATES FOR PRELIMINARY ORDER OF FORFEITURE |
| v. | |
| SUSAN XIAO-PING SU, | |
| Defendant. | |

The United States hereby submits Exhibit A and Exhibit B to the Application of the United States for a Preliminary Order of Forfeiture which was filed on May 1, 2014.

DATED: May 2, 2014

Respectfully submitted,

MELINDA HAAG
United States Attorney

/S/
DAVID B. COUNTRYMAN
Assistant United States Attorney

Notice of Filing Exhibit A and B
CR 11-0288 JST

# Exhibit A

# AFFIDAVIT BY SPECIAL AGENT JASON MACKEY IN SUPPORT OF SEIZURE WARRANTS

## I. BACKGROUND AND EXPERIENCE

1. I, Jason G. Mackey, being duly sworn, hereby depose and state:

    I have been a Special Agent ("SA") with the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), or its predecessor agency, the United States Customs Service since November of 2002. I am currently assigned to the Document and Benefit Fraud Task Force for the San Francisco, California, Office of the Special Agent-in-Charge ("SAC San Francisco"). I obtained my Bachelor of Art degree in Political Science from the University of California, Berkeley. I am a graduate of the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia, where I completed the Criminal Investigator Training Program and the Customs Basic Enforcement School. While attending FLETC, I received training in conducting financial investigations and the identification and seizure of assets related to criminal activity. Since that time, I have attended financial investigation trainings and seminars, conversed with more experienced agents regarding money laundering methods, and have participated in numerous financial investigations. Among my current responsibilities are the investigation of violations of federal statutes and regulations governing visa fraud and money laundering, as well as enforcing various asset forfeiture statutes related to these violations.

2. I am a case agent investigating TRI-VALLEY UNIVERSITY ("TVU") and its president, Susan SU ("SU"), for offenses related to visa and wire fraud.

3. I make this affidavit in support of the issuance of seizure warrants for the following property listed below and in Attachment A ("subject property"):

    a. All funds in Wells Fargo business checking account number 6936720454 in the name TRI-VALLEY UNIVERSITY, INC. / Susan Xiao-Ping SU (hereafter "Wells Fargo Account 0454").

    b. All funds in Wells Fargo business savings account number 1342473640 in the name TRI-VALLEY UNIVERSITY, INC. / Susan Xiao-Ping SU (hereafter "Wells Fargo Account 3640").

    c. All funds in Wells Fargo business high yield savings account number 3523424780 in the name TRI-VALLEY UNIVERSITY, INC. / Susan Xaio-Ping SU (hereafter "Wells Fargo Account 4780").

    d. All funds in PayPal account 16197587799262671921 in the name Susan SU / ssu@trivalleyuniversity.org (hereafter "PayPal Account 1921").

1

      e. All funds up to $30,000 in Citibank checking account 40035925029 (hereafter "Citibank Account 5029") in the name Susan X SU.

      f. All funds up to $30,000 in Citibank checking account 40051053045 (hereafter "Citibank Account 3045") in the name Susan X SU.

      g. One 2009 Mercedes Benz, (VIN: WDDGF54X79R073026) owned by and registered to Susan SU.

4. The facts in this affidavit are based on the sources described in Attachment B (a related affidavit in support of search warrants which is attached hereto and incorporated herein by reference) and from information from federal and state law enforcement officers, third party records, financial institution records, financial analysis, and other documents obtained during the investigation.

5. As set forth below, and discussed in Attachment B, there is probable cause to believe that the assets described in paragraph 3 are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) as proceeds of a visa and wire fraud scheme in violation of Title 18, United States Code, Sections 1546(a) (Fraud and Misuse of Visas, Permits, and other Documents) and 1343 (Wire Fraud). Additionally, some of the above-described assets are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property involved in money laundering transactions, in violation of Title 18, United States Code, Section 1957. Title 18, United States Code, Section 981(b) authorizes the seizure of all property subject to forfeiture under the foregoing provisions. Furthermore, Title 18, United States Code, Section 984 provides that, in any forfeiture action in which the subject property is funds deposited into an account in a financial institution, the government does not have to identify the exact funds involved in the offense that is the basis for the forfeiture; it is no defense that those funds have been removed and replaced by other funds; and identical funds found in the same account as the funds involved in the forfeiture offense are subject to forfeiture. Section 984 thus allows the government to seize for forfeiture identical property found in the same place where the "guilty" property had been kept. However, section 984 does not allow the government to reach back in time for an unlimited period of time. A forfeiture action (including a seizure) against property not directly traceable to the offense that is the basis for forfeiture cannot be commenced more than one (1) year from the date of the offense.

