1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3          BEFORE THE HONORABLE JON S. TIGAR

4   UNITED STATES OF AMERICA,        )
                                     ) Volume 10
5              Plaintiff,            ) Pages 1711 - 1736
                                     )
6        VS.                         ) NO. 11-00288 JST
                                     )
7   SUSAN XIAO-PING SU,              )
                                     ) San Francisco, California
8              Defendant.            ) Tuesday, March 18, 2014
    _____ ) 2:03 p.m.

9

10              **TRANSCRIPT OF COURT PROCEEDINGS**

11

    **APPEARANCES:**

12

13   **For Plaintiff:**          MELINDA HAAG
                                 UNITED STATES ATTORNEY
14                               1301 Clay Street, Suite 340S
                                 Oakland, California 94612
15                       BY:    **HARTLEY M.K. WEST, ESQ.**
                                **WADE M. RHYNE, ESQ.**
16                               **ASSISTANT UNITED STATES ATTORNEYS**

17

     **For Defendant:**          Law Offices of Erik G. Babcock
18                               717 Washington Street, Second Floor
                                 Oakland, California 94607
19                       BY:    **ERIK G. BABCOCK, ESQ.**
                                **ATTORNEY AT LAW**

20

21

22

23

24
     Reported By:  James C. Pence, RMR, CRR, CSR No. 13059
25                 Official Court Reporter - U.S. District Court
                   Computerized Transcription By Case CATalyst

1    Tuesday, March 18, 2014                              2:03 p.m.

2                              ---o0o---

3         (Proceedings heard out of the presence of the jury:)

4              THE COURT:  We're on the record.  We're outside the

5    presence of the jury.  This is the conference to settle the

6    jury instructions and the special verdict form.

7         Mr. Babcock, do you know yet whether your client will

8    testify tomorrow?

9              MR. BABCOCK:  I believe that she will not, your

10   Honor.

11             THE COURT:  All right.  All the more reason for us to

12   get to work.

13             MR. BABCOCK:  Exactly.

14             MS. WEST:  Before we begin, your Honor, this may be

15   an appropriate time.  The United States intends to dismiss four

16   counts, and we would move to do so right now.

17             THE COURT:  All right.  Let me off the record say

18   something to my court staff for just a moment.

19                        (Discussion off the record.)

20             THE COURT:  All right.  The Government is moving to

21   dismiss -- I have the indictment here dated November 10th,

22   2011.  Is there such an indictment or just one?

23             MR. BABCOCK:  There is just one superseding

24   indictment.  So you have it.

25             THE COURT:  Oh, I see.  Yes.

1      Okay.  And which counts is the Government now willing to

2   dismiss?

3          MS. WEST:  The Government moves to dismiss

4   money-laundering Counts 28, 30, and 33, and alien-harboring

5   Count 23.

6          THE COURT:  Mr. Babcock, any comment?

7          MR. BABCOCK:  No objection.

8          THE COURT:  Those counts are now dismissed, and the

9   jury will be instructed accordingly that they are not -- that

10  certain counts have been dismissed, and they're not to consider

11  the reason for that, et cetera.

12     Anything else that we should talk about before we begin

13  discussing the jury instructions?

14         MR. BABCOCK:  I do -- I -- the Government has rested;

15  right?

16         MS. WEST:  We have not officially rested.

17         THE COURT:  I haven't asked them the question.

18         MR. BABCOCK:  Okay.

19         THE COURT:  I haven't asked them that question.  I

20  thought as long as I'm -- as long as I'm running the show in a

21  way to give the defendant -- give the defendant an overnight

22  favor to -- I might as well give the Government a chance to --

23         MR. BABCOCK:  No problem.

24         THE COURT:  -- do it.

25     So we'll find that out tomorrow morning, but I'm assuming

1    the Government will rest tomorrow morning.

2              MS. WEST:  We are expecting to do that.  I anticipate

3    that Mr. Babcock is going to raise a Rule 29 motion.  I'm not

4    sure, but after the Government rests -- and I'm not sure what

5    the Court's practice on that is.

