1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3          BEFORE THE HONORABLE JON S. TIGAR

4    UNITED STATES OF AMERICA,        )
                                      ) Volume 13
5              Plaintiff,             ) Pages 1916 - 1938
                                      )
6         VS.                         ) NO. 11-00288 JST
                                      )
7    SUSAN XIAO-PING SU,              )
                                      ) San Francisco, California
8              Defendant.            ) Monday, March 24, 2014
     _____) 11:40 a.m.

9

10              **TRANSCRIPT OF COURT PROCEEDINGS**

11

     **APPEARANCES:**

12

13   **For Plaintiff:**        MELINDA HAAG
                               UNITED STATES ATTORNEY
14                             1301 Clay Street, Suite 340S
                               Oakland, California 94612
15                    BY:   **HARTLEY M.K. WEST, ESQ.**
                            **WADE M. RHYNE, ESQ.**
16                          **ASSISTANT UNITED STATES ATTORNEYS**

17

     **For Defendant:**        Law Offices of Erik G. Babcock
18                             717 Washington Street, Second Floor
                               Oakland, California 94607
19                    BY:   **ERIK G. BABCOCK, ESQ.**
                            **ATTORNEY AT LAW**

20

21

22

23

24

     Reported By:  James C. Pence, RMR, CRR, CSR No. 13059
25                 Official Court Reporter - U.S. District Court
                   Computerized Transcription By Case CATalyst

1917

1                     **I N D E X**

2    Monday, March 24, 2014 - Volume 13

3                                     **PAGE**  **VOL.**

4    Verdict                            1918  13

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    <u>Monday, March 24, 2014</u>                                    <u>11:40 a.m.</u>

2                              ---oOo---

3              (Proceedings heard in the presence of the jury:)

4              THE COURT:  Good morning.  It's still morning barely.

5    All the jurors are in their newly assigned seats because our

6    alternates have been excused.  So we shuffled people around a

7    little bit.  The lawyers and the defendant are at counsel

8    table.

9         Would the foreperson of this jury please identify himself.

10        Good morning, Mr. Sockolov.  I have received a note from

11   the jury that the jury has reached a unanimous verdict; is that

12   true?

13             JUROR NO. 5:  Yes.  Yes, your Honor.

14             THE COURT:  Would you please hand the verdict form to

15   my courtroom deputy, please.

16        Mr. Noble, will you now read the verdict in open court?

17             THE CLERK:  Yes, your Honor.

18        Ladies and gentlemen of the jury, listen to your verdict as

19   it will stand recorded.

20        United States District Court, Northern District of

21   California, United States of America, Plaintiff, versus Susan

22   Xiao-Ping Su, Defendant, Case No. CR 11-00288 JST.  Verdict

23   Form.

24        Count 1.  We, the jury, find defendant Susan Xiao-Ping Su

25   in the above-entitled case guilty of wire fraud as charged in

1   Count 1 relating to an electronic submission of a Form I-17 on

2   or about September 15th, 2008.

3       Count 2.  We, the jury, find defendant Susan Xiao-Ping Su

4   in the above-entitled case guilty of wire fraud as charged in

5   Count 2 relating to an e-mail from defendant regarding

6   recruiting Indian students on or about February 21st, 2009.

