1   JOHN J. JORDAN, ESQ.   (State Bar No. 175678)
    400 Montgomery Street, Suite 200
2   San Francisco, CA   94104
    (415) 391-4814
3   (415) 391-4308 (FAX)

4   Attorney for Defendant
    SUSAN XIAO-PING SU
5

6                  UNITED STATES DISTRICT COURT

7                  NORTHERN DISTRICT OF CALIFORNIA

                   SAN FRANCISCO DIVISION
8

9   UNITED STATES OF AMERICA,            )   No. CR-11-0028 JST
                                         )
10                       Plaintiff,      )   **NOTICE OF MOTION  AND**
                                         )   **MOTION PURSUANT TO**
    v.                                   )   **FED. R. CRIM. P. 29(c)**
11                                       )
    SUSAN XIAO-PING SU,                  )
12                                       )
                                         )   Date:   October 31, 2014
13                       Defendant.      )   Time:  9:30 a.m.
                                         )   Hon. Jon S. Tigar
    _____      )
14

15  **TO:  MELINDA HAAG, UNITED STATES ATTORNEY, AND TO ASSISTANT**
        **UNITED STATES ATTORNEYS HARTLEY M.K. WEST AND WADE M.**
16      **RHYNE**

17          PLEASE TAKE NOTICE that at the time and place specified above, or as soon thereafter

18  as the matter may be heard, in the courtroom of the Honorable Jon S. Tigar, United States

19  District Judge, the defendant SUSAN XIAO-PING SU,  through her above-listed counsel, will

20  move and does hereby move this Honorable Court for entry of a judgment of acquittal, pursuant

21  to Federal Rule of Criminal Procedure 29(c).

22          The defendant separately moves  this Court for entry of an order granting a new trial,

23  pursuant to Federal Rule of Criminal Procedure 33.

24          This request is made pursuant to the Fifth and Sixth Amendments to the United States

25  Constitution; Federal Rules of Criminal Procedure 29; subsequent case law; the accompanying

26  //

27  //

28                                      1

1   memorandum and declaration; the pleadings and records on file in this matter; and  upon such

2   evidence and argument which may be presented prior to and at the hearing on this motion.

3   Dated: August 28, 2014                    Respectfully submitted,

4

5                                             /s/ John J. Jordan
                                             JOHN J. JORDAN
6                                             Attorney for Defendant
                                             SUSAN XIAO-PING SU

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          2

1  JOHN J. JORDAN, ESQ. (State Bar No. 175678)
   400 Montgomery Street
2  Suite 200
   San Francisco, CA 94104
3  (415) 391-4814
   (415) 391-4308 (FAX)
4

5  Attorney for Defendant
   SUSAN XIAO-PING SU
6
                    UNITED STATES DISTRICT COURT
7
                  NORTHERN DISTRICT OF CALIFORNIA
8
                     SAN FRANCISCO DIVISION
9

10  UNITED STATES OF AMERICA,        )    No. CR-11-0028 JST
                                     )
11                    Plaintiff,     )    **MEMORANDUM IN SUPPORT**
                                     )    **OF MOTION PURSUANT TO**
12  v.                               )    **FED. R. CRIM. P. 29(c)**
                                     )
13  SUSAN XIAO-PING SU,              )
                                     )
14                                   )    Date:    October 31, 2014
                      Defendant.     )    Time:  9:30 a.m.
15  _____  )    Hon. Jon S. Tigar

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

INTRODUCTION AND PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A.  The Government's Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

1.  Tri-Valley University . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

2.  The Homeland Security Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.  The Defendant's Motion for a Judgment of Acquittal Pursuant to Fed. R. Crim. P. 29(c) . . . 8

A.  The Evidence was Insufficient to Convict Su on All Counts . . . . . . . . . . . . . . . . . . . . . . . . . 8

B   The Government's Proof Was Insufficient as to Multiple Counts . . . . . . . . . . . . . . . . . . . . . 9

1.  There was insufficient proof that counts 1 and 13 were part of a scheme . . . . . . . . . . . . . . . 9

2.  Counts 5 through 12, the wire fraud charges involving the fictitious aliens and counts 16 through 19, charging visa fraud, cannot stand because the crimes were all factually impossible to commit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

3.  The government's proof was insufficient as to count 15, conspiracy to commit visa fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

4.  The evidence was insufficient to convict Su of the two counts of harboring . . . . . . . . . . . 17

a.  Both Dasa and Dirisanala were not illegal aliens . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

b.  Su did not harbor either Dasa or Dirisanala . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

5.  The money laundering charges must be dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arizona v. United States,* 132 S.Ct. 2492 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Cleveland v. United States,* 531 U.S.12 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Jackson v. Virginia*, 443 U.S. 307 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

*Kann v. United States*, 323 U.S. 88 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*McNally v. United States*, 483 U.S. 350 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Pereira v. United States*, 347 U.S. 1 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Schmuck v. United States*, 489 U.S. 705 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Skilling v. United States*, 561 U.S. 358 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

*United States v. Alonso*, 48 F.3d 1536 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Alarcon-Simi*, 300 F.3d 1172 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Alston,* 974 F.2d 1206 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Brissett,* 720 F. Supp. 90 (S.D. Tex. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Bush*, 626 F.3d 527 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*United States v. Conway*, 507 F.2d 1047 (5th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Costello*, 666 F.3d 1040 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Cruz,* 554 F.3d 840 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*United States v. Damra*, 621 F.3d 474 (4th Cir. 2010),
*cert. denied*, 131 S.Ct. 2930 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Daychild*, 357 F.3d 1082 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

*United States v. Grice,* 319 F.3d 1174 (9th Cir.), *cert. denied,* 539 U.S. 950 (2003) . . . . . . . . 10

*United States v. Hamrick*, 43 F.3d 877 (4th Cir.) (en banc),
*cert. denied,* 516 U.S. 825 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Hernandez,* 913 F.2d 1506 (10th Cir. 1990),
*cert. denied,* 499 U.S. 908 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Hubbard,* 96 F.3d 1223 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Jimenez Recio,* 537 U.S. 270 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Jinian,* 725 F.3d 954 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*United States v. Kellington,* 217 F.3d 1084 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Kim*, 193 F.3d 567 (2nd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Litteral*, 910 F.2d 547 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Luttrell*, 889 F.2d 806 (9th Cir. 1989),
vacated in part on other grounds, 923 F.2d 764 (9th Cir. 1991),
*cert. denied,* 112 S. Ct. 1558 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Manarite*, 44 F.3d 1407 (9th Cir.), *cert. denied,* 516 U.S. 851 (1995) . . . . . . . 10

*United States v. Morgan,* 238 F.3d 1180 (9th Cir.), *cert denied,* 534 U.S. 863 (2001) . . . . . . . . 9

*United States v. Noriega-Perez,* 670 F.3d 1033 (9th Cir. 2012),
*cert. denied,* 133 S.Ct. 834 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Nukida,* 8 F.3d 665 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Ozcelik,* 527 F.3d 88 (3rd Cir. 2008), *cert. denied*, 555 U.S. 1153 (2009) . . . 20

