1   JOHN J. JORDAN, ESQ.   (State Bar No. 175678)
    400 Montgomery Street, Suite 200
2   San Francisco, CA   94104
    (415) 391-4814
3   (415) 391-4308 (FAX)

4   Attorney for Defendant
    SUSAN XIAO-PING SU

5
                    UNITED STATES DISTRICT COURT
6
                  NORTHERN DISTRICT OF CALIFORNIA
7
                    SAN FRANCISCO DIVISION
8

UNITED STATES OF AMERICA,          )     No. CR-11-00288 JST
9                                  )
                    Plaintiff,     )     **NOTICE OF MOTION  AND**
10                                 )     **MOTION PURSUANT TO**
    v.                             )     **FED. R. CRIM. P. 33**
11                                 )
    SUSAN XIAO-PING SU,            )
12                                 )
                                   )     Date:   October 31, 2014
13                  Defendant.     )     Time:  9:30 a.m.
                                   )     Hon. Jon S. Tigar
14  ───────────────────────────────)

15  **TO:   MELINDA HAAG, UNITED STATES ATTORNEY, TO ASSISTANT UNITED
         STATES ATTORNEYS HARTLEY M. K. WEST AND WADE M. RHYNE**

16          PLEASE TAKE NOTICE that at the time and place specified above, or as soon thereafter

17  as the matter may be heard, in the courtroom of the Honorable Jon S. Tigar, United States

18  District Judge, the defendant SUSAN XIAO-PING SU,  through her above-listed counsel, will

19  move and does hereby move this Honorable Court for entry of an order granting a new trial,

20  pursuant to Federal Rule of Criminal Procedure 33.

21          The defendant separately moves this Honorable Court for entry of a judgment of

22  acquittal, pursuant to Federal Rule of Criminal Procedure 29(c).

23           This request is made pursuant to the Fifth and Sixth Amendments to the United States

24  Constitution; Federal Rules of Criminal Procedure 33; subsequent case law; the accompanying

25  //

26  //

27

28  DEF RULE 33 MTN                        1

1   declarations and report; the pleadings and records on file in this matter; and  upon such evidence

2   and argument which may be presented prior to and at the hearing on this motion.

3   Dated: August 29, 2014.                    Respectfully submitted,

4

5                                              /s/ John J. Jordan
                                               JOHN J. JORDAN
6                                              Attorney for Defendant
                                               SUSAN XIAO-PING SU

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   DEF RULE 33 MTN                           2

JOHN J. JORDAN, ESQ.   (State Bar No. 175678)
400 Montgomery Street
Suite 200
San Francisco, CA   94104
(415) 391-4814
(415) 391-4308 (FAX)


Attorney for Defendant
SUSAN XIAO-PING SU

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>SUSAN XIAO-PING SU,<br><br>　　　　　Defendant. | No. CR-11-00288 JST<br><br>**MEMORANDUM IN SUPPORT OF MOTION PURSUANT TO FED. R. CRIM. P. 33**<br><br><br>Date:　October 31, 2014<br>Time:　9:30 a.m.<br>Hon. Jon S. Tigar |

DEF RULE 33 MTN

**TABLE OF CONTENTS**

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Factual Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1.  Su's behavior during the proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

2.  The report by Dr. Gregory. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.  This Court Should Grant a New Trial Pursuant to Fed. R. Crim. P. 33. . . . . . . . . . . . . . . . . 6

A.  This Court Should Grant a New Trial in the Interest of Justice. . . . . . . . . . . . . . . . . . . . . . . 6

1.  Dr. Gregory's testimony would provide the jury with an accurate and relevant
    description of Su's mental condition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

2.  The charged crimes all contain a  mens rea or intentional element. . . . . . . . . . . . . . . . . . . . 11

B.  The Court Should Grant a New Trial for Newly-Discovered Evidence. . . . . . . . . . . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3   *Estate of Barabin v. Asten Johnson, Inc.*, 740 F.3d 457 (9th Cir. 2014) (en banc). . . . . 8-9

4   *Lafler v. Cooper,* 132 S.Ct. 1376 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5   *Liparota v. United States*, 471 U.S. 419 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

6   *Rock v. Arkansas*, 483 U.S. 44  (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

7   *Staples v. United States*, 114 S. Ct. 1793 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

8   *United States v. Alaniz,* 726 F.3d 586 (5th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . 13

9   *United States v. Alston,* 974 F.2d 1206 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . 6

10   *United States v. Archer*, 671 F.3d 149 (2d Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . 11

11   *United States v. Barajas-Montiel*, 185 F.3d 947 (9th Cir. 1999),
     *cert. denied*, 531 U.S. 849 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
12

13   *United States v. Boone*, 951 F.2d 1526 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . 11

14   *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004),
     *cert. denied,* 546 U.S. 827 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

15   *United States v. Christian*, 749 F.3d 806 (9th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . 8