6. This affidavit summarizes the information but does not set forth all the evidence gathered to date in this investigation. Because this affidavit is being submitted for the limited purpose of securing a seizure warrant for the subject assets, I have not included each and every fact known to me concerning this investigation. I have only set forth facts I believe are necessary to establish probable cause for seizure of the subject assets.

## II. SUMMARY OF INVESTIGATION

7. As described below, and in Attachment B, this investigation has revealed that Susan SU ("SU") has engaged in a scheme to create a sham school, TRI-VALLEY UNIVERSITY ("TVU"), to profit from the issuance of student visa related documents, including Certificates of Eligibility ("Form I-20s") used by foreign nationals to enter and remain in the United States in an F-1 nonimmigrant student status. SU, through TVU, sponsors foreign nationals in F-1 status by issuing to them Form I-20s that falsely certify their full-time physical attendance in violation of Title 18, United States Code, Section 1546(a) (Fraud and Misuse of Visas, Permits, and other Documents). SU continues to sponsor these foreign nationals in F-1 status for extended periods of time without requiring any attendance or participation whatsoever, and makes regular reports to DHS that these same foreign nationals are attending full-time. This scheme allows foreign nationals who have violated their student immigration status to remain in the United States in a manner that conceals and shields their illegal immigration status from detection by immigration and other law enforcement officials. SU charges on average $2,700 per foreign national each semester to maintain their unlawful status, which is paid under the guise of academic tuition payments.

8. Additionally, this investigation has revealed that TVU was never eligible to receive approval from DHS to issue student visa related documents and sponsor foreign nationals in F-1 status. SU obtained this approval, and the resultant ability to collect fees from F-1 foreign nationals, by making several material false statements detailed below on a Petition for Approval of School for Attendance by Nonimmigrant Students ("Form I-17"). On September 15, 2008, SU transmitted this Form I-17 from a computer in California to a computer utilized by DHS (SEVIS) in Rockville, Maryland, in violation of Title 18, United States Code, Section 1343 (Wire Fraud).

9. SU stated on the transmitted Form I-17 that TVU offers courses that are transferable to accredited schools. Regulations require petitioning schools to establish that they are either accredited or are engaged in the instruction of courses that are transferable to accredited schools. On February 10, 2009, in response to a request from DHS for additional evidence to support TVU's application, SU mailed two transfer agreements bearing the signatures of individuals at accredited schools that did not have the authority to sign such agreements. As discussed in paragraph 17 of Attachment B, neither of these schools had authorized these agreements, and thus TVU did not establish that their credits would be transferable to an accredited school. Failure to demonstrate this accreditation is grounds to deny TVU's application.

10. SU also stated on the transmitted Form I-17 that TVU employs an average annual number of 9 instructors. Regulations require petitioning schools to establish that they possess the necessary personnel to conduct instruction in recognized courses.

3

On October 14, 2008, in response to a request from DHS for additional evidence, SU submitted a list of 22 instructors, detailing their individual curriculum vitae and salaries. Several foreign nationals sponsored in F-1 status by TVU located and interviewed for this investigation have stated that they have never met any bona fide TVU instructors. I subsequently located and interviewed three of the 22 instructors. All three denied having ever been instructors at TVU. Two stated that they had learned that they were named instructors on the TVU website and contacted to SU to have their names removed. Failure to demonstrate an adequate number of instructors is grounds to deny TVU's application.

### III. FINANCIAL INVESTIGATION AND TRACING

11. TVU began its operations in or around April of 2008, approximately ten months before it obtained authorization from DHS to enroll foreign students. The below chart illustrates the increase in demand for enrollment created by DHS approval by comparing deposit activity before DHS approval to deposit activity after DHS approval:

| TRANSACTIONS | APRIL 08 - FEBRUARY 09 | FEBRUARY 09 - SEPTEMBER 10 |
|---|---|---|
| PayPal Payments into PayPal Account 1921 | $1,476.96 | $1,159,656 |
| Credit Card Payments Settled into Wells Fargo Account 0454 | $0 | $1,776,036.38 |
| Checks Deposited into Wells Fargo Account 0454 | $4,500 | $109,349.36 |
| Checks Deposited into Wells Fargo Account 3640 | $5,130 | $14,480 |
| Wire Transfers into Wells Fargo Account 3640 | $0 | $29,589 |
| ACH transfers into Wells Fargo Account 3640 | $0 | $25,124 |
| Cash deposited into Wells Fargo Account 3640 | $0 | $10,930 |
| Cash deposited into Wells Fargo Account 0454 | $880 | $3,048.50 |