6         Sometimes if the Court intends to deny it, I've seen it

7    just done from the bench, or since we are going to be resting

8    immediately -- I expect tomorrow morning -- we probably don't

9    want to ask the jury to file back out, but however the Court

10   wants to do that -- or at other times, I see the Court just

11   take it under advisement and rule at the conclusion of all

12   proceedings.

13        I'm not sure what your Honor's practice is on that.

14             MR. BABCOCK:  You may not have a practice yet.  This

15   is its first federal criminal trial.  The Court has the option,

16   as I understand it, of reserving until -- reserving its

17   decision until after the verdicts, if any, however the Court

18   wants to do it.  If we get that far, it can actually be briefed

19   at a more leisurely pace.

20             MS. WEST:  "What?  Can't hear you."

21             THE COURT:  The Court will reserve ruling on any Rule

22   29 motion until after the jury has rendered a verdict.

23             MR. BABCOCK:  Fair enough.

24             MS. WEST:  Should that defense Rule 29 motion --

25   because they will still need to make it on the record, should

1    that be done at sidebar right after the Government rests?

2              THE COURT:  Yes.

3              MR. BABCOCK:  Okay.  Back to the jury instructions.

4              THE COURT:  Okay.

5              MR. BABCOCK:  So the main issue I raised -- unless

6    the Court wants to lead the way here, the main issue I raised

7    with Ms. West just a little earlier was jumping to Instruction

8    47 and 48, which are the fraud instructions, the wire mail

9    fraud instructions --

10             THE COURT:  Yes.

11             MR. BABCOCK:  I believe the fraud -- these are --

12   these are basically straight out of the Ninth Circuit manual.

13   I think it needs to be tied to the -- to the scheme to defraud

14   that's alleged in the indictment.

15        In other words, it's not just -- she's not just charged

16   with some fraud somewhere sometime.  She's charged with a

17   specific fraud in the indictment, and that's -- if she's going

18   to be found guilty of fraud, that's -- what's in the indictment

19   needs to define its scope.

20        So -- and I -- there's two ways I see to do that.  One is

21   to give -- give them a copy of the indictment, and the other is

22   to just tell them what the indictment says.  I have suggested

23   perhaps -- I've seen it done this way, you know, taking the

24   essential allegations from the indictment and cutting them and

25   pasting them into the instruction.

1          I think Ms. West has a different proposal, which is that

2      the Court read the -- right before it reads this -- each of

3      these instructions, it reads the pertinent parts of the

4      indictment.

5              THE COURT:  Would someone direct my attention to the

6      pertinent portions of the indictment?

7              MR. BABCOCK:  Yes.

8          So the wire fraud is charged in Counts -- or Paragraphs --

9      did you want to start at 1 or later?

10             MS. WEST:  Well, if I may, your Honor, I think

11     what -- what I understood defense counsel to be referring to --

12     first of all, to answer the Court's question, wire fraud begins

13     with Count 1, which is Paragraph 15 of the indictment on Page

14     4.  Counts 1 through 12 are wire fraud.  13 and 14, mail fraud.

15     Then there's conspiracy to commit visa fraud as 15, and 16

16     through 19, are visa fraud.  And I understand defense counsel's

17     objection relates to all of those.

18         What I do agree is that it should be specifically --

19     rather, the instruction should be specifically tied to the

20     indictment.  Frankly, I've always had defense counsel oppose

21     the indictment going to the jury.  So I've never been

22     confronted with the issue.

23         My only real objection --

24             THE COURT:  I'm not wild about the idea of sending

25     the indictment back, even though I hear the defendant making a

1    request.

2              MS. WEST:  And I --

3              THE COURT:  I have separate concerns about -- about

4    juror confusion.

5              MS. WEST:  I think that's fair, and -- and in

6    particular, I do think that the jury instructions do need to be

7    standalone sufficient.  So to the extent that there's any

8    effort to try to modify them through the indictment, I think

9    that -- that is probably not a direction we want to go.  We

10   want to have them be able to stand alone.