7       Count 3.  We, the jury, find defendant Susan Xiao-Ping Su

8   in the above-entitled case guilty of wire fraud as charged in

9   Count 3 relating to a Student and Exchange Visitor Information

10  System, SEVIS, entry for B.C. on or about January 10th, 2010.

11      Count 4.  We, the jury, find defendant Susan Xiao-Ping Su

12  in the above-entitled case guilty of wire fraud as charged in

13  Count 4 relating to a SEVIS entry for K.C. on or about

14  January 27th, 2010.

15      Count 5.  We, the jury, find defendant Susan Xiao-Ping Su

16  in the above-entitled case guilty of wire fraud as charged in

17  Count 5 relating to a SEVIS entry for S.A. on or about

18  July 27th, 2010.

19      Count 6.  We, the jury, find defendant Susan Xiao-Ping Su

20  in the above-entitled case guilty of wire fraud as charged in

21  Count 6 relating to a SEVIS entry for K.D. on or about

22  July 27th, 2010.

23      Count 7.  We, the jury, find defendant Susan Xiao-Ping Su

24  in the above-entitled case guilty of wire fraud as charged in

25  Count 7 relating to a SEVIS entry for M.R. on or about

1    August 31st, 2010.

2        Count 8.  We, the jury, find defendant Susan Xiao-Ping Su

3    in the above-entitled case guilty of wire fraud as charged in

4    Count 8 relating to a SEVIS entry for R.B. on or about

5    September 7th, 2010.

6        Count 9.  We, the jury, find defendant Susan Xiao-Ping Su

7    in the above-entitled case guilty of wire fraud as charged in

8    Count 9 relating to an e-mail from defendant containing a Form

9    I-20, transcript, and a letter of good standing for S.A. on or

10    about September 20th, 2010.

11        Count 10.  We, the jury, find defendant Susan Xiao-Ping Su

12    in the above-entitled case guilty of wire fraud as charged in

13    Count 10 relating to an e-mail from defendant containing a Form

14    I-20, transcript, and a letter of good standing for K.D. on or

15    about September 24th, 2010.

16        Count 11.  We, the jury, find defendant Susan Xiao-Ping Su

17    in the above-entitled case guilty of wire fraud as charged in

18    Count 11 relating to an e-mail from defendant containing a Form

19    I-20, transcript, and letter of good standing for M.R. on or

20    about January 7th, 2011.

21        Count 12.  We, the jury, find defendant Susan Xiao-Ping Su

22    in the above-entitled case guilty of wire fraud as charged in

23    Count 12 relating to an e-mail from defendant containing a Form

24    I-20, transcript, and letter of good standing for R.B. on or

25    about January 7th, 2011.

1        Count 13.  We, the jury, find defendant Susan Xiao-Ping Su

2    in the above-entitled case guilty of mail fraud as charged in

3    Count 13 relating to a Form I-17 and accompanying documents,

4    including a DSO verification letter from defendant to the

5    Student and Exchange Visitor Program, SEVP, on or about

6    December 23rd, 2008.

7        Count 14.  We, the jury, find defendant Susan Xiao-Ping Su

8    in the above-entitled case guilty of mail fraud as charged in

9    Count 14 relating to three articulation agreements sent from

10   defendant to SEVP on or about February 10th, 2009.

11       Count 15.  We, the jury, find defendant Susan Xiao-Ping Su

12   in the above-entitled case guilty of conspiracy to commit visa

13   fraud as charged in Count 15.

14       Count 16.  We, the jury, find defendant Susan Xiao-Ping Su

15   in the above-entitled case guilty of visa fraud as charged in

16   Count 16 relating to S.A. on or about July 27th, 2010.

17       16a.  We, the jury, unanimously find that defendant Susan

18   Xiao-Ping Su forged or falsely made the Form I-20; knowingly

19   used, attempted to use, possessed, obtained, or received the

20   Form I-20.

21       Count 17.  We, the jury, find defendant Susan Xiao-Ping Su

22   in the above-entitled case guilty of visa fraud as charged in

23   Count 17 relating to K.D. on or about July 27th, 2010.

24       17a.  We, the jury, unanimously find that defendant Susan

25   Xiao-Ping Su forged or falsely made the Form I-20; knowingly

1    used, attempted to use, possessed, obtained, or received the

2    Form I-20.

3        Count 18.  We, the jury, find defendant Susan Xiao-Ping Su

4    in the above-entitled case guilty of visa fraud as charged in

5    Count 18 relating to M.R. on or about August 31st, 2010.

6        18a.  We, the jury, unanimously find that defendant Susan

7    Xiao-Ping Su forged or falsely made the Form I-20; knowingly

8    used, attempted to use, possessed, obtained, or received the

9    Form I-20.

10       Count 19.  We, the jury, find defendant Susan Xiao-Ping Su

11   in the above-entitled case guilty of visa fraud as charged in

12   Count 19 relating to R.B. on or about September 7th, 2010.

13       19a.  We, the jury, unanimously find that defendant Susan

14   Xiao-Ping Su forged or falsely made the Form I-20; knowingly

15   used, attempted to use, possessed, obtained, or received the

16   Form I-20.

17       Count 20.  We, the jury, find defendant Susan Xiao-Ping Su

18   in the above-entitled case guilty of use of a false document as

19   charged in Count 20 on or about September 24th, 2010.