*United States v. Pelisamen*, 641 F.3d 399 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Penagos,* 823 F.2d 346 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Price,* 542 F.3d 617 (8th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Rubio-Gonzalez,* 674 F.2d 1067 (5th Cir. 1982*)* . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Salman,* 266 F. Supp. 2d 1367; (C.D. Fl. 2003),
rev'd on other grounds, *United States v. Salman,* 387 F.3d 1266 (11th Cir. 2004) . . . . . . . . . . 19

*United States v. Santos,* 553 U.S. 507 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Vargas-Cordon*, 733 F.3d 366 (2nd Cir. 2013) . . . . . . . . . . . . . . . . . . . . . 20, 21

*United States v. Von Stoll*, 726 F.2d 584 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*United States v. Williams*, 553 U.S. 285 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## FEDERAL STATUTES AND RULES

8 U.S.C. section 1324(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 18, 20, 21

18 U.S.C. section 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 17

18 U.S.C. section 371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15

iii

18 U.S.C. section 922(g)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18 U.S.C. section  924(a)(2).  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18 U.S.C. section 1001(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. section 1001(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. section 1030(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. section 1341  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9, 10, 13

18 U.S.C. section 1343  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9, 10, 11, 13

18 U.S.C. section 1546(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

18 U.S.C. section 1957 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 21, 22

Fed. R. Crim. P. 29 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Crim. P. 33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**OTHER AUTHORITIES**

2 W. LaFave, Substantive Criminal Law § 11.5(a)(2) (2d ed. 2003) . . . . . . . . . . . . . . . . . . . . . . . 14

JOHN J. JORDAN, ESQ.   (Cal. State Bar No. 175678)
400 Montgomery Street, Ste. 200
San Francisco, CA   94104
(415) 391-4814
(415) 391-4308 (FAX)

Attorney for Defendant
SUSAN XIAO-PING SU

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-11-0028 JST |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM IN SUPPORT** |
| | ) | **OF MOTION PURSUANT TO** |
| v. | ) | **FED. R. CRIM. P. 29(c)** |
| | ) | |
| SUSAN XIAO-PING SU, | ) | |
| . | ) | Date:   October 31, 2014 |
| Defendant. | ) | Time:  9:30 a.m. |
| | ) | Hon. Jon S. Tigar |

**INTRODUCTION AND PROCEDURAL HISTORY**

The defendant, Susan Su, through her above-listed counsel, John J. Jordan, files this memorandum of points and authorities, and accompanying declaration, in support of her post-verdict motion pursuant to Fed. R. Crim. P. 29(c), for entry of a judgment of acquittal.  The defendant moves separately for a new trial pursuant to Fed. R. Crim. P. 33.

The defendant was tried on a thirty-five count superseding indictment, charged with a scheme to defraud non-immigrant aliens of money and property, specifically tuition and other fees.  The indictment charged 12 counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (counts 1 through 12); two counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 2 (counts 13 and 14); one count of conspiracy to commit visa fraud, in violation of 18 U.S.C. § 371 (count 15); four counts of visa fraud, in violation of 18 U.S.C. §§ 1546(a) and 2 (counts 16 through 19); one count of using a false document, in violation of 18 U.S.C. §§ 1001(a)(3) and 2 (count 20); one count of false statements, in violation of 18 U.S.C. §§ 1001(a)(2) (count 21); three counts of alien

1

harboring, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and 2 (counts 22 through 24); one count of unauthorized access of a government computer, in violation of 18 U.S.C. §§ 1030(a)(3) and 2 (count 25); and ten counts of money laundering, in violation of 18 U.S.C. §§ 1957(a) and 2 (counts 26 through 35).

The superseding indictment also contained four forfeiture allegations.

Trial on the superseding indictment began on March 3, 2014, with jury selection.  CR 99.

On March 18, 2014, the court granted the government's motion to dismiss counts 23, 28, 30 and 33.  TR 1713.

On March 18, 2014, and more formally on March 19, 2014, the defendant orally moved, pursuant to Fed. R. Crim. P. 29,  for a judgment of acquittal at the close of the prosecution's case. Docket Entry 78, TR 1714, 1765.  The Court stated it would "reserve ruling on Defendant's Rule 29 motion until after the jury has returned its verdict or until such other time as the Court may say." TR 1765.

On March 24, 2014, the trial ended with the jury finding Su guilty of all 31 remaining counts in the indictment.  CR 118-20; ER 652.

Now that the evidence has been received, and the jury has found Su guilty, the defendant moves post-verdict under Rule 29(c) for a judgment of acquittal.  Su moves this Court to consider the Rule 29 issues anew, now that receipt of the trial transcripts allows a more thorough examination of the government's case.

First, as to all the counts, the defendant moves for a judgment of acquittal, on the grounds that the government introduced insufficient evidence to convict the defendant; the proof at trial did not establish the crimes set out in the indictment; and there was insufficient proof on the defendant's intent to commit the crimes charged in the indictment.

Second, there were specific proof issues as to several counts in the indictment, such that the defendant's Rule 29 motion should be granted.

# FACTUAL BACKGROUND

**A.      The Government's Case**

**1.      Tri-Valley University**

The government contended at trial that the defendant Susan Su engaged in a scheme to defraud various non-immigrant foreign students, by submitting false articulation agreements to the Department of Homeland Security, in order to improperly qualify for certification under the Department's Student Exchange Visitor Program (SEVP), so that Tri-Valley could enroll foreign students with F-1 visas, and access SEVIS, the Department of Homeland Security computer program and database for monitoring the status of F-1 students.

If a school is not accredited by an accrediting association recognized by the U.S. Department of Education, then SEVP requires the school to get three articulation agreements from other accredited schools.  TR 258-59.  The articulation agreement must specify that the accredited school has been and would continue to unconditionally accept transfer credits from the unaccredited school.  TR 259-60.

On February 10, 2009, Susan Su forwarded to SEVP three original articulation agreements.  TR 320.

One signed agreement purported to be an amended agreement between San Francisco State University and Tri-Valley, with a signature of Dr. Shy Shenq Liou of San Francisco State University certifying that San Francisco State, an accredited school, had been accepting transfer credits in computer science and engineering courses at Tri-Valley since May, 2008, and would continue to do so.  TR 321-24.

The government contended at trial that the articulation agreement was fraudulent, and Dr. Liou testified that he did not sign the second articulation agreement, that he never approved transfer credits for any engineering course taught at Tri-Valley, and did not have authority to bind San Francisco State as set out in the agreement.  TR 494-96.

1    A second signed agreement purported to be an agreement between the University of

2 Central Florida and Tri-Valley, bearing a signature of Su's brother, Xiao-Gang Su, a teaching

3 assistant at Central Florida.  The agreement certified that Central Florida, an accredited school,

4 had been accepting transfer credits in computer science and engineering courses at Tri-Valley

5 since May, 2008, and would continue to do so.  TR 324-26.