16   *United States v. Finley*, 301 F.3d 1000 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . 8

17   *United States v. French,* 748 F.3d 922 (9th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . 11

18   *United States v. Gutierrez*, 783 F. Supp.1538 (Dist. P.R. 1991). . . . . . . . . . . . . . 9, 10, 14

19   *United States v. Gutierrez*, 1992 U.S. App. LEXIS 5610 (1st Cir. 1992). . . . . . . . . . . . 10

20   *United States v. Harrington,* 410 F.3d 598 (9th Cir. 2005),
     *cert. denied,* 546 U.S. 1115 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14
21

22   *United States v. Hinkson,*  585 F.3d 1247 (9th Cir. 2009 ) (en banc),
     modified, 611 F.3d 1098 (9th Cir. 2010), *cert. denied,* 131 S.Ct. 2096 (2011) . . . . . . 13

23   *United States v. Kellington*, 217 F.3d 1084 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . 6

24   *United States v. Morales,* 108 F.3d 1031 (9th Cir 1997) . . . . . . . . . . . . . . . . . . . . . . . . 8

25   *United States v. Nguyen*, 73 F.3d 887 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 12

26   *United States v. Parmelee*, 42 F.3d 387 (7th Cir. 1994),
     *cert. denied,* 516 U.S. 812 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
27

28   DEF RULE 33 MTN                              -ii-

*United States v. Pelisamen*, 641 F.3d 399 (9th Cir. 2011).. . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Pohlot,* 827 F.2d 889 (3d Cir. 1987),
*cert. denied*, 484 U.S. 1011 (1988).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Torres-Flores,* 502 F.3d 885 (9th Cir. 2007).. . . . . . . . . . . . . . . . 11, 12

*United States v. Villanueva-Sotelo*, 515 F.3d 1234 (D.C. Cir. 2008),
*cert. denied*, 556 U.S. 1234 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Willis,* 476 F.3d 1121 (10rh Cir.  2007).. . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Zhen Zhao Wu*, 711 F.3d 1  (1st Cir.),
*cert. denied,* 134 S.Ct. 365 (2013).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## FEDERAL STATUTES AND RULES

8 U.S.C. section 1324(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

18 U.S.C. section  2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. section 17. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. section 1001(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. section 1001(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. section 1030(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. section 1546(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. section 1957(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. section  2255. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Crim. P. 29. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Crim. P. 33. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 9

Fed. R. Evid. 704. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

DEF RULE 33 MTN                           -iii-

1  JOHN J. JORDAN, ESQ.   (Cal. State Bar No. 175678)
   400 Montgomery Street, Ste. 200
2  San Francisco, CA   94104
   (415) 391-4814
3  (415) 391-4308 (FAX)

4  Attorney for Defendant
   SUSAN XIAO-PING SU

5

6                    UNITED STATES DISTRICT COURT

7                  NORTHERN DISTRICT OF CALIFORNIA

8                     SAN FRANCISCO DIVISION

9  UNITED STATES OF AMERICA,          )    No. CR-11-00288 JST
                                      )
10              Plaintiff,            )    **MEMORANDUM IN SUPPORT**
                                      )    **OF MOTION PURSUANT TO**
11  v.                                )    **FED. R. CRIM. P. 33**
                                      )
12  SUSAN XIAO-PING SU,               )
                              .       )    Date:   October 31, 2014
13              Defendant.            )    Time:  9:30 a.m.
   _____)    Hon. Jon S. Tigar

14

15                        **INTRODUCTION**

16        The defendant, Susan Su, through her above-listed counsel, John J. Jordan, files this

17  memorandum of points and authorities, and accompanying declaration, in support of her motion

18  for a new trial pursuant to Fed. R. Crim. P. 33.

19        The defendant Susan Su moves for a new trial pursuant to Fed. R. Crim. P. 33, on the

20  ground that the defendant is and was suffering from an unrecognized mental impairment.  The

21  report of Dr. Gregory supports the defense arguments that a new trial is warranted because the

22  jury did not hear crucial evidence on the defendant's inability to form the requisite mens rea;  the

23  jury was exposed to her behavior at trial, yet did not hear any testimony regarding Su's mental

24  health, that would have explained her behavior and mitigated its impact on the jury; and Su's

25  ability to decide whether to testify on her own behalf was affected by her untreated mental

26  illness.

27

28  DEF RULE 33 MTN                        1

1         **FACTUAL BACKGROUND**

2 **1.  Su's behavior during the proceedings**

3    The defendant was tried on a thirty-five count superseding indictment, charged with a

4 scheme to defraud non-immigrant aliens of money and property, specifically tuition and other

5 fees.  The government contended at trial that Su engaged in a scheme to defraud various non-

6 immigrant foreign students, by submitting false articulation agreements to the Department of

7 Homeland Security, in order to improperly qualify under the Department's Student Exchange

8 Visitor Program (SEVP) for certification that Tri-Valley could enroll foreign students with F-1

9 visas, and access SEVIS, Homeland Security computer program for monitoring F-1 students.