12. This investigation has revealed that SU charges foreign nationals an average of $2,700 per semester for continued F-1 sponsorship from TVU, which is payable in multiple installments. Since the number of active F-1 students at TVU is reported and tracked in a DHS computer database (SEVIS), ICE is able to monitor the number of these foreign nationals, and thereby estimate expected revenue from them. Below is a table showing foreign student enrollment rates and an

estimate of expected revenue. Expected Revenue is arrived at by multiplying the number of reported F-1s by the average tuition of $2,700 tuition.

| MONTH | ACTIVE F-1 STUDENTS | Estimated Revenue |
|---|---|---|
| February 2009 | 2 | |
| May 2009 (Summer Term) | 11 | |
| June 2009 | 15 | |
| July 2009 | 16 | |
| September 2009 (Fall Term) | 75 | $202,500 |
| October 2009 | 87 | |
| November 2009 | 108 | |
| December 2009 | 113 | |
| January 2010 (Fall Term) | 447 | $1,206,900 |
| February 2010 | 551 | |
| March 2010 | 596 | |
| April 2010 | 602 | |
| May 2010 (Summer Term) | 939 | |
| June 2010 | 1021 | |
| July 2010 | 1076 | |
| August 2010 | 1086 | |
| September 2010 (Fall Term) | 1555 | $4,198,500 |

13. As of December 30, 2010, SU has reported 969 additional foreign nationals in initial status, pending active F-1 status for the Spring-2011 semester. Additional revenue is expected to be generated through January 2011, as the 1555 currently active foreign nationals, and an unknown percentage of the foreign nationals in initial status start paying Spring-2011 semester fees. Therefore, the amount of proceeds identified in the accounts described herein may be less than the amount obtainable during the execution of the seizure warrants.

14. In November of 2010, I received and reviewed information from Hostmonster, Inc., that confirmed that the internet website at www.trivalleyuniversity.org is subscribed to by SU. I have since reviewed this website and observed in it that TVU charges an average of $2,700 per semester for graduate tuition. I am also aware based on my review of records in DHS databases that 99 percent of foreign nationals sponsored in F-1 status by TVU are reported as graduate students. Additionally, information contained on the TRI-VALLEY UNIVERSITY website indicates that fees are also charged for various other services related to obtaining or maintaining F-1 student status (i.e. a $50 application fee, $50 registration fee, and fees ranging from $20 to $100 for the issuance of certain Form I-20s).

5

15. The TRI-VALLEY UNIVERSITY website further indicates that TVU accepts payments for these fees in the following forms:

   (a) PayPal payments made directly to PayPal Account 1921;

   (b) Domestic and international wire transfers made directly to Wells Fargo Account 3640;

   (c) Checks mailed to the TRI-VALLEY UNIVERSITY office (financial analysis reveals that most of these checks are deposited into Wells Fargo Account 0454, and a small percentage are deposited into Wells Fargo Account 3640 and 4780);

   (d) Credit card payments processed manually with credit card machines (financial analysis reveals that these credit card transactions are processed through merchant services accounts held with Global Payments, Inc. and American Express, Inc. and are ultimately settled into Wells Fargo Account 0454).

16. Financial analysis I have conducted for the period between February of 2009 and September of 2010 has identified more than $3,000,000 of tuition and fees. This figure is consistent with the revenue expected from TVU's F-1 population detailed in paragraph 15, suggesting little to no revenue from non-F-1 foreign nationals. Additionally, a cooperating witness who worked in the TVU office has stated to ICE agents that all of the TVU tuition and fee payments he processed were for foreign nationals seeking F-1 sponsorship. Financial analysis detailed below further corroborates this cooperating witness's statements.

17. Tracing of visa and wire fraud proceeds into Wells Fargo Account 0454 held in the name of TRI-VALLEY UNIVERSITY:

   a. On April 25, 2008, SU opened Wells Fargo Account 0454, a business checking account held in the name of TRI-VALLEY UNIVERSITY, INC. SU has sole signature authority over this account.

   b. Minimal activity was observed in this account until after TVU received approval from DHS to sponsor F-1 students. The balance in this account beginning on March 18, 2009 was $5,679.48, which has since been withdrawn. From March 18, 2009 to September 30, 2010, deposits comprised of credit card settlements, checks, and cash totaled $1,888,434.24, further described below.

   c. Merchant credit card deposits settled into Wells Fargo Account 0454 totaled $1,776,036.38 for the period analyzed. These deposits were made mostly in increments identical to amounts known to be charged for tuition

and fees at TVU. A cooperating witness who worked in the TVU office and processed payments has stated to ICE agents that TVU has a credit card machine physically located in the TVU office that is used solely to process payments related to tuition and fees. This cooperating witness stated that approximately 50% of payments he processed were credit card payments, and that all of the payments he processed were from foreign nationals seeking F-1 sponsorship.