11        And so my proposal to remedy that and I think to address

12   Counsel's concern is perhaps right before the Court reads Jury

13   Instruction 47, the Court -- and we could insert this preamble

14   before Jury Instruction No. 47 to say that "The defendant is

15   charged with wire fraud, mail fraud, conspiracy to commit visa

16   fraud, and visa fraud," and then we could say specifically --

17   and then we insert Paragraphs 9 through 14 of the indictment

18   there, which is set forth in the indictment as the scheme to

19   defraud.

20        So each of these fraud counts emanates from this scheme.

21   So I would think that would resolve the concern of the

22   defense --

23             MR. BABCOCK:  That's fine.

24             MS. WEST:  -- if that works for the Court.

25             THE COURT:  Does that satisfy the defendant's

```
 1    concerns?

 2                MR. BABCOCK:  It does.  I mean --

 3                THE COURT:  I like that method better because if --

 4    by providing the indictment -- of course, there are lots of

 5    other things that we would be giving the jury that are not

 6    directly germane to their deliberation task, and then they

 7    prompt additional questions or get the jurors off doing work

 8    that is not going to help them --

 9                MR. BABCOCK:  Sure.

10                THE COURT:  -- in reaching a verdict.

11                MR. BABCOCK:  No.  That's fine.

12                THE COURT:  Did you say 9 through 14?

13                MR. BABCOCK:  9 through 14.

14                MS. WEST:  Yes.

15                THE COURT:  All right.

16                MR. BABCOCK:  That's both as to the wire and the mail

17    fraud instructions.

18                MS. WEST:  And I think as to the visa fraud.

19                THE COURT:  Well, Mr. Babcock was clear -- well,

20    okay.

21                MS. WEST:  Yeah.

22                MR. BABCOCK:  Yeah.

23                MS. WEST:  The conspiracy and the visa fraud?

24                MR. BABCOCK:  Uh-huh.

25                THE COURT:  All right.  So I understand Mr. Babcock,
```

1    too, has agreed that this amendment is pertinent not as to just

2    wire and mail fraud but also as to conspiracy to commit visa

3    fraud and -- visa fraud.

4        And so the United States will prepare a page that I'll read

5    before Proposed Instruction No. 47, and that will consist of

6    Paragraphs 9 through 14 of the indictment, and perhaps there

7    can be an introductory sentence that just says something

8    like --

9            MR. BABCOCK:  "The scheme" --

10           THE COURT:  -- "Members of the jury, let me now

11   instruct you regarding the nature of the scheme to defraud that

12   the Government is alleging against the defendant," something

13   like that.

14       Mr. Babcock, further concerns or objections to the proposed

15   instructions as amended?

16           MR. BABCOCK:  On -- I have one other -- I have

17   another modification -- proposed modification which I know Ms.

18   West opposes, but -- and I will admit it's -- it refers to the

19   language on defining "intent to defraud," which is both in

20   Instructions 47, 48 as the third element, and it's also a

21   separate instruction, Number 31, defining "intent to defraud."

22   It just says, "Intent to defraud is an intent to deceive or

23   achieve."

24       I think the appropriate definition should actually be that

25   it's an intent to deceive and cheat -- in other words, in the

1    conjunctive, not the disjunctive -- and that's -- this

2    instruction has been approved in the Ninth Circuit, but it does

3    revisit these instructions on occasion, and I know the -- an

4    intent to defraud, I think, is more accurately defined in some

5    other circumstances, and it's supported by the Supreme Court's

6    decision in Cleveland because they don't really say that the

7    wire and mail fraud statutes are not meant to just encompass

8    every time somebody lies for money or profit.

9        There has to be an intent to harm the victim or to cheat

10   the victim.  It's not just enough to deceive them to get

11   something from them because in that case, a large part of the

12   advertising business in the United States would be subject to

13   the wire and mail fraud statutes.  There has to be some -- in

14   other words, it's not just an intent to deceive.  It needs to

15   be an intent to deceive and to cheat to get some -- to harm

16   them in some way.

17       That's my request.

18           THE COURT:  Submitted?

19           MS. WEST:  Not quite.  I -- but almost.

20   We propose that the Court go with the Ninth Circuit model

21   jury instruction, which is in the district, and submitted.