20       Count 21.  We, the jury, find defendant Susan Xiao-Ping Su

21   in the above-entitled case guilty of false statement to a

22   government agency as charged in Count 21 on or about

23   January 7th, 2011.

24       Count 22.  We, the jury, find defendant Susan Xiao-Ping Su

25   in the above-entitled case guilty of alien-harboring as charged

1    in Count 22 relating to V.D.

2        22a.  We, the jury, unanimously find that defendant Susan

3    Xiao-Ping Su acted for the purpose of commercial advantage or

4    private financial gain.  Yes.

5        Count 24.  We, the jury, find defendant Susan Xiao-Ping Su

6    in the above-entitled case guilty of alien-harboring as charged

7    in Count 24 relating to A.D.

8        24a.  We, the jury, unanimously find that defendant Susan

9    Xiao-Ping Su acted for the purpose of commercial advantage or

10   private financial gain.  Yes.

11       Count 25.  We, the jury, find defendant -- defendant Susan

12   Xiao-Ping Su in the above-entitled case guilty of unauthorized

13   access of a government computer as charged in Count 25.

14       Count 26.  We, the jury, find defendant Susan Xiao-Ping Su

15   in the above-entitled case guilty of money-laundering as

16   charged in Count 26 relating to a $36,783.61 check used to

17   purchase a 2009 Mercedes Benz on or about November 28th, 2009.

18       Count 27.  We, the jury, find defendant Susan Xiao-Ping Su

19   in the above-entitled case guilty of money-laundering as

20   charged in Count 27 relating to a $78,700 wire transfer to

21   purchase 1087 Murrieta Boulevard, Number 133, in Livermore,

22   California, on or about February 25th, 2010.

23       Count 29.  We, the jury, find defendant Susan Xiao-Ping Su,

24   in the above-entitled case guilty of money-laundering as

25   charged in Count 29 relating to a $160,986.87 cashier's check

1    used to purchase 405 Boulder Court, Suite 800, in Pleasanton,

2    California, on or about April 9th, 2010.

3         Count 31.  We, the jury, find defendant Susan Xiao-Ping Su

4    in the above-entitled case guilty of money-laundering as

5    charged in Count 31 relating a -- to a $261,307.49 cashier's

6    check used to purchase 405 Boulder Court, Suite 700, in

7    Pleasanton, California, on or about July 8th, 2010.

8         Count 32.  We, the jury, find defendant Susan Xiao-Ping Su

9    in the above-entitled case guilty of money-laundering as

10   charged in Count 32 relating to a $700,000 cashier's check used

11   to purchase 2890 Victoria Ridge Court in Pleasanton,

12   California, on or about July 20th, 2010.

13        Count 34.  We, the jury, find defendant Susan Xiao-Ping Su

14   in the above-entitled case guilty of money-laundering as

15   charged in Count 34 relating to a $600,000 wire transfer to

16   purchase 1371 Germano Way in Pleasanton, California, on or

17   about December 15th, 2010.

18        Count 35.  We, the jury, find defendant Susan Xiao-Ping Su

19   in the above-entitled case guilty of money-laundering as

20   charged in Count 35 relating to a $1,200,000 wire transfer to

21   purchase 1371 Germano Way in Pleasanton, California, on or

22   about December 15th, 2010.

23        Dated March 24th, 2014.  Signed, Steven Sockolov,

24   Foreperson.

25             THE COURT:  Thank you, Mr. Noble.

1        Does any party wish to have the jury polled?

2              MR. BABCOCK:  Yes, please, your Honor.

3              THE COURT:  Members of the jury, as I previously

4     instructed you, either side can request that the jury in any

5     jury case, civil or criminal, be polled, and the purpose for

6     that is just to make sure that the verdict as read in open

7     court is actually the jury's verdict.

8        We won't go through each of the counts as you just heard

9     read in open court one by one, but we will ask each of you just

10    to say whether or not the verdict that you just heard read in

11    open court represents your personal verdict.