6    The government contended that this second articulation agreement was also false. Scott

7 Cole, vice president and General Counsel at Central Florida, testified  that the agreement was not

8 valid, and that the statement that Central Valley had accepted transfer credits from Tri-Valley and

9 would continue to accept transfer credits in the future was not true.  TR 777-79.   In Cole's

10 opinion, Xiao-Gang Su, who was listed on the purported articulation agreement, did not have

11 authority to enter into an articulation agreement on behalf of Central Florida.  TR 779-80.

12    SEVP approved Tri-Valley on February 17th, 2009.  TR 329.

13    The government presented testimony that once a school is approved by SEVP, it must

14 limit its own access to SEVIS to designated school officials (DSOs).  TR 251.  The SEVIS system

15 warned users that the system was limited to authorized users only.  TR 254-54.

16    In December, 2008, Tri-Valley filed with SEVP a signed I-17a, which designated Sophie

17 Su (the defendant's sister) as the principal designated school official (DSO), and the defendant

18 and Vince Wang as DSOs, and certified that the DSOs were familiar with and would follow

19 SEVP rules and regulations.  TR 301-07, 750-52.

20    The government presented evidence that Su regularly logged on to SEVIS with various

21 laptop computers and then handed the laptops to employees such as Vishal Dasa, Anji Dirisanala,

22 and Parth Patel, who would enter data  into the SEVIS system and print out I-20s.  TR 809, 813-

23 14, 845, 1157-68, 1501-13.  The workers would then take the I-20 forms to Su to sign, and she

24 would sign them, in the name of the DSO printed on the form.  TR 814-15, 1176-78, 1515-16.

25    The government also contended that under SEVP regulations, only 3 course units a

26

27

28                                4

1   semester could be taken online, and the remaining course units must be taken physically at the

2   school facility, taught by qualified instructors..  TR 289, 768-69.

3         The government presented testimony at trial from witnesses  Dasa, Patel, and Dirisanala,

4   that Tri-Valley did not physically hold classes on campus (TR 818, 1185; 1518); that its online

5   class frequently did not function correctly (TR 818-19, 1187-88, 1192, 1200, 1508-10); that

6   students received grades without attending classes.  (TR 803-05, 811-12, 836, 1511); and would

7   admit all students who applied.  TR 810, 1172-74, 1212-16, 1506-07, 1512-14.

8         The government presented evidence that Su listed several individuals as instructors at Tri-

9   Valley who had not agreed to teach a course.  Dr. Hao Lao, his wife Dr. Qi Jing, and Dr. Miller

10  Allen testified that they never agreed to teach a course at Tri-Valley, and never gave permission

11  for Tri-Valley to list them as instructors.   TR 448-50, 467-68,  560-61.

12        The government called a number of former students of Tri-Valley at the trial, including

13  Vandana Virmani (TR 172-74); Bhanu Teja Challagundla (TR 886-893, 936-37); Santhosh

14  Ignatius (TR 1345-51); Kalpana Challa (TR 1416-19); and Naveen Kundur (TR 1567, 1570-71),

15  who testified that there were no physical classes taught at Tri-Valley (RT 1363, 1405, 1420-21,

16  1464-65, 1572, 1577); that there were problems with the online class program (RT 179-81, 210,

17  907-09, 1428-29, 1465, 1572-1586); and grades were received for classes not taken.  RT 184-86,

18  909-12, 1385-86, 1438-39.

19  **2.      The Homeland Security Investigation**

20        Special Agent Jason Mackey of Homeland Security testified that he reviewed Tri-Valley's

21  initial 2008 I-17 application, which indicated that Tri-Valley was enrolling 30 students.  TR 569-

22  71.  The SEVIS database indicated that in May, 2010, Tri-Valley had enrolled 900 students, with a

23  large number of students listed as living in either an apartment on El Camino Real or another

24  apartment at 20 Iris Avenue in Sunnyvale.  TR 571-74, 689.

25        During his investigation of Tri-Valley, Agents Mackey and Dale Taylor participated with

26  other Homeland Security Agents in several undercover operations, in which that agent used Anji

27

28                                          5

Dirisanala, a former student and employee at Tri-Valley, to enrol fictitious students at Tri-Valley. TR 994-1031, 1110, 1140-41, 1216-22. The agents also had Agent Rajeev Bhatia, acting in an undercover capacity under the name of "Rajiv Batra," enroll as a student at Tri-Valley. TR 1049, 1310-17. The agents also placed several ruse telephone calls and a ruse site visit with Su at Tri-Valley, asking for and receiving documentation that the three fictitious students were students in good standing. TR 959-672, 979, 1055-57, 1060-74, 1093-1101, 1605-10, 1075-77, 1131.

During one site visit, Su told Agent Dylan Critten that two of the fictitious students had been attending class and she had personally taught a class for both. TR 969.

On January 19, 2011, Mackey and other agents executed search warrants on businesses and accounts related to Susan Su and Tri-Valley. TR 584, 686. At that time, there were approximately 1700 students listed as enrolled at Tri-Valley. TR 688, 1139. Various computers hard drives, credit card and financial records, and Tri-Valley transcripts for Bhargav Boinpally, Samuel Steven Kancharakuntla, and Abhilash Surineni, the three ABS employees, were seized during the searches. TR 647. 650-53.

Agents were later able to access email messages that the government contended showed Su arranging to provide graduate degrees for relatives of Bhargav Boinpally. TR 653-62, 670-72, 708. Agents also recovered an email exchange between Su and Bjorn Frogner, which agents believed was an attempt by Su to purchase an articulation agreement. TR 667-69, 673-75. Agents recovered another email in which Su contacted San Francisco State University, requesting an articulation agreement be established with the university. TR 676-77.

Agents also found emails from students, requesting information about courses and missing materials, that Su responded to by stating that the courses were being developed, that instructors would be shortly hired, and that the students would get good grades. TR 679-85. During the execution of the search warrant, Mackey interviewed Susan Su at her residence in Pleasanton, California. TR 584. Su voluntarily agreed to the interview. TR 688. Mackey testified that Susan Su made various statements to him during the interview, including that Sophie Su and Wang had

full-time jobs, and did not intend on actually being DSOs for Tri-Valley (TR 589-90); that she had prepared the initial and amended articulation agreements with San Francisco State University; that Shy Shenq Liou had signed both agreements (TR 592-93), and that her brother, Xiao-Gang Su, a student advisor at the University of Central Florida, signed the articulation agreement with Tri-Valley, after a department chair said the college had a policy against signing a blanket agreement. TR 593-94.  Su said no students had ever transferred credits from Tri-Valley and asked Mackey not to contact the signers of the articulation agreement.  TR 596.

Su told Mackey that the 22 instructors she had submitted on the I-17 had originally agreed to teach courses, but only three actually ended up teaching a course. TR 598-99, 745.  She said  in the beginning she taught all the courses.  TR 598-99.  Su explained that the students attended through an online mechanism that allowed for student interaction.  TR 603.  Su said she considered that being physically present.  TR 769-71.