10    During the proceedings, there were several instances involving Su's behavior, that

11 support this motion for a new trial.

12    One instance happened outside of court.  Counsel has been informed that at one point, Su

13 went without her defense counsel to the offices of the United States Attorney and would not

14 voluntarily leave.

15    There were additional instances put on the record regarding Su's behavior during the

16 trial.

17    On March 4, 2014, the government stated it had observed Su talking in a "stage whisper"

18 that was audible to the jury, during defense counsel's cross-examination of a government

19 witness.  TR 274.  The government believed that Su was attempting to convey her pleasure with

20 her counsel's performance.  TR 274.  Defense counsel also noted that Su had been talking to him

21 quite audibly during the government's direct examination of a witness, and told the Court he had

22 admonished Su to remain composed during the trial.  TR 275.

23    The next day, on March 5, 2014, at the start of the proceedings, the government notified

24 the Court that it believed Su had sent an email the day before, or very early that morning, to the

25 witness who had testified for the government the day before.  TR 349.  The government also

26 stated that it believed Su, using different names, had been sending emails for the past week to

27

28 DEF RULE 33 MTN      2

various government witnesses.  TR 350.  In response, defense counsel told the Court he had told Su that it was not appropriate for her to have any contact with the Court, the prosecutors, and particularly any witnesses.  TR 353.

This Court, noting that Su was late in appearing for trial that day, amended her conditions of release to require her to be in court by 8:00 a.m., unless otherwise excused.  TR 354.  The court then strongly admonished Su that she was to avoid any contact with any victim or witness in the trial.  The Court told Su directly that "effective immediately there's no further contact and that you're going to be on time for this proceeding."  TR 354.  Su told the Court that she understood the admonition.  TR 355.

After the court admonition, the government told the court that it had been notified by court security officers that Su may have had contact with potential jurors before the jury was empaneled.  TR 355.

Later that morning, the government informed the Court that Su had attempted to talk to its next witness, Dr. Shy Shenq Liou, who Su had earlier sent emails to prior to the trial.  TR 405.  Defense counsel admitted the contact, but explained that Su was "probably" just trying to say hello to Dr. Liou.  TR 405-06.  This Court again admonished Su not to have any contact with a witness.  TR 406-07.

On March 10, 2014, the next court date, this Court put on the record that earlier in the session, while defense counsel was questioning a witness, Su had risen from the defense table, carrying a laptop, and was attempting to talk to counsel in a loud voice.  TR 721.  The Court expressed its concern that Su's behavior could pose a distraction to the jury.  TR 721-22.

The following day, March 11, 2014, this Court again admonished Su for "cheering" defense counsel on during his questioning of a witness, saying "Yes, Yes" is a loud voice.  TR 883.  This Court noted that while it was describing the incident, Su was smiling at the Court, and had smiled earlier during her outburst.  TR 883.  In reply, defense counsel stated that Su found it genuinely hard to stay quiet during the trial.  TR 884.  The Court again admonished Su, pointing

DEF RULE 33 MTN                                3

out that "every day there's one more thing, and every day the Court repeats itself, and in retrospect, it's a case of continuing conduct."   TR 885.

On March 19, 2014, Su was very late arriving at the courtroom. TR 1739, 1756.  While the parties were waiting for her to arrive, the Court put on the record that Su had sent an email, with a 2,000 page attachment, directly to the Court, with copies to the government and defense counsel. TR 1740.  Defense counsel noted that he received the email at 5:30 a.m.  TR 1741.

On March 24, 2014, the trial ended with the jury finding Su guilty of the  remaining 31 counts in the indictment.  CR 118-20.

After the verdict was returned, this Court held a hearing on the government's motion to revoke Su's bail and remand her pending sentencing.   TR 1933.  During the hearing, defense counsel described a prior "nervous breakdown" in 2007 that resulted in a state civil commitment. TR 1934.  The government and defense counsel also both mentioned a prior order of the magistrate in this case, ordering mental health therapy for Su.  TR 1934.

The court granted the government's motion to detain Su, stating that it found that Su had demonstrated an incapacity to comply with the Court's orders.  TR 1935.  Noting Su's history of mental health issues, the court stated that "it was true that she was either unwilling or unable, and I think it might have been not able.  She just couldn't stop herself from contacting other persons in the case." TR 1935.   Finally, the court granted defense counsel additional time to brief post-trial motions.  TR 1936.

**2.     The Report by Dr. Gregory**

Following the trial, the defense retained Dr. Amanda Gregory to evaluate the defendant, in light of these series of events.   Dr. Gregory has now supplied counsel with a summary analysis, based on her review of the defendant to date.  A copy of Dr. Gregory's report is being submitted separately under seal, in light of the confidential information contained in the report.