    d.    Checks deposited into this account totaled $109,349.36 during the period analyzed. Most of these checks were from payers with names of Indian origin, or were drawn on Indian banks, consistent with the fact that over 95 percent of foreign nationals sponsored in F-1 status at TVU are Indian nationals. These checks were written in increments identical to amounts known to be charged for tuition and fees at TVU, and many of these checks explicitly site purposes such as "tuition" or "fees." Queries I have conduced in DHS databases on a sample of these checks confirm that most were written by or for foreign nationals sponsored in F-1 status by TVU. Additionally, a cooperating witness who worked in the TVU office and processed payments, stated to ICE agents that approximately 7% of all of the payments he processed were made by check, and that all of the payments he processed were from foreign nationals seeking F-1 sponsorship.

    e.    $3,048.50 of deposits into TVU Wells Fargo Account 0454 during this period came in the form of cash. A cooperating witness who worked in the TVU office and processed payments, stated to ICE agents during an interview, that approximately 3% of the payments he processed were made with cash, and that all of the payments he processed were from foreign nationals seeking F-1 sponsorship

    f.    As of September 30, 2010, Wells Fargo Account 0454 contained a balance of $475,265.53, all of which I believe, based on my investigation and analysis, are the proceeds of the visa and wire fraud scheme. However, the total proceeds on deposit in the account during the execution of the seizure warrants may be greater as foreign nationals continue to pay fees related to Spring-2011. All funds currently on deposit in this account are thus subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) as property which constitutes the proceeds of a scheme to commit visa fraud and wire fraud.

18.    Tracing of visa and wire fraud proceeds into TVU Wells Fargo Account 3640 held in the name of TRI-VALLEY UNIVERSITY:

    a.    On April 25, 2008, SU opened Wells Fargo Account 3640 in the name of TRI-VALLEY UNIVERSITY, INC. SU has sole signature authority over this account.

  b. Minimal activity was observed in this account until after TVU received DHS approval to sponsor F-1 students. The balance in this account on September 11, 2009 was $571.78, which was has since been withdrawn. I have identified deposits totaling $80,123 into Wells Fargo Account 3640 comprised of international and domestic wire transfers, checks, and cash, during the period between September 11, 2009 and September 30, 2010.

  c. For the period analyzed, I have identified $14,480 in checks deposited into this account. Almost all of the names on these checks again appear to be of Indian origin. Queries in DHS databases on a sample of these checks have also confirmed that most are from or for foreign nationals sponsored in F-1 status by TVU.

  d. For the period analyzed, I have identified $10,930 in cash deposited into this account.

  e. For the period analyzed, I have identified $25,124.69 in Automated Clearing House ("ACH") transfers from outside bank accounts into this account. Comments provided on most of the ACH transfers state purposes such as "tuition" and "fees." Additionally, I have identified most of these transfers as by or for foreign nationals sponsored in F-1 status by TVU through queries in DHS databases.

  f. For the period analyzed, I have identified $19,449 in domestic and international wire transfers into this account. Information obtained from the TRI-VALLEY UNIVERSITY website detailed in paragraph 16(b) of this affidavit indicates that TRI-VALLEY UNIVERSITY solicits wire transfers into this account as a means of payment for tuition of fees. Additionally, I queried DHS databases and have identified most of these transfers as by or for foreign nationals sponsored in F-1 status by TVU.

  g. As of September 30, 2010, Wells Fargo Account 3640 contained a balance of $145,735.25, all of which I believe, based on my investigation and analysis, are the proceeds of the visa and wire fraud scheme. However, the total proceeds on deposit in the account during the execution of the seizure warrants may be greater as foreign nationals continue to pay fees related to Spring-2011. Consequently, all funds currently on deposit in this account are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) as property which constitutes the proceeds of a scheme to commit visa and wire fraud.

19. Tracing of wire and visa fraud proceeds into Wells Fargo Account 4780 held in the name of TRI-VALLEY UNIVERSITY:

  a. On March 8, 2010, SU opened Wells Fargo Account 4780 in the name of

8

           TRI-VALLEY UNVIVERSITY. SU has sole signature authority over this account.

    b.    Account 4780 was opened on March 8, 2010 and initially funded with a transfer of $25,000 from Account 0454.

    c.    This account is a business high yield savings account, and appears to be used primarily to receive and send large electronic fund transfers ("ETFs") to and from TVU Wells Fargo Accounts 0454 and 3640. Between March 8, 2010 and September 30, 2010 Wells Fargo Account 4780 received ETF transfers totaling $245,000 from Account 0454 and $100,000 from Account 3640.