22           THE COURT:  I will follow the Ninth Circuit's model

23   instruction.  I agree that the Ninth Circuit jury instruction

24   can visit and revisit its instructions from time to time, but

25   I'm going to go with their instructions as printed.

1          MR. BABCOCK:  Fair enough.

2       Finally, I had some concern about the -- which is the last

3    paragraph at the bottom of that instruction, not in the --

4          THE COURT:  31 or 48 or which one?

5          MR. BABCOCK:  I'm sorry.  40 -- on the wire fraud,

6    47.

7          THE COURT:  Yes.

8          MR. BABCOCK:  The first paragraph on mine is in bold

9    and underlined saying, "E-mail, fax, or Internet communication

10   may constitute wire transmission."  Is that -- is that from the

11   instruction or that's proposed -- that was something we added?

12         MS. WEST:  That's from -- yeah, it is a modification,

13   and that's from the two cases that are submitted as authority

14   immediately following it:  United States v. Green, Ninth

15   Circuit 2010, and United States v. Johnson, Ninth Circuit,

16   2002.

17         MR. BABCOCK:  Well, I'm familiar with Green because I

18   did that trial, but I did not do the appeal, and I honestly

19   didn't go read it last night.  So I'll defer to the Court on

20   that.

21         THE COURT:  Give me just one moment.

22      Well, the first modification in this instruction relative

23   to Ninth Circuit Pattern Instruction 8.124 is the addition of

24   an element which increases the Government's burden.  I think as

25   to that, the defendant has no objection.

1          MR. BABCOCK:  No objection.

2          THE COURT:  So your objection is to the sentence "An

3     e-mail, fax, or Internet communication from one state to

4     another may constitute a wire transmission in interstate

5     commerce"?

6          MR. BABCOCK:  Correct.  Yes.

7          THE COURT:  The Government has represented in

8     these -- in these proposed instructions in its citation to

9     authority that in the cases of <u>United States v. Green</u>, 592

10    F.3d, 1057, and the <u>United States v. Johnson</u>, 297 F.3d, 845,

11    that the Ninth Circuit affirmed wire fraud convictions based on

12    telephone calls, e-mails, and faxes.

13         Assuming that the Government's citations are accurate, then

14    the instruction as drafted is accurate.  I will read those --

15    I'll read the <u>Green</u> case overnight, and if it doesn't say what

16    Ms. West says it says, then I'll pull the sentence tomorrow,

17    but as -- as -- but my current intention is to give the

18    instruction as submitted.

19         MR. BABCOCK:  That's fine.

20         THE COURT:  I would like to get a set of these

21    instructions that don't have any citation to authority and

22    don't have any bold face or underlining, which the jurors might

23    mistake for emphasis --

24         MR. BABCOCK:  Importance.

25         THE COURT:  -- and they'll wonder why and to have a

1    set of instructions for each of the jurors.  Can we do that?

2            MS. WEST:  Yes.  Absolutely.

3        Before we conclude on the jury instructions, however, Mr.

4    Babcock had raised another matter to me which I -- which I

5    think is fine and appropriate, and that relates to Proposed

6    Instruction No. 49, conspiracy to commit visa fraud.

7            THE COURT:  Yes.

8            MS. WEST:  There were three modifications.  I believe

9    Counsel and I agreed on their -- the first is dealing with the

10   first element where it states there was an agreement between

11   two or more persons to commit.  We would agree to have it say

12   "to commit visa fraud" and omit the language "at least one

13   crime as charged in the indictment" because the only

14   conspiracy --

15           THE COURT:  That's fine.

16           MS. WEST:  Okay.

17           THE COURT:  Yes.

18           MS. WEST:  And then it would be the same at Line 20

19   of -- of that same instruction where it says, "You must find

20   that there was a plan to commit" and then delete the rest of

21   that sentence and instead say "visa fraud."

22           THE COURT:  Yes.  That's fine.

23           MS. WEST:  And then the third was to the same

24   instruction but after the third element to specify there what

25   the overt acts alleged in the indictment are, and I'm happy to

1    submit this in paper up to the Court at the same time we

2    prepare the modification relating to Paragraphs 9 through 14.