12       Mr. Noble?

13             THE CLERK:  Yes, sir.

14       Juror No. 1, is this your true and correct verdict?

15             JUROR NO. 1:  Yes.

16             THE CLERK:  Juror No. 2, is this your true and

17    correct verdict?

18             JUROR NO. 2:  Yes.

19             THE CLERK:  Juror No. 3, is this your true and

20    correct verdict?

21             JUROR NO. 3:  Yes.

22             THE CLERK:  Juror No. 4, is this your true and

23    correct verdict?

24             JUROR NO. 4:  Yes.

25             THE CLERK:  Juror No. 5, is this your true and

```
1    correct verdict?

2              JUROR NO. 5:  Yes.

3              THE CLERK:  Juror No. 6, is this your true and

4    correct verdict?

5              JUROR NO. 6:  Yes.

6              THE CLERK:  Juror No. 7, is this your true and

7    correct verdict?

8              JUROR NO. 7:  Yes.

9              THE CLERK:  Juror No. 8, is this your true and

10   correct verdict?

11             JUROR NO. 8:  Yes.

12             THE CLERK:  Juror No. 9, is this your true and

13   correct verdict?

14             JUROR NO. 9:  Yes.

15             THE CLERK:  Juror No. 10, is this your true and

16   correct verdict?

17             JUROR NO. 10:  Yes.

18             THE CLERK:  Juror No. 11, is this your true and

19   correct verdict?

20             JUROR NO. 11:  Yes, it is.

21             THE CLERK:  Juror No. 12, is this your true and

22   correct verdict?

23             JUROR NO. 12:  Yes.

24             THE CLERK:  Your Honor, the verdict is unanimous.

25             THE COURT:  Mr. Noble, I'll direct you to file and
```

1    record the verdict because the polling does verify the

2    unanimity of the jury's verdict.

3        Well, this is the last time I get to talk to you.  What you

4    just did is an extraordinary thing, but it happens every day in

5    the United States.  Both of those things are true, and that is

6    it can be commonplace in this incredible justice system that we

7    have, and nonetheless every individual incident of it, I think,

8    is tremendous.

9        You've just completed your jury service in this case

10   effective with the polling that Mr. Noble just did, and I want

11   to thank you again not only on my behalf but on behalf of all

12   the judges of this court and on behalf of all the people of the

13   United States, particularly the people in the Northern District

14   of California.

15       I told you this once before, but I think it bears

16   repeating.  Generally, we hire people to make decisions that

17   are important in the community.  We hire Congressmen,

18   Congresswomen, and we hire mayors and people on the zoning

19   board and the President and federal judges and other people,

20   and they make important decisions in our community, but the

21   Founding Fathers reserved one category of decisions to be made

22   directly by people in the community.

23       We don't hire somebody.  We go in the community and we get

24   you, and I think that the -- the results speak for themselves

25   that juries in the United States have an unparalleled

1    reputation for fairness and conscientiousness and diligence,

2    and so I really want to thank you because that's what you

3    brought to this system, and this was not an easy case.

4        The trial was a little bit long, and I know that jury room

5    right behind me is not very comfortable, and many of you came

6    from very far away, and I'm sure that you made sacrifices to do

7    this trial that I'll never know about because you didn't tell

8    me what they were, but I know there were some, and so I thank

9    you for that also.

10       Some of you may have questions about the confidentiality of

11   these proceedings.  Sometimes jurors ask, "Now can I talk about

12   it?"  And now that the case is over, I'm releasing you from my

13   prior admonition.  You can talk about this case with anybody

14   that you'd like, but it has to be with anybody that you choose

15   because you are under no obligation whatsoever to discuss this

16   case with any person.

17       There was a very light amount of media attention to the

18   case.  We have a very robust press in this country, and the

19   First Amendment is very important, and so it's possible -- I

20   don't know how likely.  It is possible members of the press may

21   choose to try to contact you, but they're in the same shoes as

22   anybody else, meaning that the decision whether to talk about

23   the case with somebody is your decision, regardless of whether

24   you're initiating the conversation or someone is initiating it

25   with you.

1          If someone wants to discuss it with you -- and I don't know

2     whether that will happen.  If you want to, you can, but you can

3     also just say, "No.  Thank you" and end the conversation.