Su explained she had instructed staff members at Tri-Valley to enter the El Camino Real or Iris Avenue apartments in Sunnyvale for students who were not in the United States yet or who lived outside of California.  TR 605.  Su also explained that many transcripts listed "A' grades for all courses, because she was creating a template and the "A" grades were placeholders.     Su told Mackey that she used proceeds from Tri-Valley to purchase the residences at 2890 Victoria Ridge Court, 1371 Germano Way, 1087 Murrieta Boulevard, Number 133,  Livermore, and 405 Boulder Court, Suites 700 and 800.  TR 628-33.  Su also used proceeds to purchase a Mercedes Benz automobile.  TR 633-35.  Su also wrote checks for $30,000 from Tri-Valley bank accounts to her two daughters.  TR 635.  She also wrote a check for $75,000 to her husband from a Tri-Valley account, to have him relinquish his property rights to one property she was purchasing.  TR 636-37.

Agent Mackey conducted  a financial analysis of Tri-Valley and Susan Su's financial records, testifying that he traced proceeds from Tri-Valley used to purchase the various properties he questioned Su about on January 19, 2011.  TR 1636-63.

**ARGUMENT**

**I.     Defendant's Motion For a Judgment of Acquittal Pursuant to Fed. R. Crim. P. 29(c)**

The defendant now moves, post-verdict, pursuant to Fed. R. Crim. P. 29(c), for entry of a judgment of acquittal.

"A judgment of acquittal is improper if, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Kellington,* 217 F.3d 1084, 1094-95 (9th Cir. 2000), quoting *United States v. Alston*, 974 F.2d 1206, 1210-1211 (9th Cir. 1992), see also *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002) ("In ruling on a Rule 29 motion, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (internal quotation marks omitted)).

**A.     The Evidence was Insufficient to Convict Su on All Counts**

At the close of the prosecution's case, the defendant moved, pursuant to Fed**.** R. Crim. P. 29(a), that the prosecution had not met its burden of proof on any of the counts in the indictment. TR 1765.  The defense now renews this motion at the close of the entire case, pursuant to Fed**.** R. Crim. P. 29(c).

The defendant submits that the government's evidence at trial was insufficient to convict the defendant on the charges contained in the indictment; that the proof at trial did not establish the crimes set out in the indictment; and there was insufficient proof on the defendant's intent to commit the crimes charged in the indictment.  Su contends that the evidence of her intent to engage in a scheme to defraud with others was insufficient.

Moreover, the defendant renews her motion now at the close of the evidence, to preserve the issue on appeal.  "The proper way . . . to challenge the sufficiency of the government's evidence pertaining to [a] jurisdictional element . . . is a motion for acquittal under Rule 29, presented at the close of the government's case-in-chief." *United States v. Cruz,* 554 F.3d 840,

1 | 844 (9th Cir. 2008), citing *United States v. Morgan,* 238 F.3d 1180, 1186 (9th Cir.)*, cert denied,*

2 | 534 U.S. 863 (2001)  (quoting *United States v. Nukida,* 8 F.3d 665, 672-73 (9th Cir. 1993).

3 | **B.     The Government's Proof Was Insufficient as to Multiple Counts**

4 | There were specific proof issues as to multiple counts in the indictment, such that the

5 | defendant's Rule 29 motion should be granted.

6 | **1.     There was insufficient proof that counts 1 and 13 were part of a scheme**

7 | Count 1 of the indictment charges wire fraud, in violation of 18 U.S.C. §§ 1343 and 2.

8 | The indictment specifies that the basis of count 1 is Su's electronic submission on September 15,

9 | 2008, of the initial I-17 application to SEVP.  Count 13 of the indictment charges mail fraud, in

10 | violation of 18 U.S.C. §§ 1341 and 2.  The indictment specifies that the basis of count 13 is Su's

11 | mailing on or about December 23, 2008, of the revised Form I-17 and documents to SEVP.

12 | Neither count was proven at trial, because even assuming that Su engaged in a scheme to

13 | defraud, the government failed to introduce any evidence that the scheme had begun at the time

14 | the initial form I-17 was submitted on September 15, 2008, or at the time the revised form I-17

15 | was submitted on December 23, 2008.

16 | Sufficient evidence to support a wire fraud conviction exists if, "after viewing the

17 | evidence in the light most favorable to the prosecution, any rational trier of fact could have found

18 | the essential elements of the crime beyond a reasonable doubt." *United States v. Jinian,* 725 F.3d

19 | 954, 960  (9th Cir. 2013), citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

20 | The elements of wire fraud are: (1) the existence of a scheme to defraud; (2) the use of

21 | wire, radio, or television to further the scheme; and (3) a specific intent to defraud.  *United States*

22 | *v. Jinian,* 725 F.3d at 960, citing *United States v. Pelisamen*, 641 F.3d 399, 409 (9th Cir. 2011).

23 | The wire fraud statute criminalizes conduct by any person who, "having devised or

24 | intending to devise any scheme or artifice to defraud, . . . transmits or causes to be transmitted by

25 | means of wire . . . communication in interstate or foreign commerce, any writings, signs, signals,

26 | pictures, or sounds for the purpose of executing such scheme or artifice . . . ." *Jinian,* 725 F.3d at

27 | 960, citing 8 U.S.C. § 1343 (2006).  Section 1343, however, "does not purport to reach all frauds,

28 |

1   but only those limited instances" wherein use of a wire "is a part of the execution of the fraud,

2   leaving all other cases to be dealt with by appropriate state law." *Id.,* at 960, citing *Kann v. United*

3   *States*, 323 U.S. 88, 95 (1944).

4        *Jinian* also pointed out since mail and wire fraud are both defined as "any scheme or

5   artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses,

6   representations, or promises, ... the wire fraud statute is read in light of the case law on mail

7   fraud," *Id.,* citing *United States v. Manarite*, 44 F.3d 1407, 1411 n.5 (9th Cir.), *cert. denied,* 516

8   U.S. 851 (1995).

9        For purposes of the mail fraud statute, the mailings must be "sufficiently closely related"

10   to the scheme.  *United States v. Grice,* 319 F.3d 1174 (9 th Cir.), *cert. denied,* 539 U.S. 950

11   (2003), citing *United States v. Hubbard*, 96 F.3d 1223, 1228 (9th Cir. 1996) (quoting *Pereira v.*

12   *United States*, 347 U.S. 1, 8-9 (1954)).

13        Similarly, for purposes of 18 U.S.C. § 1343, a wire communication has to be in

14   furtherance of the defendant's fraudulent scheme. *United States v. Jinian,* 725 F.3d at 960.  The

15   "relevant question at all times" is whether a wire "is part of the execution of the scheme as

16   conceived by the perpetrator at the time."  *United States v. Jinian,* 725 F.3d at 961, citing *Schmuck*

17   *v. United States*, 489 U.S. 705, 715 (1989).