Dr. Gregory states that "the current assessment results, inpatient psychiatric records from 2005, and treatment records from 2011, all suggest that Ms. Su has significant mental health

DEF RULE 33 MTN                           4

issues. Ms. Su has a history of unstable mood including depressive symptoms and more prominently episodes of mania involving euphoric or abnormally elevated or irritable mood, agitation, impulsivity and poor decision-making, pressured speech, racing thoughts, decreased need for sleep, and increased energy and hyper focus on specific goal-directed activities." Report at p. 11.  The report details that "Su also has a history of psychotic symptoms, which appear to escalate during episodes of mania. Psychotic features include grandiose and paranoid delusions (thinking she can communicate with God, thinking she is being followed and people are trying to harm her), disorganized speech and hallucinations." *Id*. Dr. Gregory notes that Su appears to have a history of psychotic symptoms in the absence of prominent mood symptoms. Report at 11.

Dr. Gregory concludes that Su's symptoms are consistent with a diagnosis of Schizoaffective Disorder, Bipolar Type, and explains that Schizoaffective disorder is a combination of symptoms of bipolar disorder and schizophrenia and tends to involve episodes of severe symptoms followed by periods of improvement and less severe symptoms.  *Id*. Dr. Gregory also stated that "Other diagnoses to be considered for Ms. Su include Bipolar Disorder with Psychotic Features and Schizophrenia, depending on the relative prominence over time of psychotic versus mood symptoms. These disorders are all considered to be major mental illnesses."  Report at 11.

In Dr. Gregory's opinion, Su's "untreated mental illness appears to have played a role in her behavior that resulted in her convictions and her erratic behavior during the trial.  People experiencing manic and psychotic symptoms often exhibit impulsive behavior and extremely poor judgment. These symptoms likely played a role in Ms. Su's decisions to contact the judge and witnesses during her trial. Her grandiose delusional thinking and unstable mood may also have played a role in her behavior that resulted in her charges, i.e. enrolling large numbers of students without the staff to teach classes, not paying adequate attention to the rules of the process."  Report at 12.

DEF RULE 33 MTN                              5

**ARGUMENT**

**I.      This Court Should Grant a New Trial Pursuant to Fed. R. Crim. P. 33**

The defendant Susan Su moves for a new trial pursuant to Fed. R. Crim. P. 33, on the ground that the defendant is and was suffering from an unrecognized mental impairment, such that the jury did not hear crucial evidence on the defendant's inability to form the requisite mens rea, required to find her guilty.  In addition, the defendant did not receive a fair trial, because the jury was exposed to her behavior at trial, yet did not hear any testimony regarding Su's mental health, that would have explained her behavior and mitigated its impact on the jury.  Finally, Su's ability to decide whether to testify on her own behalf was affected by her untreated mental illness.

In contrast to a motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29, a "district court's power to grant a motion for new trial is much broader than its power to grant a motion for judgment of acquittal."  *United States v. Kellington,* 217 F.3d 1084, 1094-95 (9th Cir. 2000), quoting *United States v. Alston*, 974 F.2d 1206, 1210-1211 (9th Cir. 1992).  "The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *United States v. Kellington,* 217 F.3d at 1095, quoting *United States v. Alston*, 974 F.2d at 1210-11 (further citations and internal quotation marks omitted); and citing Fed. R. Crim. P. 33 ("On a defendant's motion, the court may grant a new trial to that defendant *if the interests of justice so require*.") (emphasis in *Kellington*).

**A.      This Court Should Grant a New Trial in the Interest of Justice**

**1.      Dr. Gregory's testimony would provide the jury with an accurate and relevant description of Su's mental condition**

The defendant submits that this Court should order a new trial, in the interest of justice, so that the jury can hear testimony regarding the defendant's mental capacity to form the criminal intent that is an element of the crimes charged in the indictment.  Dr. Gregory can offer expert

DEF RULE 33 MTN                           6

1 testimony directly relevant to the issues of whether Su had a diminished capacity to form the

2 specific intent or the knowing and intentional conduct that are elements in most, if not all, the

3 charges in the indictment.

4     Preliminarily, the defense must note that Su's mental condition may have also impacted

5 her pre-trial ability to consider and weigh the pre-trial plea offer made by the government.

6 Counsel is informed that prior to trial, the defendant was presented with a written plea offer with

7 an agreed recommended sentence of 41 months.  Her mental ability, particularly any delusional

8 view of the government's evidence and strength of its case, appears to counsel to have impacted

9 her ability to intelligently consider the plea offer before trial  The Supreme Court, in *Lafler v.*

10 *Cooper*, 132 S.Ct. 1376 (2012), recently emphasized the importance of a fair plea bargaining

11 process. *Id.,* at 1388-91.