    d.    Only two deposits not involving transfers from Wells Fargo Accounts 0454 or 3640 were identified during the analysis period: one in branch deposit of $8,967 on April 28, 2010; and one in branch deposit of $8,550 on September 16, 2010. Both of these deposits consisted of multiple checks from individuals with names of Indian origin in amounts consistent with tuition. Additionally, queries in DHS databases confirm that most are from or for foreign nationals sponsored in F-1 status by TVU.

    e.    As of September 30, 2010, Wells Fargo Account 4780 contained a balance of $8,160.01, all of which I believe, based on my investigation and analysis, are the proceeds of the visa and wire fraud scheme. However, based on the pattern of large inbound and outbound transfers and the expectation of proceeds generated by Spring-2011 tuition, it is unclear what exact dollar amount will be obtainable during the execution of the seizure warrants. All funds currently on deposit in this account are thus subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) as property which constitutes the proceeds of a scheme to commit visa fraud and wire fraud.

20.    Tracing of visa fraud proceeds into TVU PayPal Account 1921 held in the name of Susan SU and TRI-VALLEY UNIVERSITY:

    a.    SU opened TVU PayPal Account 1921 on September 22, 2003. On March 28, 2008, the primary email address on this account was changed to ssu@trivalleyuniversity.org. Information obtained from the TRI-VALLEY UNIVERSITY website detailed in paragraph 16(a) of this affidavit indicates that TRI-VALLEY UNIVERSITY solicits funds transfers into this PayPal account as means of payment for tuition of fees.

    b.    Minimal activity was observed in PayPal Account 1921 until TVU received approval from DHS to sponsor foreign nationals in F-1 status. On August 19, 2009, PayPal Account 1921 had a balance of $1,000, which has since been withdrawn. I have identified 2,180 payments received into

9

  PayPal Account 1921 totaling $1,158,179.74 between August 19, 2009 and August 23, 2010. Virtually all of these payments appear to have originated from individuals with names of Indian origin, consistent with the fact that 95 percent of foreign nationals sponsored in F-1 status by TVU are Indian nationals. Most of these foreign nationals have been identified through queries in DHS databases as F-1s at TVU or associated to F-1s at TVU. Of the $1,158,179.74 received during this period, payments totaling $1,075,267.32 specifically list purposes related to classes, tuition, or student related fees, including fees related to the issuance of student visa related documents. The rest site no purpose, but appear to be from Indian nationals and are still in amounts consistent with tuition and fees.

 c. As of August 23, 2010, PayPal Account 1921 contained a balance of $259,290.01, all of which I believe, based on my investigation and analysis, are the proceeds of visa and wire fraud. However, the total proceeds in the account during the execution of the seizure warrants may be greater as foreign nationals continue to pay tuition and fees related to Spring-2011. All funds currently on deposit in this account are thus subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) as property which constitutes the proceeds of a scheme to commit visa fraud and wire fraud.

21. Tracing of wire and visa fraud proceeds into Citibank Account 3045 held in the name of Susan X SU:

 a. SU opened Citibank Account 3045 on March 25, 2009 in the name of Susan X SU. SU has sole signature authority over this account.

 b. SU wrote check number 1090 dated May 7, 2010 in the amount of $30,000 drawn against Wells Fargo Account 0454 and payable to Susan SU. On May 7, 2010 SU deposited this check into Citibank Account 3045.

 c. Because these identified funds are the proceeds of the visa fraud and wire fraud scheme, these funds are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C). Additionally, because the deposit of $30,000 is a monetary transaction in criminally derived property of a value greater than $10,000, these funds are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property involved in a money laundering transaction, in violation of Title 18, United States Code, Section 1957.

 d. Further, because these deposits occurred within the last year, pursuant to Title 18, United States Code, Section 984 the government may seize funds from this account up to $30,000 without further identification of the exact

funds involved in the offense that is the basis for the forfeiture. As of September 30 2010, the balance of Citibank Account 3045 was $13,525.96

22. Tracing of visa and wire fraud proceeds into Citibank Account 5029 held in the name of Susan X SU:

   a. SU opened Citibank Account 5029 on November 18, 2006 in the name of Susan X SU. SU has sole signature authority over this account.

   b. SU wrote check number 1091 dated May 7, 2010 in the amount of $30,000 drawn against Wells Fargo Account 0454 and payable to Susan SU. On May 7, 2010 SU deposited check 1091 into Account 5029.

   c. Because these identified funds are the proceeds of the visa and wire fraud scheme, these funds are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C). Additionally, because the deposit of $30,000 is a monetary transaction in criminally derived property of a value greater than $10,000, these funds are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property involved in a money laundering transaction, in violation of Title 18, United States Code, Section 1957.