3         But we would propose inserting there, "The overt act" --

4    bless you -- "the overt acts alleged are..." and then insert

5    Subparagraphs A through F of Paragraph 21 of the indictment,

6    which is the delineation of the overt acts.

7              THE COURT:  Yes.  I just read that, those overt acts

8    in connection with -- with our earlier discussion.  That's

9    fine.

10             MS. WEST:  Is that it?

11             MR. BABCOCK:  I had one final modification to that

12   instruction, Instruction 49, your Honor.

13             THE COURT:  Yes.

14             MR. BABCOCK:  Flipping to the second page of the

15   instruction, at the end of the -- not the very last paragraph

16   but the second to last paragraph --

17             THE COURT:  Yes.

18             MR. BABCOCK:  -- I was going to propose language --

19   the following language.

20             THE COURT:  Where in this paragraph?

21             MR. BABCOCK:  I was just suggesting at the end of the

22   second-to-last paragraph.

23             THE COURT:  All right.

24             MR. BABCOCK:  "Proof that the defendant worked with

25   or employed an alleged coconspirator does not by itself show

```
 1    that they were members of the charged conspiracy."  I think
 2    that's an accurate statement of the law and sort of focuses it
 3    on this particular case.
 4            MS. WEST:  The Government would oppose that and go
 5    with the -- everything as it exists, which is the model jury
 6    instruction, and I think it's covered in the final sentence of
 7    that second-to-last paragraph where the model instruction
 8    states that a person does not become a co -- a conspirator
 9    merely by associating with --
10            THE COURT:  The Court will give the instruction as
11    drafted by the Ninth Circuit.
12            MR. BABCOCK:  Fair enough.
13        On -- flipping to Instruction 51, your Honor, I did not --
14    had not yet spoken to Ms. West about this one, but I think we
15    need to insert the date, which is in Count 20.  It's a specific
16    false statement.  It's alleged to be September 24th, 2010, and
17    it would probably go most naturally right after the word
18    "first."
19        "First, on September 24th, 2010, the defendant made or
20    used..."
21            MS. WEST:  I'm sorry.
22        Well, I think perhaps a more natural place would be the
23    first sentence of the instruction.  "The defendant is charged
24    in Count 20 of the indictment with knowingly and willfully
25    making or using..." and we'd say "on or about September 24th,
```

1    2010, a document containing..."

2            MR. BABCOCK:  That's fine, too.  I just think we need

3    the date.

4            THE COURT:  The Court will adopt that version that

5    both parties now agree on.

6            MR. BABCOCK:  I think we need the same modification

7    to Instruction 52 with the relevant date being January 7th,

8    2011.

9            MS. WEST:  That's fine.  I can submit an amended

10   version saying "making a false statement on or about

11   January 7th, 2011, in a matter" and so forth.

12           MR. BABCOCK:  And then we just need to take out the

13   pertinent instruction on Ms. Su's decision whether or not to

14   testify, 22 or 23.

15       I think that's all I have.

16           MS. WEST:  And we would also delete Count 23, which

17   relates to the count we just dismissed.

18       And Mr. Rhyne reminds me further that with regard to

19   Proposed Instruction No. 55, while I changed it in the caption,

20   I did not in the first sentence of that instruction to reflect

21   the counts that had been deleted.  So we will do that.

22           THE COURT:  Okay.  Are there any substantive

23   instructions that need to come out as a result of the dismissal

24   of any counts in the indictment?