4     That's up to you.

5          If you do decide to discuss the case with anyone, I would

6     suggest that you treat it with the degree of solemnity and that

7     whatever you do decide to say, you should act as though you

8     would be willing to say it in the presence of other jurors or

9     under oath here in open court in the presence of all the

10    parties.

11         We all need a certain measure of -- of lightness and humor

12    to get through our day, but it will always be true that -- that

13    the service that you just performed, that the task that you

14    just did is a serious one, and you should -- you should treat

15    it that way.

16         Also, please bear in mind if you do decide to discuss this

17    case that when you were deliberating, you and the other jurors

18    fully and freely stated your opinions with the understanding

19    that they were being expressed in confidence.  Confidence of

20    the deliberation process is very important to our system.  So

21    please respect the privacy of the views of other jurors.

22         I thank you so much for your service.  You've been a great

23    group of jurors, and you're now excused.

24              THE CLERK:  All rise.

25    ///

 1          (Proceedings were heard outside the presence of the jury:)

 2              THE COURT:  Everyone can retake their seats.

 3      I do want to pause the proceedings and just allow Mr. Noble

 4      to come into the courtroom so that he can make accurate notes

 5      of whatever further proceedings transpired, but we'll just wait

 6      a minute for that to happen.

 7      All right.  Mr. Noble has now reentered the courtroom.  I

 8      would like to set a sentencing date in this case, and if it's

 9      available -- if it's available on counsel's calendar, perhaps

10      in San Francisco on June the 27th in the afternoon, which is a

11      Friday afternoon.

12              MR. RHYNE:  That's fine with the Government, your

13      Honor.

14              MR. BABCOCK:  I'm sorry, your Honor.  I'm going to be

15      out of the country that whole week.

16              THE COURT:  Okay.

17              MR. BABCOCK:  I'm returning on Monday the week after

18      that, I believe.  I actually have a flight then, but I

19      appreciate it's Monday.

20              THE COURT:  Could counsel appear the prior week on

21      the 20th in the afternoon in Oakland?

22              MR. RHYNE:  That's fine with the Government, your

23      Honor.

24              MR. BABCOCK:  That should -- that should be fine,

25      your Honor.  I just hesitate because I don't see my flight

1    actually information in the calendar, but I'm virtually

2    positive it's not until the weekend after that Friday.  So the

3    20th should be fine.

4              THE COURT:  All right.  Well, if it turns out there's

5    a conflict, you can talk to the Government and request a

6    continuance.

7              MR. BABCOCK:  Sorry.  What time -- what time?

8              THE COURT:  For now, I'll set the sentencing on June

9    the 20th, 2014, at 2:00 p.m. in the Oakland court.  It's

10   difficult for me to be more specific about the courtroom

11   because they move me around over there.  I don't have a

12   permanent courtroom.

13      Ms. Su, I'm ordering you to be in the Oakland courthouse at

14   2:00 p.m. on June 20th, 2014, for sentencing.

15      I'm going to refer this matter to the probation department

16   for a written presentence report.  Ms. Su, you can have your

17   lawyer there if you'd like.  They will interview you to obtain

18   information for the presentence report, and it should be --

19   well, I'll let your lawyer give you advice about how to respond

20   to their questions.

21             MR. BABCOCK:  I'll take care of that after I get the

22   process started.

23             THE COURT:  Now, I need to address the defendant's

24   presentencing release status.

25      Mr. Babcock?

1          MR. BABCOCK:  I'd ask the Court to let her stay out.

2     You know, I didn't actually -- she originally had retained

3     counsel.  So I didn't do the original bail hearing, but -- the

4     Government can correct me if I'm wrong, but she is a U.S.

5     citizen, has been for more than 20 years, and I believe the

6     clerk or pretrial or someone has her passport.

7          MR. RHYNE:  I think that's right.

8          MR. BABCOCK:  She was -- the specific conditions that

9     she was required -- the main one that she had to do for a while

10    was to see a therapist, which she did for the first year or

11    longer after her original conditions were set, until the

12    therapist eventually said that things seemed to be going okay,

13    and the magistrate -- I believe you allowed her to stop going

14    to court-ordered therapy.