18        Here, neither count 1 or 13 was proven at trial, because there was insufficient proof that

19   the emailing of the form I-17 sent on September 15, 2008 (count 1), or the mailing of the revised

20   form I-17 on December 23, 2009 (count 13), was part of the execution of the scheme.  The

21   government assumes that Tri-Valley was a fraud at its inception, but there was no proof of that at

22   trial.  Not every unaccredited school is a fraud, and not every school offering on line courses is a

23   fraud.  Looking at the trial evidence in the light most favorable to the government, there was no

24   evidence that any scheme started no earlier than on or about February 10, 2009, when the

25   government alleges the articulation agreements were mailed.

26        Accordingly, this Court should grant defendant's Rule 29 motion for a judgment of

27   acquittal as to counts 1 and 13.

28

1  **2.     Counts 5 through 12, the wire fraud charges involving the fictitious aliens and**
   **Counts 16 through 19, charging visa fraud, cannot stand because the crimes were**
2  **all factually impossible to commit**.

3         Su was convicted by the jury of all 12 counts of wire fraud, in violation of 18 U.S.C. §§

4  1343 and 2 (counts one through 12) and all four counts of visa fraud, in violation of 18 U.S.C. §§

5  1546(a) and 2 (counts 16 through 19) in addition to the other counts of conviction.  However, the

6  government's proof was insufficient as to the wire fraud convictions in counts 5 through 12, as

7  well as all four visa fraud convictions in counts 16 through 19, because the charges all involve

8  fictitious aliens.

9         These convictions cannot stand, however, because the crimes were all factually impossible

10  to commit, as there were no real persons who could be defrauded, and there were no real persons

11  who could receive visas or who needed immigration papers.   Thus it was factually impossible for

12  Su to commit these crimes.  See *United States v. Luttrell*, 889 F.2d 806, 810 (9th Cir. 1989),

13  vacated in part on other grounds, 923 F.2d 764 (9th Cir. 1991), *cert. denied*, 112 S. Ct. 1558

14  (1992).

15         "Legal impossibility exists when the intended acts would not constitute a crime under the

16  applicable law. Factual impossibility refers to those situations in which, unknown to the

17  defendant, the consummation of the intended criminal act is physically impossible."  See *United*

18  *States v. Luttrell*, 889 F.2d at 810.  "Factual impossibility exists 'where the objective is proscribed

19  by the criminal law but a factual circumstance unknown to the actor prevents him from bringing it

20  about.'" *United States v. Conway*, 507 F.2d 1047, 1050 (5th Cir. 1975).

21         Here, it was factually impossible for Su to commit the wire fraud charged in counts 5

22  through 8, because the named victims were all fictitious.  These "victims" were part of the ruse

23  undercover sting operation conducted by the government.

24         Count 5 specifies that the basis for the charge was the July 27, 2010 SEVIS entry by Tri-

25  Valley for "S.A."  Count 6 specifies that the basis for the charge was the July 27, 2010 SEVIS

26  entry by Tri-Valley for "K.D."

27

28                                                 11

"S.A" and "K.D." are the initials of the names of the two fictitious graduate students Sparsh Agrawat and Kadir Dirikan, that Anji Dirisanala pretended to enroll at Tri-Valley.  TR 995, 1105, 1217.   Viewed in the light most favorable to the government, the trial testimony establishes that on July 27, 2010, Dirisanala went to Tri-Valley, made payments for Diriken and Agrawat, and received continued attendance I-20s. TR 1005-09, 1112-13, 1225-31.  The government argued to the jury that these acts constituted proof that Su committed wire fraud as charged in counts 5 and 6.  TR 1825-26.

Count 7 specifies that the basis for the charge was the August 31, 2010 SEVIS entry by Tri-Valley for "M.R."

"M.R." are the initials for the name of the fictitious undergraduate student Mohammad Rizwan, that the Homeland Security agents again gave to Dirisanala, who they directed to pretend to enroll at Tri-Valley.  TR 1016-20.  Viewed in the light most favorable to the government, the trial testimony establishes that on August 31, 2010, Dirisanala went to Tri-Valley, made a tuition payment for Rizwan, and received a continued attendance I-20.  TR 1016-20, 1038-45, 1242.  The government then argued to the jury that these acts constituted proof that Su committed wire fraud as charged in count 7.  TR 1826-27.

Count 8 specifies that the basis for the charge was the September 7, 2010 SEVIS entry by Tri-Valley for "R.B."

"R.B." are the initials for the undercover name  of "Rajeev Batra" that was adopted by Special Agent Rajeev Bhatia, who acted in an undercover capacity while investigating Tri-Valley. TR 1049, 1310-11.  Viewed in the light most favorable to the government, the trial testimony establishes that on September 7, 2010, Agent Bhatia, acting in an undercover capacity under the name of "Rajeev Batra," went to Tri-Valley and enrolled as a student, receiving an I-20 after making a tuition payment.  TR 1049, 1310-11, 1318, 1051-52.  The government then argued to the jury that these acts constituted proof that Su committed wire fraud as charged in count 8.  TR 1827-28.

Similarly, count 9 (Sparsh Agrawat); count 10 (Kadir Dirikan); count 11 (Mohammad Rizwan); and count 12 (Rajeev Batra) all charge Su with wire fraud, for sending emails to Homeland Security in response to ruse phone calls that the fictitious students were stranded at airports. TR 1057-63; 1068-74; 1600-10.  The government then argued to the jury that these acts constituted proof that Su committed wire fraud as charged in count 8.  TR 1828-35.

Finally, count 16 (Sparsh Agrawat); count 17 (Kadir Dirikan); count 18 (Mohammad Rizwan); and count 19 (Rajeev Batra) all charge SU with committing visa fraud by falsely making Form I-20s for the fictitious students, alleging the same underlying transactions on the same dates charged as wire fraud in count 5 (Sparsh Agrawat); count 6 (Kadir Dirikan); count 7 (Mohammad Rizwan); and count 8 (Rajeev Batra). The government then argued to the jury that these acts constituted proof that Su committed visa fraud.  TR 1842-43.

All 12 of these counts charge crimes that were factually impossible for Su to commit. First, for counts 5 through 12, Su could not commit wire fraud, under the theory charged in the indictment, because real victims that could be defrauded did not exist.  The scheme to defraud alleged in the indictment charged Su with engaging in an "illegal scheme to defraud non-immigrant aliens of money and property, specifically tuition and other fees."  See Indictment. But, Sparsh Agrawat, Kadir Dirikan, Mohammad Rizwan, and Rajeev Batra were fictitious students, and not actual non-immigrant aliens.

At best, these counts are a back door effort by the government to get around defendant Su's October 11, 2011 pre-trial motion to dismiss the indictment.  CR 19.  The original indictment filed by the government attempted to criminalize a scheme to defraud the U.S. Government with respect to its ability to regulate and control entry of foreign nationals in the United States.  But, the defendant pointed out that the indictment did not charge a property interest for purposes of sections 1341 and 1343.  The defendant pointed out that in *McNally v. United States*, 483 U.S. 350, 360 (1987), the Supreme Court held that the federal mail fraud statute is "limited in scope to the protection of property rights."  When Congress amended the law to cover the intangible right of honest services, the Supreme Court then ruled in *Skilling v. United States*, 561 U.S. 358 (2010)

13

that "honest services fraud" applies only to bribes and kickbacks.  Finally, in *Cleveland v. United States,* 531 U.S.12 (2000), the Supreme Court explained that the property being protected is property of the victim.