12     Moreover, Su's mental condition impacted her right to a fair trial.  The increasing stress

13 facing Su as the trial progressed resulted in repeated instances of in-court behavior that could

14 only have prejudiced her before the jury.  The Court noted at one point that her behavior might be

15 distracting to the jury (TR 721-22), and described at another point her inappropriate smiling in

16 court with the jury present.  TR 883.  A fair inference is that Su's behavior during the trial

17 prejudiced her before the jury, who did not hear any testimony in explanation of Su's mental

18 condition.   On this ground alone a new trial could be ordered by this Court.

19     Moreover, the stress peaked at the moment when Su had to make an intelligent decision

20 on whether to testify.   At the end of the trial, Su emailed this Court and the parties, early in the

21 morning, a message with a 2000 page attachment, which is evidence of Su's mental unraveling.

22 Yet, at that time, Su was deciding whether or not to testify on her own behalf.  Dr. Gregory can

23 now give evidence as to whether Su was mentally capable at the time of making an intelligent

24 decision about so crucial a matter.   This also goes to the issue of a fair trial.

25     But, the most compelling reason to grant a new trial in the interest of justice is that Su

26 was not able to present Dr. Gregory's proffered expert testimony to the jury on Su's diminished

27 capacity.

28 DEF RULE 33 MTN       7

In *United States v. Christian*, 749 F.3d 806 (9th Cir. 2014), the Ninth Circuit very recently vacated a conviction for  transmitting email communications containing threats to injure another, in a case in which the defendant argued that the district court should have allowed his expert, a psychologist who had earlier examined him for competency to stand trial, to testify regarding his diminished capacity defense.

The court held that the district court abused its discretion by excluding the defendant's expert.  Instead, the district court should have evaluated whether the substance of the expert's testimony would have helped the jury decide whether the defendant could form the specific intent to threaten the recipients of his emails.  The Ninth Circuit held that the district court should not have excluded such testimony without conducting a voir dire or otherwise giving the expert an opportunity to explain how he could provide meaningful and relevant testimony on diminished capacity from the competency evaluation he had conducted.

The court in *Christian* acknowledged that Fed. R. Evid. 704(b) would have limited the scope of the defense expert's testimony, but rejected the government's argument that the rule would have prohibited him from testifying at all, stating that the rule "allows expert testimony on a defendant's mental state so long as the expert does not draw the ultimate inference or conclusion for the jury." *Id.,* quoting *United States v. Finley*, 301 F.3d 1000, 1015 (9th Cir. 2002); see also *United States v. Morales,* 108 F.3d 1031, 1033 (9th Cir 1997) (holding that an expert may "give an opinion on a predicate matter from which a jury might infer the defendant's required mens rea").  The court concluded that the defense expert's diagnoses and the results of the psychological evaluation should not run afoul of this restriction.  *Id.,* citing *Finley*, 301 F.3d at 1015 (holding that expert testimony regarding the defendant's "atypical belief system" did not violate Rule 704(b)'s prohibition because "[t]he jury was free to conclude that [the defendant] knew the notes were fraudulent, despite the rigidity of his belief system").

The court also held that the rule requiring a new trial when a district court erroneously admits prejudicial expert testimony in a civil trial also applies to the erroneous exclusion of expert testimony from a criminal trial.  *Id.,* citing *Estate of Barabin v. Asten Johnson, Inc*., 740

DEF RULE 33 MTN                                     8

F.3d 457 (9th Cir. 2014) (en banc).  The court accordingly vacated the defendant's conviction and remanded for a new trial.

Similarly, in *United States v. Pohlot*, the Third Circuit concluded "that although Congress intended § 17(a) to prohibit the defenses of diminished responsibility and diminished capacity, Congress distinguished those defenses from the use of evidence of mental abnormality to negate specific intent or any other mens rea, which are elements of the offense." *United States v. Pohlot,* 827 F.2d 889, 890 (3d Cir. 1987), *cert. denied*, 484 U.S. 1011 (1988).   The court pointed out that  where evidence of diminished capacity is offered to negate the intent element of an offense, the evidence is not being used to establish an affirmative defense (which would be prohibited by 18 U.S.C. § 17) but rather is proffered to negate the mens rea element. *Id.*

In a case very similar in fact and procedural status as this one, the district court in *United States v. Gutierrez,* 783 F. Supp.1538 (Dist. P.R. 1991), considered the same situation, where it was determined, post-trial, that the defendant was suffering from an impairment in intellectual functioning.   As the district court put it: "It was at this point that the court found itself in a quandary.  The psychologist's report revealed that defendant suffered from a mental defect that might affect his ability to appreciate the nature and quality of the criminal conduct for which he was convicted.  At the same time, he had been convicted by a jury who had not had the opportunity to hear any evidence as to defendant's mental condition." *Id*., at 1542.

The district court ordered a hearing to be held, stating "Counsel and the government are expected to address these serious issues, inasmuch as  we all have an obligation to make certain that a miscarriage of justice does not occur.  The time to correct any mistake is now, and not years down the road through 28 U.S.C. § 2255 habeas corpus proceedings." *Id.* , at 1542-43.