   d. Further, because these deposits occurred within the last year, pursuant to Title 18, United States Code, Section 984 the government may seize funds from this account up to $30,000 without further identification of the exact funds involved in the offense that is the basis for the forfeiture. As of October 17, 2010, the balance of Account 5029 was $45,909.36

23. Tracing of wire and visa fraud proceeds into subject 2009 Mercedes Benz:

   a. Information obtained from the California Department of Motor Vehicles indicates that SU purchased one 2009 Mercedes Benz, (VIN: WDDGF54X79R073026), in November of 2009, paid in full.

   b. Financial analysis reveals that SU wrote check number 1037, dated November 28, 2009, drawn on Wells Fargo Account 0454, and payable to Mercedes Benz of Pleasanton in the amount of $36,783.61.

   c. Because the 2009 Mercedes Benz was purchased with funds in Wells Fargo Account 0454 which are proceeds of a visa and wire fraud scheme, it is subject to seizure and forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) as the proceeds of a visa and wire fraud scheme. Additionally, the car is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A) because it was acquired, in part, with a check in the amount of $36,783.61, a monetary transaction in

11

        criminally derived property of a value greater than $10,000, in violation of Title 18, United States Code, Section 1957.

## IV. CONCLUSION

24. As set forth above, there is probable cause to believe that the subject property (as described in paragraph 3 and Attachment A) is forfeitable to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) as the proceeds of Title 18, United States Code, Sections 1546(a) (Fraud and Misuse of Visas, Permits, and other Documents) and 1343 (Wire Fraud). Additionally, there is probable cause to believe that some of the assets described in paragraph 3 and Attachment A are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property involved in money laundering transactions, in violation of Title 18, United States Code, Section 1957. I respectfully request the issuance of seizure warrants for said property.

## V. REQUEST FOR SEALING

25. Since this investigation is continuing, disclosure of the seizure warrants, this affidavit, and/or this application and the attachments thereto will jeopardize the progress of the investigation. Premature disclosure would give the targets of the underlying investigation an opportunity to destroy evidence. Accordingly, I request that the Court issue an order that the seizure warrants, this affidavit in support of application for said warrants, the application for seizure warrants, and all attachments thereto be filed under seal until further order of this Court.

                              _____
                              Jason G. Mackey, Special Agent
                              U.S. Department of Homeland Security
                              Immigration and Customs Enforcement

SUBSCRIBED and SWORN to before me this __18th__ day of January, 2011.

_____
The Honorable Donna Ryu
United States Magistrate Judge

12

# Exhibit B

# AFFIDAVIT BY SPECIAL AGENT BRYAN JANG IN SUPPORT OF SEIZURE WARRANT

## I. AGENT'S BACKGROUND AND EXPERTISE

1. I, Bryan Jang, being duly sworn, depose and state:

    I am a Special Agent with the U.S. Department of Homeland Security, Homeland Security Investigations (HSI) presently assigned to the San Francisco office. I am a law enforcement officer of the United States within the meaning of Title 18 United States Code, Section 2510(7), the 1930 Tariff Act, Title 19, United States Code, Section 1589a, and Title 8 United States Code, Section 1357. I have been so employed and duly authorized as a federal law enforcement officer since June 1988. In my capacity as a Special Agent, I attended the Criminal Investigator Training Program and the Immigration Special Agent Basic Training Program at the Federal Law Enforcement Training Center, Glynco, Georgia. I am currently assigned to the Asset Identification and Removal Group. As part of my regular duties, I investigate, identify and seek forfeiture against real or personal property in accordance with Title 18 United States Code, Sections 981 and 982. In addition, I seek forfeiture against property, conveyances, merchandise, and monetary instruments, within the meaning of Title 31, United States Code, Section 5312(a)(3) that is derived from, traceable to, or facilitates violations of United States Code respective to Title 19 and Title 8. I have attended the Immigration and Customs Enforcement: Asset Forfeiture and Financial Investigations School and have attended financial investigation seminars, conversed with more experienced agents regarding money laundering methods, and participated in several financial investigations.

2. I am one of the case agents participating in the investigation of TRI-VALLEY UNIVERSITY, INC., and Susan SU for offenses relating to visa and wire fraud. On January 19, 2011, HSI Agents executed several Search and Seizure Warrants in connection with this investigation. As a result, HSI Agents discovered the existence of three new Wells Fargo accounts associated with TRI-VALLEY UNIVERSITY and Susan SU. In addition, upon further review of PayPal records, it was discovered that additional illegal proceeds were deposited into Susan SU's personal Citibank account 40051053045 (hereafter "Citibank Account 3045"). This affidavit seeks authorization to seize proceeds from the three new Wells Fargo accounts and the remaining proceeds from Citibank account 3045.