25           MS. WEST:  I don't believe so.

```
1              MR. BABCOCK:  No.

2              THE COURT:  Okay.

3              MR. BABCOCK:  Will the --

4              THE COURT:  The Ninth Circuit Model Instruction 2.13

5     relates to the dismissal of some charges against the defendant,

6     and my question is whether either side is requesting that I now

7     give that instruction in light of the dismissal of certain

8     counts of the indictment.

9              MS. WEST:  I know Mr. Rhyne was just suggesting that

10    and looking for that himself.  So I'm glad your Honor found it.

11    Let me just take a quick look.

12        I think that's appropriate given that it's a model

13    instruction.

14             THE COURT:  The -- the two words in brackets and

15    italics in that instruction, the remaining counts when filled

16    in, will be somewhat lengthy, but nonetheless I think it's a

17    good idea to give the instruction.

18             MS. WEST:  And my only question -- and I'm just

19    thinking aloud on it -- is given that the indictment wouldn't

20    be going to the jury, I'm wondering if it's something that's

21    still appropriate to give.  I don't have an objection to giving

22    it.

23             THE COURT:  I think -- I -- I can see giving it and

24    not be reading the second sentence.  In other words, the jury

25    is going to be instructed at great length about what charges
```

1    are still for them to decide, but the fact that there's been a

2    dismissal I think I would like to acknowledge in this

3    instruction, and that's what the first paragraph does.

4            MS. WEST:  I think that's fine.  Otherwise, they may

5    just, when they go through the jury instructions, be wondering

6    what happened to Counts 28 and 30 and so forth.  That's fine.

7            THE COURT:  Mr. Babcock?

8            MR. BABCOCK:  No objection.

9            THE COURT:  That's what the Court will do.

10       Can the Government include 2.13 as modified, please, in the

11   set.

12           MS. WEST:  Just the first paragraph; is that correct?

13           THE COURT:  Correct.

14           MS. WEST:  Will do.

15           THE COURT:  Oh.  Perhaps instead of "remaining

16   counts," we can say --

17           MS. WEST:  "The counts to which I will instruct you"?

18           THE COURT:  "Only for the remaining counts of the

19   indictment as to which I will instruct you."  I will -- I just

20   told them that I dismissed some counts from the indictment.  So

21   the idea that there's a charging document that's separating the

22   counts will not be --

23           MS. WEST:  Will the Court say that the Court

24   dismissed them or the Government moved to dismiss?  How do you

25   plan to couch it?

```
 1              THE COURT:  I -- I would adopt the language of the

 2    model instruction, which is not to actually use the word

 3    "dismiss" --

 4              MS. WEST:  Right.

 5              THE COURT:  -- but simply to say, "These counts or

 6    charges are no longer before you."  This -- this instruction is

 7    intended to be used in a variety of circumstances, including

 8    where the Court has granted a motion for acquittal as to

 9    certain counts, and it's just sort of the jack-of-all-trades

10    instruction.

11              MS. WEST:  We'll submit on it, your Honor.

12              THE COURT:  Okay.  Mr. Babcock --

13              MR. BABCOCK:  No --

14              THE COURT:  -- do you want to be heard?

15              MR. BABCOCK:  No objection either way.

16              THE COURT:  Let me say this:  I would like to include

17    that second sentence that just says, "The defendant is on trial

18    only for the remaining charges in the indictment as to which

19    the Court is instructing you.  Now, you may consider the

20    evidence presented only as it relates to the remaining counts."

21         And if you didn't capture my exact words, that's fine.  If

22    you can just show it to Mr. Babcock before court starts

23    tomorrow, anything along those lines that's acceptable to the

24    parties is fine with the Court.

25              MS. WEST:  That's fine.
```

1730

```
1              THE COURT:  Okay.  Anything else we need to -- any

2     other comments or objections regarding the jury instructions?

3              MR. BABCOCK:  No.

4              MS. WEST:  No.

5              MR. BABCOCK:  Is -- I'm sorry.  Is Ms. West making

6     these changes, or is the Court and --

7              THE COURT:  I'm hoping Ms. West is going to make

8     them.

9              MS. WEST:  I will be happy to do it.  I will send a

10    copy to Mr. Babcock.  So you should just tell me whether you

11    want me to wait for your response before sending it to --

12             THE COURT:  I had the parties send me the Word

13    document because in the state court, I used to do all this

14    stuff myself.  Does that interest the lawyers?  All my

15    colleagues thought I was crazy for taking on that extra work.

16    That's just how I like to do it, but now I'm in the Federal

17    Court.  I have these excellent lawyers in front of me.  So I'm

18    taking advantage of it.

19             MS. WEST:  I will prepare it.  I will send a copy to

20    Mr. Babcock and this evening send a copy to the Court.

21             THE COURT:  Very good.

22        Thank you.

23             MR. BABCOCK:  Okay.

24             THE COURT:  Comments regarding the United States's

25    proposed form of verdict?
```

1        MR. BABCOCK:  No, your Honor.  It looks fine.

2        THE COURT:  Well, in the trial, I'll just change that

3    to "Verdict" in the caption.