15         Not unmindful of the fact that she's had what I would call

16    some tardiness at trial but never a failure to appear -- as the

17    Court notes, she's been here every day mostly on time but not

18    always.  So I really don't think she's going anywhere.

19         Her whole family is here, her mom, her sister, her

20    children, her two daughters; that is, her whole life is in the

21    Bay Area.  And she's really actually without any financial

22    resources any longer.  The Government has seized every account

23    that was associated with her, and -- which is why she needed

24    court-appointed counsel.

25         I don't see her as a flight risk at this point.

1          MR. RHYNE:  Your Honor, we are moving for remand

2     pursuant to 3143(a), which states that the Court shall order

3     the defendant detained unless there's a finding by clear and

4     convincing evidence that the defendant is not a flight risk or

5     a danger.  We think that the procedural posture of the case has

6     obviously changed a lot since Ms. Su -- or since Dr. Su was out

7     on pretrial release.

8          As defense counsel noted, she had trouble throughout trial

9     showing up on time and comporting herself with the expectations

10    of the Court, but most importantly, the fact that she was

11    reaching out and interfering with witnesses during the trial

12    after being repeatedly warned by the Court not to do so raises

13    serious concerns with the Government.

14         That's also coupled with Judge Ryu's initial concerns about

15    Ms. -- about Dr. Su possibly harming herself at the beginning

16    of this case.  We think that --

17         THE COURT:  Wasn't there evidence in this trial that

18    she was committed at least once pursuant to California Welfare

19    and Institutions Code Section 5150?

20         MR. RHYNE:  There was one reference to that --

21         MR. BABCOCK:  Yes.

22         MR. RHYNE:  -- in Exhibit 850, and that was the claim

23    that she filed against the Department of Homeland Security.  I

24    think that might be what the Court is referring to.

25         THE COURT:  And that was during the investigatory --

1    that was in the phase following her arrest?

2              MR. BABCOCK:  You know, actually, your Honor, if I

3    might, she was 5150 once.  To my knowledge, it was before --

4    before Tri-Valley University was even started.  I want to say

5    in 2007.  It was only for 48 hours.  She basically had a

6    nervous breakdown at the time, and I'm not aware of any

7    subsequent commitments.

8              MR. RHYNE:  I don't know for certain, your Honor.

9    All I know is what was in Exhibit 850.  So we would have to

10   check on that in order to get an accurate answer for the Court.

11   We know that Judge Ryu's concerns at the time were probably

12   more present now given the procedural posture of the case.

13         And on that, we'd submit.

14              THE COURT:  Mr. Babcock?

15              MR. BABCOCK:  I don't think she's -- I -- I'm always

16   a little leery speaking -- predicting psychiatric issues.  I'm

17   not a particular expert, but she's -- the Court can consider, I

18   suppose -- and I wasn't there for the original hearing.  So I

19   don't know exactly what raised Judge Ryu's concerns, but I do

20   know there were concerns, and she did order therapy, which

21   Ms. -- Dr. Su went to for over a year.

22         So -- but I really don't think she's a flight risk.  I --

23   based on my personal interactions and observations, I have not

24   seen any evidence that she's a danger to herself, but I'm not

25   opposed to sending her to therapy just to alleviate any concern

1    in that regard.

2         MR. RHYNE:  Your Honor, we renew our motion.  We do

3    believe she should be remanded.

4         THE COURT:  I find the defendant has failed to meet

5    her burden by clear and convincing evidence that she's not

6    likely to flee or pose a danger to the safety of any other

7    person or the community, and I will remand her into the custody

8    of the United States Marshal pending sentencing.

9         Nobody would remand someone just for being tardy a couple

10   of times, but I think that -- and that's not what's occurring

11   here.  Dr. Su has a demonstrated incapacity to comply with the

12   Court's reasonable orders, and it is true that she was either

13   unwilling or unable, and I think it might have been not able.

14   She just couldn't stop herself from contacting other persons in

15   the case.

16        She does have a history of mental health issues that give

17   me actually at least as much concern about her safety as

18   anybody else's, but now that she stands convicted of these many

19   counts and is suddenly facing for the first time the

20   possibility of the consequences of those convictions, I -- in

21   light of her prior failures to comply with the Court's orders

22   and her prior history of mental health issues, I don't think

23   she can meet the clear and convincing burden that she has, and

24   so I'll order her remanded.