The government filed a response, stating that a superseding indictment it was filing would address Su's concerns.  CR 20, 21.  But, even though the government was put on notice by the defense motion, it filed a superseding indictment that still contained counts where there were no actual non-immigrant victims.  None of the allegations mention any money or property of the United States Government which the fraud was intended to reach, and any attempt to do so now would be fatal, as the evidence offered at trial would prove facts materially different from those alleged in the indictment.  See *United States v. Von Stoll,* 726 F.2d 584, 586 (9th Cir. 1984).  Thus, Su's Rule 29 motion regarding counts 5 through 12 should be granted.

Finally, it was similarly factually impossible for Su to commit visa fraud, as charged in counts 16 through 19.  The indictment charges that Su committed visa fraud, by fraudulently making Form I-20s for the four individuals Sparsh Agrawat, Kadir Dirikan, Mohammad Rizwan, and Rajeev Batra.  See Indictment.  But, these "individuals" were not real students who would be able to continue their status as F-1 students thanks to any I-20s issued by Tri-Valley.  Thus, no visa fraud could be committed.

Nor should the charges be reduced at this time to an attempt to commit the crimes in question.  In *United States v. Williams,* 553 U.S. 285 (2008), the Supreme Court noted that "All courts are in agreement that what is usually referred to as 'factual impossibility' is no defense to a charge of attempt." *Id.,* at 300, citing 2 W. LaFave, Substantive Criminal Law § 11.5(a)(2) (2d ed. 2003; *United States v. Hamrick,* 43 F.3d 877, 885 (4th Cir.) (en banc) *cert. denied,* 516 U.S. 825 (1995) (further citations omitted).  But, the government did not charge attempt, and did not ask for a lesser included instruction at trial.  It is too late now to seek to substitute charges, as the defendant's trial is now over and Su has no chance of defending against an attempt charge.

Accordingly, Su's Rule 29 motion should be granted as to counts 5 through 12 and 16 through 19.

14

**3.     The government's proof was insufficient as to count 15, conspiracy to commit visa fraud.**

The government's proof at trial was insufficient to prove that the defendant was guilty in count 15 of conspiracy to commit visa fraud, in violation of 18 U.S.C. § 371, because there was insufficient proof introduced that anyone conspired with Su.

A conviction for conspiracy is supported by sufficient evidence if, in viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Alonso,* 48 F.3d 1536, 1543 (9th Cir. 1995). The elements of conspiracy are 1) an agreement to accomplish an illegal objective, 2) along with one or more acts in furtherance of that objective, and 3) the intent necessary to commit the underlying substantive offense. *United States v. Alonso,* 48 F.3d at 1543.

The Supreme Court has held that the "essence of a conspiracy" is "an agreement to commit an unlawful act." *United States v. Daychild,* 357 F.3d 1082, 1096 (9th Cir. 2004), quoting *United States v. Jimenez Recio,* 537 U.S. 270, 274 (2003) (internal quotation marks and citation omitted).

The government's evidence at trial focused almost, if not totally, on Su. The government failed to show that anyone else reached an agreement with Su to engage in a conspiracy to commit visa fraud. The defendant is unaware of any testimony that any of the workers at Tri-Valley knew about the articulation agreements; that Sophie Su or Vince Wang knew about the articulation agreements; and that any of the recruiters or consultants knew about the articulation agreement. The defendant is also unaware of any testimony regarding the signing of the Central Florida articulation agreement.

Moreover, while there was testimony by some of the workers that Tri-Valley was not holding physical classes, workers such as Dirisanala testified he was worried about this circumstance (TR 1186), not that he voluntarily engaged in a conspiracy with Su. In fact, the government contended that Su threatened the workers and refused to allow transfers. This fails to show that anyone knowingly and voluntarily joined a conspiracy. See *United States v. Damra*,

15

1   621 F.3d 474, 499 (4th Cir. 2010), *cert. denied*, 131 S.Ct. 2930 (2011)  (defendant must

2   knowingly and voluntarily join conspiracy).

3        No co-conspirators are identified the indictment, instead the indictment only states that Su

4   conspired with "others."  Further, all the overt acts but one listed in the indictment were alleged to

5   have been committed by Su.  Overt act (b) lists a fact that Tri-Valley issued a check on April 30,

6   2010, to an un-identified co-conspirator as a commission payment for recruiting a student.  While

7   the government argues that Su conspired with ABS, there is nothing per-se illegal about recruiters

8   such as ABS.  Su is unaware of any testimony that the ABS recruiters, or any recruiters, joined

9   into a conspiracy with Su.  Instead, there was testimony that when Santhosh Ignatius, came to the

10  United States and was met by Ramakrishna Karra, Karra told him that Tri-Valley was not a real

11  university and he should transfer to another school.  TR 1351-55, 1400-01.

12       Further, the testimony by agent Taylor regarding the transfer of funds out of Tri-Valley

13  also focused solely on Su.  There is no testimony that defendant is aware of that established that

14  some unidentified co-conspirator shared in proceeds from Tri-Valley.  And, while employees were

15  paid money for working at Tri-Valley, their testimony again painted a picture of a boss giving

16  orders to workers, often in an uncomfortable atmosphere.

17       Importantly, none of the workers who were separately charged by the government were

18  actually convicted of conspiracy to engage in visa fraud.  Instead, all four pled guilty and were

19  sentenced to a different charge, conspiracy to commit authorized access of a government

20  computer.  TR 816-17, 1212-16; also see *United States v. Dasa, et. al.,* CR 11-0742 KAW.

21       In short, while there may have been testimony that others may have been aware of some of

22  the activities at Tri-Valley, there was insufficient evidence to show that anyone entered into an

23  agreement with Su to engage in visa fraud.  Even assuming there was illegal activity ongoing and

24  even assuming others knew of it, mere knowledge of a criminal activity is insufficient to show

25  participation in a conspiracy.  See *United States v. Price,* 542 F.3d 617, 620 (8th Cir. 2008)

26  ("Mere knowledge of a criminal conspiracy is insufficient.").

27

28
                                    16

1    The government may argue that the "connection to the conspiracy, however slight, is

2    sufficient to sustain a conviction." *United States v. Daychild,* 357 F.3d at 1096, citing *United*

3    *States v. Litteral,* 910 F.2d 547, 550 (9th Cir. 1990); *United States v. Penagos*, 823 F.2d 346, 348

4    (9th Cir. 1987). "However, this minimal standard of proof to sustain a conviction is only

5    triggered 'once a conspiracy exists,' not as a means of proving at the threshold that two

6    defendants have conspired to commit unlawful acts." *United States v. Daychild,* 357 F.3d at

7    1096, quoting *United States v. Penagos*, 823 F.2d at 348.