After holding a hearing on the matter and considering the psychiatric testimony, the district court granted a new trial under Fed. Crim. P. 33.  The court found that the defendant's mental condition went "to the element of mens rea, that is, defendant's ability  to form the requisite criminal intent to commit the offense." *Id.*, at 1545.  The court concluded that the "psychological evidence clearly creates a material issue as to intent that was not raised at trial in

DEF RULE 33 MTN                                    9

1   any way, shape or form."  The court believed that had the jury been presented with evidence of

2   defendant's mental condition, it would have been "unlikely that the government will be able to

3   prove the necessary intent beyond a reasonable doubt." *Id.*, at 1546.

4        The court ordered a new trial, holding that evidence of defendant's mental condition

5   should be placed before the jury in order to determine whether he could form the necessary mens

6   rea to commit the offense.   The court found that "Failure to give defendant an opportunity to

7   present this testimony may implicate his constitutional rights to due process and to offer

8   testimony in his own defense." *Id.*, at 1549, citing *Rock v. Arkansas*, 483 U.S. 44  (1987).

9        The First Circuit later affirmed the district court's decision in an unpublished

10   memorandum, finding that its decision to grant a new trial was within the permissible scope of

11   the district court's discretion.  See *United States v. Gutierrez,* 1992 U.S. App. LEXIS 5610

12   (1st Cir. 1992).

13        Here, as in *Gutierrez,* a psychologist's report reveals that Su suffers from a mental defect

14   that might affect her ability to appreciate the nature and quality of the criminal conduct for which

15   she was convicted.  Dr. Gregory's report details that Su's symptoms are consistent with a

16   diagnosis of Schizoaffective Disorder, Bipolar Type, and that other diagnoses to be considered

17   include Bipolar Disorder with Psychotic Features and Schizophrenia.  Report at 11.  Dr. Gregory

18   reports that these disorders are all considered to be major mental illnesses.   Report at 11.   Dr.

19   Gregory concludes that Su's grandiose delusional thinking and unstable mood may also have

20   played a role in her behavior that resulted in her charges.  Report at 12.

21        At the same time, she had been convicted by a jury who had not had the opportunity to

22   hear any evidence as to defendant's mental condition.   This is precisely the type of evidence that

23   the district court in *Gutierrez* believed that if presented to the jury, it would have been "unlikely

24   that the government will be able to prove the necessary intent beyond a reasonable doubt."

25   *Gutierrez,* 783 F. Supp. at 1546.  Su's delusional thinking process is directly relevant to her

26   inability to form the requisite intent that is an element of the crimes charged in the indictment.

27

28   DEF RULE 33 MTN                        10

1    **2.     The charged crimes all contain a mens rea or intentional element**

2         Dr. Gregory's expert testimony is relevant here, because many, if not all, of the charges

3    brought against Su require specific intent, or intentional conduct.  A jury might therefore infer

4    from Dr. Gregory's testimony that Su lacked the required mens rea as to those counts.

5         Both wire and mail fraud charged in counts 1 through 14 require the specific intent to

6    defraud.  *United States v. French,* 748 F.3d 922, 935 (9th Cir. 2014); *United States v. Pelisamen*,

7    641 F.3d 399, 409 (9th Cir. 2011).

8         The crime of visa fraud charged in counts 16-19, and the related charge of conspiracy to

9    commit visa fraud charged in count 15, has a mens rea requirement of guilty knowledge.  The

10   First Circuit, in *Zhen Zhao Wu*,  recently stated: "The statute, 18 U.S.C. § 1546(a), makes it a

11   felony to submit false information on an application for a visa or other immigration document.

12   The statute "'unambiguously extends a mens rea requirement' of knowledge."  *United States v.*

13   *Zhen Zhao Wu*, 711 F.3d 1, 30  (1st Cir.), *cert. denied,* 134 S.Ct. 365 (2013), quoting *United*

14   *States v. Villanueva-Sotelo*, 515 F.3d 1234, 1239 (D.C. Cir. 2008), *cert. denied,* 556 U.S. 1234

15   (2009); and *United States v. Archer*, 671 F.3d 149, 154 (2d Cir. 2011).

16        The charges of using a false document, in violation of 18 U.S.C. § 1001(a)(3) (count 20)

17   and making a false statement, in violation of 18 U.S.C. § 1001(a)(2) (count 21), are both specific

18   intent crimes.   In general, proof of five elements is essential to sustain a conviction under 18

19   U.S.C. § 1001: a statement, falsity, materiality, specific intent, and agency jurisdiction.

20   *United States v. Camper,* 384 F.3d 1073, 1075 (9th Cir. 2004), *cert. denied,* 546 U.S. 827 (2005),

21   citing *United States v. Boone*, 951 F.2d 1526, 1544 (9th Cir. 1991).