## II. ITEMS TO BE SEIZED

3. I make this affidavit in support of the issuance of seizure warrants for the subject property described in subparagraphs a, b and c, and for an amended seizure warrant for the subject property described in subparagraph d:

   a. All funds in Wells Fargo business checking account 2043712773 in the name TRI-VALLEY UNIVERSITY INC./ Susan Xiao-Ping SU (hereafter "Wells Fargo account 2773").

   b. All funds in Wells Fargo business savings account 2043716782 in the name of TRI-VALLEY UNIVERSITY, INC./ Susan Xiao-Ping SU (hereafter "Wells Fargo account 6782").

   c. All funds up to $64,925 in Wells Fargo personal checking account 3854679937 (hereafter "Wells Fargo account 9937") in the name Susan Xiao-Ping SU.

   d. All funds up to $110,000 in Citibank account 40051053045 (hereafter "Citibank account 3045") in the name Susan X. SU.

## III. SEARCH AND SEIZURE WARRANTS

4. On January 14, 2011, the Honorable Magistrate Judge Donna M. Ryu found probable cause to issue a Seizure Warrant, No. 4-11-70040 DMR, for TRI-VALLEY UNIVERSITY Wells Fargo business checking account ending in 0454 (Attachment 1). On January 18, 2011, HSI Agents, executed the above seizure warrant and seized $227,439.98.

5. On January 14, 2011, the Honorable Magistrate Judge Donna M. Ryu found probable cause to issue a Seizure Warrant, No. No. 4-11-70046 DMR, for TRI-VALLEY UNIVERSITY Wells Fargo savings account ending in 3640 (Attachment 2). On January 18, 2011, HSI Agents, executed the above seizure warrant and seized $15,184.71.

6. On January 14, 2011, the Honorable Magistrate Judge Donna M. Ryu found probable cause to issue a Seizure Warrant, No. 4-11-70047 DMR, for TRI-VALLEY UNIVERSITY Wells Fargo business savings account ending in 4780 (Attachment 3). On January 18, 2011, HSI Agents, executed the above seizure warrant and seized $338,319.07.

7. On January 14, 2011, the Honorable Magistrate Judge Donna M. Ryu found probable cause to issue a Seizure Warrant, No. 4-11-70041 DMR, for funds in PayPal account ending in 1921 in the name of Susan SU and ssu@trivalleyuniversity.org (Attachment 4). On January 19, 2011, HSI Agents, executed the above seizure warrant and is anticipating receipt of all funds.

8. January 18, 2011, the Honorable Magistrate Judge Donna M. Ryu found probable cause to issue a Seizure Warrant, No. 4-11-70057, for funds up to $30,000 in Citibank account ending in 3045 in the name of Susan X. SU (Attachment 5). On January 18, 2011, HSI Agents, executed the above seizure warrant and seized $30,000.

9. On January 14, 2011, the Honorable Magistrate Judge Donna M. Ryu probable cause to issue Search Warrants for 405 Boulder Court, Suites 700 and 800, Pleasanton, CA and 1371 Germano Way, Pleasanton, California, Nos. 4-11-70049 DMR, 4-11-70052 DMR, and 4-11-70051 DMR respectively (Attachments 6, 7 and 8).

10. On January 19, 2011, HSI Agents executed federal search warrants at 405 Boulder Court, Suites 700 and 800, Pleasanton, CA and 1371 Germano Way, Pleasanton, CA. Bank Records and related financial documents were among the items listed on the "items to be seized" in the above referenced Search Warrants.

11. The above referenced seizure warrants were each based on the probable cause set forth in the Affidavit of Jason G. Mackey, Special Agent, Homeland Security Investigations ("HSI") to which was attached a copy of a separate Affidavit of Jason G. Mackey setting forth the probable cause to support the issuance of the search warrants. A copy of the affidavit in support of the seizure warrants, with its attachments, is attached as Attachment 9 to this affidavit.

## IV. EVIDENCE OBTAINED FROM SEARCH WARRANTS

12. On January 19, 2011, HSI Special Agents Jason Mackey, Dale Taylor, and Christina Barfuss interviewed Susan Xiao-Ping SU at her place of residence at 1371 Germano Way, Pleasanton, California. SU told agents that she believed that a student compromised her existing TRI-VALLEY UNIVERSITY bank accounts. She stated that, in December 2010, she opened two new Wells Fargo business accounts and transferred approximately $50,000 from her existing TRI-VALLEY UNIVERSITY business accounts to start these new accounts.