4        MS. WEST:  And we'll delete the reference to our

5    office up above.

6        THE COURT:  Yes, and the footer.  If you're like me,

7    you forget about the footers sometimes.

8        MS. WEST:  And we've left it as "Oakland Division."

9    Is that appropriate?

10        THE COURT:  It's a good catch.  I would -- I think we

11    probably ought to take out "Oakland Division" because it's

12    surplus.  It should be -- that is an error, and they'll -- they

13    think about it.  It doesn't matter.  It doesn't relate to

14    anything.  I promise it will be filed in the right place even

15    if you take out "Oakland Division."

16        MS. WEST:  And then we will -- I can send a revised

17    copy of this to the Court as well.  This already deletes the

18    dismissed money-laundering counts, but in light of our decision

19    to dismiss Count 23, I will -- I will delete that as well.

20        THE COURT:  Okay.  Mr. Babcock, is it possible that

21    your client will determine overnight that she does, in fact,

22    wish to testify?  I asked you earlier whether you thought Ms.

23    Su would testify, and you said probably not.

24        MR. BABCOCK:  That's right.

25        THE COURT:  So my question -- my question really at

1    least is as much for the Government's benefit as mine but

2    partially for mine -- is to find out whether that's a final

3    decision or whether over the course of the evening she might

4    change her mind.

5              MR. BABCOCK:  I think it's fine.

6              THE DEFENDANT:  It's not.

7              MR. BABCOCK:  Huh?

8              THE DEFENDANT:  So now I'm -- I'm up to not -- not

9    testifying.

10             THE COURT:  We'll check with you in the morning.

11             MR. BABCOCK:  I'm being as certain as I can, your

12   Honor.  I'm sorry.

13             THE COURT:  I understand.

14             MR. BABCOCK:  It's --

15             THE COURT:  I -- I -- I won't inquire further

16   anymore.

17        Anything else for today?

18             MS. WEST:  Yes.  One matter, your Honor, just to flag

19   it for the Court.  This may have been something we should have

20   addressed earlier through a motion in limine, and the way it

21   came in was sort of gradual.  So at some point, it just seemed

22   like we had missed the opportunity to object on it.

23        There were a lot of references, as I'm sure your Honor

24   caught, particularly in the testimony of Agent Mackey to

25   forfeiture.  Forfeiture, as the Court knows, is part of

1733

1    sentencing, and generally references to sentencing are

2    inappropriate during the trial stage of proceedings.

3         They've already come in through questioning of Agent

4    Mackey, and a decision was made not to object at that point.

5    However, we do want to flag for the Court that we think that

6    that would be an inappropriate area of argument to the jury.

7    What I see potentially coming is some sort of argument that

8    they should not convict her because she's already being

9    adequately punished through forfeiture or seizure or something

10   like that.

11        So to the extent that that's something that Counsel is

12   anticipating, we think that's inappropriate and would object.

13             THE COURT:  Does the defendant want -- does the

14   defendant want to be heard?

15             MR. BABCOCK:  I don't -- I don't really have a need

16   to be heard as to that issue.  I do intend to argue it in a

17   different fashion, though, I believe.

18             THE COURT:  I think that will be -- that you will

19   argue that the motive of the Government was to get money, and

20   that's why these agents -- that's why these prosecutors are

21   proceeding against your client?

22             MR. BABCOCK:  I think that's an appropriate argument

23   and inference.

24             THE COURT:  That's the other thread that I picked up

25   from the defendant's questions during this trial.

1734

1          MS. WEST:  Well, that's more nuanced than I was able

2     to pick up, your Honor.