25        Is there anything further that we need to discuss at this

1936

1       point?

2               MR. BABCOCK:  There are two things, I think, one

3       having to do with our -- my Rule 29 motion and I guess the

4       other having to do with the forfeiture end of the case.  Both

5       are just more, I think, scheduling and briefing matters.

6               MS. WEST:  As to the forfeiture, the Government

7       intends to file a preliminary order of forfeiture in the near

8       future, and then if there are issues that are contested, then

9       we can figure out if there needs to be a hearing.

10              THE COURT:  All right.  Does the defendant wish to

11      brief her Rule 29 motion?

12              MR. BABCOCK:  You know, I'd like to think about it

13      and be given an opportunity if I might.

14              THE COURT:  I can set this for status in a week.  The

15      Government will probably have a time frame for its forfeiture.

16      You all can talk about that, and you can decide whether or not

17      you want to file a brief.

18              MR. BABCOCK:  What day are we talking about?

19              THE COURT:  Either this Friday or the following one

20      in the morning, both in San Francisco.

21              MR. BABCOCK:  I'm sorry, your Honor.  Those are both

22      particularly complicated days for me.

23              THE COURT:  What if we did --

24              MR. BABCOCK:  When is the Court's San Francisco

25      calendar?

1937

```
1              THE COURT:  The two days I just gave you.

2              MR. BABCOCK:  Oh.  It's Fridays.

3              THE COURT:  We can specially set this thing.  Just

4    give me a minute.

5              MR. BABCOCK:  Sorry.  I had planned on originally

6    estimating this trial going to April.  So all my other things

7    have been --

8              THE COURT:  Yes.

9              MR. BABCOCK:  -- stepped up on Fridays.

10             THE COURT:  Well, we can do this a week from today in

11   the afternoon.  That would be the 31st.

12             MR. BABCOCK:  Actually, I'm going to be out of the

13   immediate Bay Area.  I can do -- I don't mean to -- mean to be

14   difficult, your Honor.  I can make virtually any other --

15             THE COURT:  Tuesday morning, April 1st?

16             MR. BABCOCK:  Perfect.

17             THE COURT:  Done.

18        The Court will set this matter for a status conference at

19   9:30 a.m. on April 1st, 2014, in Courtroom 9.

20             MR. BABCOCK:  Thank you.

21             THE COURT:  Other matters?

22             MS. WEST:  I don't believe so.

23             MR. RHYNE:  No, your Honor.

24             MR. BABCOCK:  I think that wraps it up.

25             THE COURT:  Thank you.
```

1938

```
 1        Court's in recess.
 2                MS. WEST:  Oh.  Your Honor --
 3                THE COURT:  Yes.
 4                MS. WEST:  -- I think we need something from the
 5       Marshal's Office to receive Dr. Su.
 6                MR. BABCOCK:  I can take her upstairs to the
 7       marshals.
 8                THE COURT:  They're -- we anticipated this
 9       eventuality.  Marshal staff is in the room.  If -- it may save
10       the marshal staff -- is it possible for -- if Mr. Babcock wants
11       to convey Ms. Su up through the front door, that you can
12       accompany in that way?
13        All right.  Thank you.
14                MR. RHYNE:  Thank you, your Honor.
15                MS. WEST:  Thank you.
16                THE CLERK:  All rise.
17        Court is in recess.
18                (Proceedings adjourned at 12:17 p.m.)
19
20
21
22
23
24
25
```

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5        I, James C. Pence, Federal Official Realtime Court

6    Reporter, in and for the United States District Court for the

7    Northern District of California, do hereby certify that

8    pursuant to Section 753, Title 28, United States Code that the

9    foregoing is a true and correct transcript of the

10   stenographically reported proceedings held in the

11   above-entitled matter and that the transcript page format is in

12   conformance with the regulations of the Judicial Conference of

13   the United States.

14
                           Dated this 30th day of June, 2014.
15

16

17   _____

                     JAMES C. PENCE, RMR, CRR, CSR NO. 13059
18                   FEDERAL OFFICIAL COURT REPORTER

19

20

21

22

23

24

25