8         Thus, the government failed to prove that Su conspired to commit visa fraud.

9    **4.    The evidence is insufficient to convict Su of the two counts of harboring**

10        The jury convicted Su in counts 22 and 24 of alien harboring, in violation of 8 U.S.C. §§

11   1324(a)(1)(A)(iii) and 2.

12        Su was charged in counts 22 and 24, between February, 2009 and January 19, 2011, with

13   acting in knowing or in reckless disregard of the fact that Vishal Dasa and Anji Dirisanala had

14   unlawfully come to, entered, or remain in the United States, concealed, harbored, or shielded from

15   detection, or attempted to conceal, harbor, or shield from detection, such alien, through

16   employment at Tri-Valley.   See Superseding Indictment, at page 14.

17        However, viewing the evidence in the light most favorable to the government, no rational

18   trier of fact could have found the defendant guilty beyond a reasonable doubt of either count of

19   alien harboring, because the government failed to prove two separate elements of the crime.  First,

20   contrary to the assumptions of the government, neither named alien in counts 22 and 24 was

21   actually an illegal alien at the times specified in the counts in the indictment.  Second, the

22   government failed to prove that Su concealed, harbored, or shielded from detection either alien.

23   **a.    Both Dasa and Dirisanala were not illegal aliens**

24        Count 22 names Vishal Dasa as the illegal alien who was harbored.  But, the trial

25   testimony established that in the fall of 2009, Dasa was legally in this country on a F-1 student

26   visa from India, when he transferred to Tri-Valley from International Technical University.  TR

27   789-96, 841.   After enrolling at Tri-Valley, Dasa received an I-20 form, attesting to standing as an

28                                            17

1   enrolled student.  TR 797-99.  Dasa stayed enrolled as a F-1 student at Tri-Valley from 2010 until

2   the school was shut down in January, 2011.  TR 836.

3          Count 24 names Anji Dirisanala as the illegal alien who was harbored.  The trial testimony

4   established that Dirisanala entered the United States in January, 2010, on a F-1 visa, to study for

5   his Masters at International Technical University in Sunnyvale, California.  TR 1146-48, 1280.

6   But Dirisanala could not afford ITU, and so on February 9, 2010, he transferred to Tri-Valley,

7   receiving an I-20 form and an admissions letter.  TR 1150-54.  Dirisanala stayed enrolled as a F-1

8   student until May 18, 2010, when he transferred to another school.  TR 1190, 1207-1210.

9          For both counts, the government had the burden of proving that both aliens named in the

10  indictment were illegal aliens. *United States v. Noriega-Perez*, 670 F.3d 1033, 1037 (9th Cir.

11  2012), *cert. denied,* 133 S.Ct. 834 (2013), citing 8 U.S.C. § 1324(a)(1)(A)(ii)-(iii), (B)(ii).

12  However, neither was actually an illegal alien at the time period charged in the indictment.

13  Instead, both had valid F-1 visas and were enrolled at Tri-Valley, which at the date specified in

14  both counts 22 and 24, was still an authorized school in SEVP.

15         The government's position is that both Dasa and Dirisanala were here illegally because

16  Tri-Valley was fraudulent.  The government argued to the jury that "these people were not

17  maintaining the full course of study, they were not lawfully in the United States because their

18  durational status, given that they were not attending physical classes or even on line, which is just

19  grading, means they're out of status." TR 1849.

20          But, at the times charged in the indictment, Tri-Valley was authorized throughout that

21  time period by Homeland Security to admit foreign students with F-1 visas. Potentially being out

22  of status at a future date is not the equivalent of being an illegal alien.

23         There is strong support for Su's position.  The Supreme Court has recently re-iterated that

24  "As a general rule, it is not a crime for a removable alien to remain in the United States." *Arizona

25  v. United States,* 132 S.Ct. 2492, 2496 (2012), citing *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038

26  (1984).

27

28                                              18

1   In *United States v. Salman,* 266 F. Supp. 2d 1367; (C.D. Fl. 2003), rev'd on other grounds,

2   *United States v. Salman,* 378 F.3d 1266 (11th Cir. 2004), the defendant was charged with

3   possession of five different firearms, and a sixth count charging possession of ammunition, by an

4   alien illegally and unlawfully in the United States, in violation of 18 U.S.C. § 922(g)(5) and

5   924(a)(2).  The court in *Salman* granted a pre-trial motion to dismiss, because it concluded that

6   Salman was lawfully in this county when he possessed the firearms.  The district court's decision

7   was reversed by the 11th Circuit, but on the ground that there are no summary judgment motions

8   in federal criminal law.  See *United States v. Salman,* 378 F.3d at 1268-69.

9   The district court in *Salman* explained that the defendant was present in this country under

10  a "duration of status" F-1 student visa.  While the Government maintained Salman had violated

11  his student status at the time of the alleged offense, with the result that he was no longer lawfully

12  in this country, the court held that "unlawful presence is not triggered by a status violation alone."

13  *United States v. Salman,* 266 F. Supp. 2d at 1374-75.  The court noted that while removal

14  proceedings were now pending against Salman at the time of its decision, no such proceedings

15  had been commenced at the time of the alleged offense.  *Id..*

16  In *United States v. Hernandez,* 913 F.2d 1506, 1513 (10th Cir. 1990), *cert. denied*, 499

17  U.S. 908 (1991), the 10th Circuit held that "to be prosecuted under § 922(g)(5), an alien seeking

18  amnesty . . . must either receive a firearm before filing an amnesty application or after such

19  application is denied."  Similarly the court in *United States v. Brissett,* 720 F. Supp. 90 (S.D. Tex.

20  1989) held that "because the defendant had an application for adjustment of status to permanent

21  resident pending at the time he obtained the firearm, he was not an alien illegally or unlawfully in

22  the United States."  *Id.,* at 90.

23  Here, at the time charged in the indictment, there was no immigration court finding of a

24  status violation while adjudicating a request for an immigration benefit for either Dasa or

25  Dirisanala, nor any finding by an immigration judge that either alien was removable.  Even when

26  Tri-Valley was closed down, all the affected F-1 students had a time period in which they could

27  transfer to another eligible school and preserve their legal status.  In fact, to this day, it appears

28

19

1  both Dasa and Dirisanala legally remain in this country.  Accordingly, government has not proven

2  that either was an illegal alien at the time period specified in counts 22 and 24.

3  **b.      Su did not harbor either Dasa or Dirisanala**

4          The government also failed to prove that Su harbored Dasa or Dirisanala, because its

5  theory in the indictment that merely providing employment constitutes harboring is flawed.

6  Instead, the government must also show that Su engaged in conduct that is intended both to

7  substantially help an unlawfully present alien remain in the United States and to help prevent the

8  detection of the alien by the authorities.  "The mere act of providing shelter to an alien, when done

9  without intention to help prevent the alien's detection by immigration authorities or police, is thus

10  not an offense under § 1324(a)(1)(A)(iii)."  *United States v. Vargas-Cordon,* 733 F.3d 366, 382

11  (2nd Cir. 2013).