22        The two charges of alien harboring, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii),  charged

23   in counts 22 and 23, would appear to have an implied specific intent element.

24        In *United States v. Torres-Flores,* 502 F.3d 885 (9th Cir. 2007), the Ninth Circuit

25   examined the closely related crime of 8 U.S.C. § 1324(a)(2), which makes it both a felony and a

26   misdemeanor to knowingly or recklessly bring to the United States "an alien [who] has not

27   received prior official authorization to come to, enter, or reside in the United States."  The court

28   DEF RULE 33 MTN                            11

1   noted that whether the crime is a misdemeanor, punishable by no more than one year

2   imprisonment, or a felony, punishable by up to 15 years imprisonment, depends on the existence

3   of certain aggravating factors laid out in subsections 1324(a)(2)(B)(I)-(iii).  The court stated that

4   it had held that the felony offense contains an implied specific intent element, that defendant

5   acted with intent to "violate immigration laws."  *Id.,* citing *United States v. Barajas-Montiel*, 185

6   F.3d 947, 952-53 (9th Cir. 1999), *cert. denied*, 531 U.S. 849 (2000) and *United States v. Nguyen*,

7   73 F.3d 887, 894 n.4 (9th Cir. 1995) (noting that when criminal intent is an implied element of a

8   crime it "is no less an element of the offense here than if it had been expressly provided for in the

9   statute").

10        In *United States v. Nguyen*, 73 F.3d at 895, the Ninth Circuit similarly held, in reviewing

11   another closely related crime, section 1324(a)(1)(A), that the government must show that the

12   defendant acted with criminal intent.

13        Finally, in *United States v. Parmelee*, 42 F.3d 387 (7th Cir. 1994), *cert. denied,* 516 U.S.

14   812 (1995), the Seventh Circuit stated: "We have no question that section 1324(a)(1)(B)

15   implicitly requires the government to prove beyond a reasonable doubt not only that the

16   defendant knew the alien he transported had entered this country in violation of immigration law,

17   but also that the defendant knowingly transported the alien to further that violation, that is, acted

18   willfully."  *Id.*, at 390.  The court pointed out that "without a mens rea requirement, section

19   1324(a)(1)(B) could penalize purely innocent conduct."  *Id.,* at 390-91, citing *Staples v. United*

20   *States*, 114 S. Ct. 1793, 1799 (1994) and *Liparota v. United States*, 471 U.S. 419, 426 (1985).

21        These three cases make clear that the Ninth Circuit would similarly find that 8 U.S.C. §

22   1324(a)(1)(A)(iii) also has an implied specific intent element.

23        As for unauthorized access of a government computer,  in violation of 18 U.S.C. §§

24   1030(a)(3) and 2, charged in count 25 of the indictment, the Tenth Circuit, in *United States v.*

25   *Willis,* 476 F.3d 1121, 1125-26 (10rh Cir.  2007), noted that while the section does not require

26   proof of intent to defraud, it does require that a defendant intentionally accessed information

27   from a protected computer.

28   DEF RULE 33 MTN                    12

1   Finally, as to the seven remaining counts of money laundering, in violation of 18 U.S.C. §

2   1957(a), the government must prove defendant knew the proceeds were derived from specified

3   unlawful conduct.  *United States v. Alaniz,* 726 F.3d 586, 602 (5th Cir. 2013)  The court in

4   *Alaniz* pointed out that the knowledge inquiry looks to whether the property was derived from an

5   unlawful activity.  Thus, while the mens rea element of the offense does not extend to whether

6   the defendant knowingly laundered the funds, the government must prove that the defendant

7   knew the funds were illicit and engaged in a "financial transaction" with them regardless.  *Id.*, at

8   602, n. 6.

9   Dr. Gregory's report establishes that she has relevant testimony to offer a jury as to Su's

10  ability to form the requisite intent for these crimes, as in her opinion Su's untreated mental

11  illness appears to have played a role in her behavior that resulted in her convictions.  While Dr.

12  Gregory could not testify as to the ultimate fact, that Su lacked the requisite mental intent, she

13  could testify as to Su's mental health. This testimony goes to Su's inability to form the requisite

14  intent.  Operating under delusions goes directly to the ability to intent to commit frauds, or to

15  form the intent to violate federal immigration laws.

16  **B.   This Court Should Grant a New Trial for Newly Discovered Evidence**

17  Alternatively, this Court may grant a new trial on the grounds of newly discovered

18  evidence.

19  The proffered testimony of Dr. Gregory also qualifies as newly discovered evidence.  See

20  *United States v. Hinkson*, 585 F.3d 1247, 1257 (9th Cir. 2009 ) (en banc), modified, 611 F.3d

21  1098 (9th Cir. 2010), *cert. denied,* 131 S.Ct. 2096 (2011), citing *United States v. Harrington,* 410

22  F.3d 598 (9th Cir. 2005), *cert. denied,* 546 U.S. 1115 (2006).  The *Harrington* factors are:  (1)

23  the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not

24  be the result of the defendant's lack of diligence; (3) the evidence must be "material" to the issues

25  at trial; (4) the evidence may not be (a) cumulative or (b) "merely impeaching"; and (5) the

26  evidence must indicate that a new trial would "probably" result in acquittal.  *United States v.*

27  *Harrington,* 410 F.3d at 601.