13. On January 19, 2011, during the search of 405 Boulder Court, Suites 700 and 800, Pleasanton, CA, HSI Special Agents found evidence of two new Wells Fargo business accounts in the name of TRI-VALLEY UNIVERSITY, INC. A Wells Fargo Bank statement for the first new account is titled "Expanded Business Services Package Account Number 2043712773" for the period December 14, 2010 through December 31, 2010, and shows a beginning balance of zero. On December 30, 2010, $30,000 from TRI-VALLEY UNIVERSITY Wells Fargo Account 0454 was deposit into the new Wells Fargo Account 2773. The seizure warrant now requested for the newly discovered Wells Fargo account 2773 is based on the probable cause previously found for funds from Wells Fargo account ending in 0454 because the source of the funds in account 2773 is account 0454.

14. A Wells Fargo Bank statement for the second new account identified on January 19, 2011, is titled "Business Market Rate Savings Account 2043716782" for the period December 17, 2010 through December 31, 2010, and shows a beginning balance of zero. On December 17, 2010, $3,000 was withdrawn from TRI-VALLEY UNIVERSITY, INC. Wells Fargo Account 3640 and deposited into the new Wells Fargo Account 6782. The seizure warrant requested for the second newly discovered Wells Fargo account ending in 6782 is based on the probable cause previously found for funds from Wells Fargo account 3640 because the source of the funds in account 6782 is account 3640.

15. During the service of the search warrant at 1371 Germano Way, Pleasanton, California, Susan SU was permitted to utilize a government owned computer to access her online Wells Fargo Bank Accounts in the presence of HSI Special Agents. Susan SU confirmed the existence of Wells Fargo Accounts 2773 and 6782, which were observed on a web page under the heading "Tri-Valley University, Inc Accounts," and HSI Agents also observed the existence of a third new account, Wells Fargo Account 9937, under the heading "Personal Accounts," with a current balance of $46,317.59. Further review of the transaction history of Wells Fargo Account 9937 revealed an online transfer dated November 19, 2010 from TRI-VALLEY UNIVERSITY Wells Fargo Account 0454 to Wells Fargo Account 9937 in the amount of $50,000. Additionally, HSI Agents observed a January 5, 2011 deposit in the amount of $15,192.38. HSI Agents determined that $14,925.04 of that deposit came from the closing disbursement from the purchase of 1371 Germano Way, Pleasanton, California. The seizure warrant requested for the third newly discovered Wells Fargo account ending in 9937 is based on the probable cause previously found for funds from Wells Fargo account 0454 because the source of $50,000 in account 9937 is account 0450. Further, criminal proceeds used to purchase 1371 Germano Way is the source of $14,925.04 which was refunded at the close of escrow for 1371 Germano Way.

## V. ADDITIONAL PROCEEDS TRACED TO CITIBANK ACCOUNT 3045

16. On January 19, 2011, HSI Agents seized $30,000 pursuant to a seizure warrant for all funds up to $30,000 in Citibank account 3045 held in the name of Susan X. SU. As set forth in the Mackey Seizure Affidavit (Attachment 9), the source of that $30,000 was a check drawn on Wells Fargo account 0454. At the time of service, bank personnel advised HSI Agents that the balance was in fact $41,526.93.

17. Upon further review of PayPal records, it was discovered that on December 30, 2010 Susan SU also transferred another $80,000 from PayPal account 1921 to Citibank account 3045. The probable cause for seizing all funds in PayPal account 1921 was previously established and supported by the Mackey Seizure Affidavit (Attachment 9). Accordingly, the seizure warrant for Citibank account

3045 should be amended to authorize seizure of all funds up to a total of $110,000.

## VI. CONCLUSION

18. As set forth above, probable cause has previously been established to believe that the funds itemized in paragraph 3 above are subject to forfeiture to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) as the proceeds of Title 18, United States Code, Sections 1546(a) (Fraud and Misuse of Visas, Permits, and other Documents) and 1343 (Wire Fraud). Additionally, probable cause has previously been established to believe that the funds itemized in paragraph 3 above are are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property involved in money laundering transactions, in violation of Title 18, United States Code, Section 1957. I respectfully request the issuance of seizure warrants for said property.

## VII. REQUEST FOR SEALING

19. Since this investigation is continuing, disclosure of the contents of this affidavit will jeopardize the progress of the investigation. Accordingly, I respectfully request that the Court issue an order directing that the Seizure Warrant, the Application and Supporting Affidavit be filed under seal until further order of this Court.

Bryan Jang, Special Agent
U.S. Department of Homeland Security
Homeland Security Investigations

SUBCRIBED and SWORN to before me
this 21ST day of January, 2011.

The Honorable Donna Ryu
United States Magistrate Judge