3          So as long as we have a -- if we can get a ruling from the

4     Court sort of proactively on this, then it would be -- Counsel

5     should not argue aspects of sentencing in closing.  Then to the

6     extent that they want to argue a motivation of the Government,

7     I suppose -- I don't have a problem with that as long as it's,

8     you know, something that's based on the evidence.

9          THE COURT:  I don't hear the defendant responding or

10    posing to an objection that reference to sentencing is

11    inappropriate.  So I will indicate -- you know, I will sustain

12    that objection.  I also hear the Government saying that what

13    Mr. Babcock says is the reason that they're prosecuting Ms. Su

14    is because they want her money.  The Government's not

15    objecting.

16         MS. WEST:  Well -- so hearing those words coming out

17    of your Honor's mouth, I'm reconsidering that.

18         THE COURT:  I'm saying in a way I think Mr. Babcock

19    might say in closing argument.

20         MS. WEST:  And to the extent that that is an effort

21    to argue prosecutorial discretion or something similar in the

22    reason for the Government being here in trial, I don't think

23    that is an appropriate argument.

24         Closing argument, of course, is for the purpose of arguing

25    the evidence as it has been presented in the case and the

Case4:11-cr-00288-JST   Document154   Filed06/30/14   Page25 of 27

1735

```
 1        appropriate inferences to the jury, but that all needs to come

 2        down to whether or not she is guilty or the Government has

 3        proved beyond a reasonable doubt the facts of the case and

 4        not -- and motivation behind it.

 5                MR. BABCOCK:  I would certainly agree that I'm not

 6        allowed to argue sentencing.  I certainly would disagree that

 7        I'm allowed to argue whether or not the Government has a

 8        motive.  I think that's an entirely appropriate argument in any

 9        case if there is evidence of some kind of motive.

10                MS. WEST:  That really sounds to the Government like

11        an argument for jury nullification rather than anything that

12        goes to the elements of the offenses.

13                MR. BABCOCK:  It goes to the bias is what it goes to.

14        It's also a little late.

15                THE COURT:  There's probably a rule of law about

16        whether or not the defendant is entitled to argue the

17        Government's motive in closing argument.  With all that said --

18        I mean, there's cases that I've just first had -- and I can't

19        find the rule yet.  So I think the Government should find out

20        what the rule is.

21            How would you like me to communicate the Court's ruling to

22        you?

23                MR. BABCOCK:  When the Court figures out an answer --

24        when the Court figures out an answer, it can shoot us an e-mail

25        or call or whatever.
```

1736

1          MS. WEST:  That's fine.

2          THE COURT:  Or I can file -- I can file a text on the

3     order or minute order.

4          MR. BABCOCK:  It's really --

5          THE COURT:  That will be on your e-mail.

6          MR. BABCOCK:  You don't need to go to great trouble.

7     Just let me know in the morning, and I'll work around it either

8     way if I need to, but I don't think it will require great

9     logistics.

10         THE COURT:  Is there anything else that we need to

11    discuss this afternoon?

12         MS. WEST:  I think we're all set.

13         MR. BABCOCK:  That's it, your Honor.

14         THE COURT:  Thank you.

15         MS. WEST:  Thank you.

16         MR. RHYNE:  Thank you, your Honor.

17         THE CLERK:  All rise.

18      Court is in recess.

19              (Proceedings adjourned at 2:50 p.m.)

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5          I, James C. Pence, Federal Official Realtime Court

6    Reporter, in and for the United States District Court for the

7    Northern District of California, do hereby certify that

8    pursuant to Section 753, Title 28, United States Code that the

9    foregoing is a true and correct transcript of the

10   stenographically reported proceedings held in the

11   above-entitled matter and that the transcript page format is in

12   conformance with the regulations of the Judicial Conference of

13   the United States.

14

                            Dated this 20th day of June, 2014.
15

16

17   _____
                            JAMES C. PENCE, RMR, CRR, CSR NO. 13059
18                          FEDERAL OFFICIAL COURT REPORTER

19

20

21

22

23

24

25