12          The Seventh Circuit rejected a similar broad definition by the government in *United States*

13  *v. Costello,* 666 F.3d 1040 (7th Cir. 2012), pointing out that with the number of illegal aliens in

14  the United States estimated at 10.8 million in 2010, under the government's broader definition of

15  harboring, the number of violators of section 1324(a)(1)(A)(iii) might well be two million.  *Id.,* at

16  1047, see also *United States v. Ozcelik*, 527 F.3d 88, 100 (3rd Cir. 2008), *cert. denied*, 555 U.S.

17  1153 (2009), citing *United States v. Rubio-Gonzalez,* 674 F.2d 1067, 1073 (5th Cir. 1982*)*, ("We

18  agree with the Fifth Circuit that the terms "shielding," "harboring," and "concealing" under § 1324

19  encompass conduct "tending to substantially facilitate an alien's remaining in the United States

20  illegally" and to prevent government authorities from detecting the alien's unlawful presence.").

21          Then, in *Vargas-Cordon*, the Second Circuit held that "conduct which is intended to

22  facilitate an alien's remaining in the United States illegally and to prevent detection by the

23  authorities of the alien's unlawful presence--is the correct interpretation of that term as it is used in

24  § 1324(a)(1)(A)(iii)."  *United States v. Vargas-Cordon,* 733 F.3d at 382, citing *United States v.*

25  *Kim*, 193 F.3d 567, 574 (2nd Cir. 1999).  The court stressed that to ""harbor" under § 1324, a

26  defendant must engage in conduct that is intended both to substantially help an unlawfully present

27  alien remain in the United States--such as by providing him with shelter, money, or other material

28                                                              20

comfort--and also is intended to help prevent the detection of the alien by the authorities. The mere act of providing shelter to an alien, when done without intention to help prevent the alien's detection by immigration authorities or police, is thus not an offense under § 1324(a)(1)(A)(iii)." *Id.*

The government argued here that Su harbored Dasa and Dirisanala by providing employment at Tri-Valley. This evidence is insufficient under the holdings of *Costello* and *Vargas-Cordon.* There is no credible evidence either alien needed this employment to stay in the United States, or that Su provided employment with the intent to help prevent the detection of the aliens by the authorities.

There was a brief reference by the government that Santosh Ignatius testified that in the one day he worked at Tri-Valley, Su locked the door when she left for lunch. TR 1848. This testimony is also insufficient. There was no testimony that access through another door or through a window was blocked; there was no evidence why Su locked the door; there was no evidence that anyone wanted to leave during the lunch hour; and there was no evidence that Su knew an immigration raid was imminent and locked the door to keep the agents out.

Thus, this Court should grant Su's Rule 29 motion as to counts 22 and 24.

**5.  The money laundering charges should be dismissed**

Su was found guilty by the jury of seven counts of money laundering, in violation of 18 U.S.C. §§ 1957(a) (counts 26, 27, 29, 31, 32, 34 and 35).

However, under the merger doctrine, if this Court upholds the scheme to defraud charged in the wire and mail fraud counts, then the money laundering charges cannot stand, because the withdrawal of funds were an essential element of the wire and mail fraud scheme and consequently cannot constitute a financial transaction involving the proceeds of independent illegal activity. See *United States v. Bush,* 626 F.3d 527 (9th Cir. 2010), citing *United States v. Santos,* 553 U.S. 507, 516-517 (2008).

In *Bush,* the Ninth Circuit held that under 18 U.S.C. § 1957, a transaction in criminally-derived property can create a "merger" problem of the kind that troubled the plurality and

concurrence in *Santos*. *Id.,* at 537.  However,  the court found that the circumstances surrounding the securities, wire, and mail-fraud convictions in that case were all distinct from the money laundering, thus alleviating any merger concerns. *Id.*

Here, however, as charged in the indictment, the circumstances surrounding that wire, mail, and visa fraud convictions were not distinct from the money laundering.  Su was charged in the indictment with engaging in a scheme for her to defraud immigrant aliens of money and property, specifically tuition and other fees. She could not defraud anyone of money and property unless the money was transferred from Tri-Valley's accounts to her custody.  The government charged that is was an essential part of the scheme to defraud that she used the money fraudulently transferred from Tri-Valley accounts for her own purposes, including purchasing real estate and an automobile.  Her withdrawal of funds is thus an essential element of the charged frauds and consequently cannot constitute a financial transaction involving the proceeds of independent illegal activity.  Under the merger doctrine, the money laundering charges must be dismissed.

Alternatively, if the Court grants the Rule 29 motions on the wire, mail, and visa fraud accounts, then the money laundering charges cannot stand, as Su has been acquitted of the underlying criminal activity.

**CONCLUSION**

The Court should grant defendant's motion.

Dated: August 28, 2014                    Respectfully submitted,


                                          /s/ John J. Jordan
                                          JOHN J. JORDAN
                                          Attorney for Defendant
                                          SUSAN XIAO-PING SU

1  JOHN J. JORDAN, ESQ.   (Cal. State Bar No. 175678)
   400 Montgomery Street
2  Suite 200
   San Francisco, CA   94104
3  (415) 391-4814
   (415) 391-4308 (FAX)
4
   Attorney for Defendant
5  SUSAN XIAO-PING SU

6                  UNITED STATES DISTRICT COURT

7                NORTHERN DISTRICT OF CALIFORNIA

8                  SAN FRANCISCO DIVISION

9  UNITED STATES OF AMERICA,        )   No. CR-11-0028  JST
                                     )
10              Plaintiff,           )   **DECLARATION IN SUPPORT**
                                     )   **OF MOTION PURSUANT TO**
11 v.                                )   **FED. R. CRIM. P. 29(c)**
                                     )
12 SUSAN XIAO-PING SU,               )
                                     )
13                                   )   Date:    October 31, 2014
                Defendant.           )   Time:  9:30 a.m.
14 _____   )   Hon. Jon S. Tigar

15        **DECLARATION OF COUNSEL IN SUPPORT OF MOTION:**

16        I, JOHN J. JORDAN, am an attorney licensed to practice in the State of California and do

17 hereby declare under the penalty of perjury as follows:

18        1. I am an attorney-at-law duly authorized to practice before the Courts of the State of

19 California, and the attorney of record for Defendant Susan Su.  I have reviewed the attached

20 Motion, and I believe the factual statements made therein are true and correct to the best of my

21 information and belief.

22        2. In preparing this motion, I have reviewed the trial transcripts; prior motions filed in this

23 case; reports; and other discovery materials provided by the government in this case.

24        I declare under penalty of perjury under the laws of the State of California that the

25 foregoing is true and correct.

26 DATED: August 28, 2014.          /s/ John J. Jordan
                                    JOHN J. JORDAN
27                                  Attorney for SUSAN XIAO-PING SU

28