28  DEF RULE 33 MTN                              13

1    First, the report of Dr. Gregory is newly discovered.  No such detailed report was done

2    earlier, and there was certainly no prior in-depth analysis, equal to that done by Dr. Gregory.

3    This is understandable, as Su's mental condition worsened and came to a climax at the close of

4    the trial, when she emailed this Court and the lawyers after a late night breakdown.  Su's

5    behavior was more balanced prior to the stress of the trial, a circumstance that is consistent with

6    the findings of Dr. Gregory.  Now, however, the defendant's mental health issues have come to

7    the surface and been recognized.

8    Second, the failure to discover the evidence was not the result of the defendant's lack of

9    due diligence.  The earlier therapy ordered by the magistrate did not disclose the extent of Su's

10   mental condition.  While there was an earlier incident, counsel for the defense believed that was

11   a nervous breakdown.  TR 1934.  Again, the stress of the trial exposed the depth of the problem,

12   and now Dr. Gregory's report describes the issue in detail.

13   Third, as argued above in Section A, Dr. Gregory's testimony is material to the issue of

14   intent.  Her testimony regarding Su's diminished capacity would be offered at trial not as an

15   affirmative defense, but to negate the mens rea element of the crimes charged in the indictment.

16   Fourth, Dr. Gregory's proffered testimony is in no way cumulative or merely impeaching.

17   There was no evidence of Su's mental condition presented at trial, and the testimony goes to Su's

18   ability to form the requisite intent, not to any issues of credibility.

19   Here, as in *Gutierrez,* a psychologist's report reveals that Su suffers from a mental defect

20   that might affect her ability to appreciate the nature and quality of the criminal conduct for which

21   she was convicted.  At the same time, she had been convicted by a jury who did hear any

22   evidence as to her mental condition.  Again, this is precisely the type of evidence that the district

23   court in *Gutierrez* believed that if presented to the jury, it would have been "unlikely that the

24   government will be able to prove the necessary intent beyond a reasonable doubt."  *Gutierrez,*

25   783 F. Supp. at 1546.  Dr. Gregory's testimony should be heard by a jury, so that the jury could

26   have all the relevant evidence it needs to determine if Su had the requisite intent and mens rea

27   required by the elements of the crimes charged in the indictment.

28   DEF RULE 33 MTN                              14

**CONCLUSION**

The Court should grant defendant's motion.


Dated: August 29, 2014.                    Respectfully submitted,

                                            /s/ John J. Jordan
                                            JOHN J. JORDAN
                                            Attorney for Defendant
                                            SUSAN XIAO-PING SU

1  JOHN J. JORDAN, ESQ.   (Cal. State Bar No. 175678)
   400 Montgomery Street
2  Suite 200
   San Francisco, CA   94104
3  (415) 391-4814
   (415) 391-4308 (FAX)
4
   Attorney for Defendant
5  SUSAN XIAO-PING SU

6                  UNITED STATES DISTRICT COURT

7                NORTHERN DISTRICT OF CALIFORNIA

8                  SAN FRANCISCO DIVISION

9  UNITED STATES OF AMERICA,          )    No. CR-11-00288 JST
                                      )
10             Plaintiff,             )    **DECLARATION IN SUPPORT**
                                      )    **OF MOTION PURSUANT TO**
11  v.                                )    **FED. R. CRIM. P. 33**
                                      )
12  SUSAN XIAO-PING SU,               )
                                      )
13                                    )    Date:   October 31, 2014
               Defendant.            )    Time:  9:30 a.m.
14  _____ )    Hon. Jon S. Tigar

15        **DECLARATION OF COUNSEL IN SUPPORT OF MOTION:**

16        I, JOHN J. JORDAN, am an attorney licensed to practice in the State of California and do

17  hereby declare under the penalty of perjury as follows:

18        1. I am an attorney-at-law duly authorized to practice before the Courts of the State of

19  California, and the attorney of record for Defendant Susan Su.  I have reviewed the attached

20  Motion, and I believe the factual statements made therein are true and correct to the best of my

21  information and belief.

22        2. In preparing this motion, I have reviewed the trial transcripts; prior motions filed in

23  this case; reports; and other discovery materials provided by the government in this case.

24        I declare under penalty of perjury under the laws of the State of California that the

25  foregoing is true and correct.

26  DATED: August 29, 2014.         /s/ John J. Jordan
                                     JOHN J. JORDAN
27                                   Attorney for SUSAN XIAO-PING SU

28  DEF RULE 33 MTN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEF RULE 33 MTN