1  MELINDA HAAG (CABN 132612)
   United States Attorney
2
   J. DOUGLAS WILSON (DCBN 412811)
3  Chief, Criminal Division

4  HARTLEY M. K. WEST (CABN 191609)
   WADE M. RHYNE (CABN 216799)
5  Assistant United States Attorneys

6       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
7       Telephone: (415) 436-6747
        FAX: (415) 436-7234
8       Hartley.West@usdoj.gov
        Wade.Rhyne@usdoj.gov
9
   Attorneys for United States of America
10

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13               SAN FRANCISCO DIVISION

14  UNITED STATES OF AMERICA,          )  CR 11-0288 JST
                                       )
15          Plaintiff,                 )  UNITED STATES' OPPOSITION TO
                                       )  DEFENDANT'S RULE 33 MOTION
16     v.                              )
                                       )
17  SUSAN SU,                          )
                                       )
18          Defendant.                 )
    _____)
19

20              **I.    INTRODUCTION**

21          Convicted of 31 counts arising out of a fraud scheme from which she made more than $5.5

22  million, defendant Susan Su now moves for a new trial on the basis that expert testimony from a

23  forensic psychologist would have negated her mens rea and established her incompetence before and

24  during trial.  This motion is untimely under Federal Rule of Criminal Procedure 33, and premature as a

25  mislabeled ineffective assistance of counsel claim.  Moreover, defendant's mental health history is

26  neither newly discovered evidence, nor sufficient to raise a question as to defendant's competence.  For

27  all these reasons, the Court should deny defendant's motion for a new trial.

28  / / /

## II.     SUMMARY OF RELEVANT FACTS

**A.     Pretrial Proceedings**

Defendant was originally indicted by a federal grand jury on April 28, 2011.  Clerk's Record (CR) 1.  Agents with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI) arrested Su the morning of May 2, 2011.  CR 6.  She was arraigned and released on a $300,000 personal recognizance bond the same day, represented by retained counsel David Billingsley.  CR 3. Mental health counseling was a condition of her release.  CR 4.

At a July 26, 2011 appearance before U.S. District Judge Saundra Brown Armstrong, Billingsley noted that he had been assessing defendant's mental health and believed defendant to be competent:

> I'd asked the Court for a couple weeks to give me a chance to review the situation to see whether it would be appropriate for me to request a referral for a mental health competency. . . .  I've had an opportunity to conduct that review, and I've concluded that there is not a reasonable basis for me to ask the Court to have Ms. Su referred for mental competency evaluation, and that's based upon my discussions I've had with Ms. Su and also some discussions I've had with her mental health counselor.

(7/26/11 Tr. 3:24.)

The United States superseded the indictment on November 10, 2011, alleging 35 counts of conspiracy, visa fraud, mail fraud, wire fraud, false statements, alien harboring, and money laundering. CR 21.  Billingsley moved to withdraw on November 21, 2011.  CR 25.  Granting the motion on December 12, 2011, the district court appointed Erik Babcock as new counsel under the Criminal Justice Act (CJA).  CR 32.

Two and a half years later, on February 7, 2014, the parties appeared before the Honorable Jon S. Tigar, to whom the case had been reassigned, for a status and trial setting conference.  CR 94. During this appearance, the government advised the Court that defendant's father had sent a letter concerning defendant's mental health, and that there had "been some discussion of the defendant's mental health over the course of this" case.  (2/7/14 Tr. 10-11.)  The government requested that Babcock confirm on the record that he had no concerns regarding defendant's competency: "We've spoken with defense counsel and just wanted to make sure that we do have on the record defense counsel's belief and full familiarity with the case law that this defendant is competent to stand trial and

U.S. OPP. TO DEFT'S RULE 33 MTN.          2

1  that he does not have any concerns as her attorney, so I think Mr. Babcock's prepared to do that."

2  (2/7/14 Tr. 11.)

3       Defense counsel flagged for the Court that defendant had an involuntary psychiatric hold "about

4  nine years ago for a couple of nights," that the magistrate judge had some concerns as to whether

5  defendant was suicidal, and that defendant had attended therapy as a condition of her pretrial release.

6  (2/7/14 Tr. 11-12.)  Babcock continued: "[B]ut I have not declared a doubt as to her competence to

7  stand trial at this point. . . . I do believe she understands the proceedings and is able to help me to the

8  extent required."  (2/7/14 Tr. 12.)

9       The government clarified that "whatever conditions had been put in place by the [Magistrate]

10  Court at that early stage were lifted at defense counsel's request."  (2/7/14 Tr. 12.)  Counsel further

11  observed that defendant had not proffered any mental health defense, concluding "so we did want to

12  raise it and . . . advise the Court that despite this filing, there has been no concern raised by either

13  defense counsel as to the competency of this defendant."  (2/7/14 Tr. 12-13.)

14       The Court stated "Those comments are noted for the record."  (2/7/14 Tr. 13.)

15  **B.   Trial**

16       The case proceeded to jury trial on March 3, 2014.  CR 99.  Three weeks later, on March 24,

17  2014, the jury convicted defendant of all 31 counts presented, the government having voluntarily

18  dismissed the other four counts.  CR 119.  During the course of the trial, the Court reprimanded

19  defendant for speaking during trial proceedings, contacting trial witnesses, and appearing late for Court.

20       Following the verdict, the government requested that the Court remand defendant into custody,

21  based on her failure to comply with court orders and concerns about her inflicting self-harm.  (3/24/14

22  Tr. 1933.)  The Court agreed:

23              Dr. Su has a demonstrated incapacity to comply with the Court's reasonable
                orders, and it is true that she was either unwilling or unable, and I think it might
24              have been not able.  She just couldn't stop herself from contacting other persons
                in this case.
25
                She does have a history of mental health issues that give me actually at least as
26              much concern about her safety as anybody else's, but now that she stands
                convicted of these many counts and is suddenly facing for the first time the
27              possibility of the consequences of those convictions, I – in light of her prior

28  / / /

U.S. OPP. TO DEFT'S RULE 33 MTN.          3

1    failures to comply with the Court's orders and her prior history of mental health
2    issues, I don't think she can meet the clear and convincing burden that she has,
     and so I'll order her remanded.

3    (3/24/14 Tr. 1935.)

4    Defense counsel stated that he intended to move for judgment of acquittal under Federal

5    Rule of Criminal Procedure 29, and the Court set the matter over to April 1, 2014.  (3/24/14 Tr.

6    1936.)

7    **C.    Post-Trial Proceedings**

8    On April 1, 2014, Babcock advised the Court that he was being terminated as counsel and that

9    defendant's family had retained attorney Michael Cardoza.  CR 122.  On April 22, 2014, Cardoza's

10   associate reiterated defendant's intent to file a Rule 29 motion.  CR 127.  At the next appearance on

11   May 9, 2014, current counsel John Jordan substituted in as counsel and, for the first time, announced

12   defendant's intention to file a Rule 33 motion.  CR 132.  Defendant filed her Rule 29 and Rule 33

13   motions on August 29, 2014.  CR 167.

14   In support of her motion, defendant filed under seal a report of forensic psychologist Dr.

15   Amanda Gregory.  In her report, Dr. Gregory describes defendant's mental health history based on

16   medical records, which the defense has produced to the government.  As the report states, these records

17   show that defendant had two psychiatric hospitalizations, two days in 2005 and one day in 2011.  The

18   2005 records reveal that defendant suffered from "grandiose delusions," hallucinations, and mood

19   swings; her diagnosis was "acute psychosis of undetermined origin, possible paranoid schizophrenia,"

20   with a possibility of bipolar disorder.  In 2011, records show that defendant was involuntary committed

21   for one day when agents executing a search warrant in connection with this case feared she might be

22   suicidal.  Defendant denied feeling suicidal and was released.

23   Records further show, and Dr. Gregory's report recounts, that defendant had a mental health

24   assessment on May 9, 2011, followed by eight and a half months of therapy.  Both were conducted as a

25   condition of defendant's pretrial release, and it is to this therapist that Billingsley spoke in determining

26   that defendant was competent in July 2011.

27   Dr. Gregory also interviewed defendant in preparing her report.  Regarding her educational

28   background, defendant advised that she has a Ph.D. in Engineering from UC Berekeley and a Master's

U.S. OPP. TO DEFT'S RULE 33 MTN.          4

1    degree from UC Davis .  Regarding her psychiatric issues, defendant reported feeling "up and down,"

2    and said she had been spending hours researching and writing a legal brief for her case, showing Dr.

3    Gregory a 50-page document.

4          Dr. Gregory reported that defendant "appeared to want to emphasize her mental health issues.

5    She appeared to be exaggerating some of her difficulties in a rather unsophisticated manner."  (Rpt. at

6    6.)  According to Dr. Gregory, defendant "reported recently taking a class in jail where they watched a

7    DVD on the brain and mental disorders," "reported that she has been doing legal research including

8    reviewing a case where a person with Paranoid Schizophrenia was found not guilty because of his

9    mental illness," and "was anxious to convey that she was not suicidal because she thought this would

10   facilitate her release." (Rpt. at 6, 10.)  Based on Dr. Gregory's psychological and cognitive assessment

11   tests, she found that defendant's "responses fell in the range of scores for individuals who are likely to

12   be malingering. . . .  [She] appeared to be exaggerating or feigning some symptoms of psychosis and

13   mood on this test."  (Rpt. at 6.)

14         Dr. Gregory concluded that defendant's mental health may have "played a role in behaviors that

15   resulted in her charges" and "help to explain her more bizarre, reckless, and impulsive behavior."  (Rpt.

16   at 12.)  Nonetheless, "her behavior does not appear to be only driven by mental illness throughout the

17   process."  (Rpt. at 12.)

## III.    ARGUMENT

18

19   **A.    DEFENDANT'S MOTION IS UNTIMELY**

20         The Court should deny defendant's Rule 33 motion as untimely.  "Any motion for a new trial

21   grounded on any reason other than newly discovered evidence must be filed within 14 days after the

22   verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(2).  The time is extended to three years when the

23   motion is based on newly discovered evidence.  Fed. R. Crim. P. 33(b)(1).  Because defendant did not

24   file her motion within 14 days and there is no newly discovered evidence, the motion is untimely.

25         Defendant asserts that his motion is based on both "the interests of justice" (mtn. at 6) and

26   newly discovered evidence (mtn. at 13).  Defendant's historical mental health issues, however, are not

27   newly discovered.  They were known to and considered by both of defendant's prior counsel.

28   Billingsley even talked to her therapist.  Neither attorney believed defendant was incompetent, and

U.S. OPP. TO DEFT'S RULE 33 MTN.          5

1    neither pursued a mental health defense.

2            Nor can Dr. Gregory's report constitute new evidence, as it is essentially a summary of

3    defendant's prior medical reports.  Dr. Gregory's assessment of defendant does not differ significantly

4    from her 2005 and 2011 assessments.  The only new evidence is that defendant is conducting legal

5    research and then faking psychiatric symptoms in an effort to get her convictions reversed.

6            Under the 14-day deadline, defendant's motion for new trial comes too late.  The jury delivered

7    its verdict on March 24, 2014.  Counsel advised the Court that day that he intended to move for

8    judgment of acquittal pursuant to Rule 29.  The defense reiterated that intent, either through current or

9    substituted counsel, at the April 1 status appearance and again on April 22.  Not until May 9 – a month

10   and a half after the jury verdict – did the defense first announce its intent to file a Rule 33 motion.  The

11   motion, ultimately filed August 29, is thus untimely.

12   **B.      DEFENDANT'S MOTION IS NOT PROPERLY BEFORE THIS COURT**

13           Defendant's motion does not use the words "ineffective assistance of counsel" but – distilled –

14   that is her claim.  She contends that the jury needed to hear from the forensic psychiatrist to better

15   evaluate her mens rea and to explain her inappropriate behavior in the courtroom.  She also contends

16   that she became incompetent during the trial.  The only way to prevent these purported errors was if her

17   attorney had called a psychiatrist to testify at trial and to evaluate her competence mid-trial.

18           Ineffective assistance claims may not be couched as motions for new trial based on newly

19   discovered evidence.  *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997) (rejecting "the use of a

20   Rule 33 motion for new trial based on 'newly discovered evidence' involving the ineffective assistance

21   of counsel") (citing *United States v. Hanoum*, 33 F.3d 1128, 1130 (9th Cir.1994)).

22           The proper vehicle for her "newly discovered ineffective assistance of counsel" is a habeas

23   corpus petition under 28 U.S.C. § 2255.  *Hanoum*, 33 F.3d at 1131; *see also Pirro*, 104 F.3d at 299

24   ("The customary procedure for challenging the effectiveness of defense counsel in a federal criminal

25   trial is by collateral attack on the conviction under 28 U.S.C. § 2255.") (quoting *United States v.

26   Miskinis*, 966 F.2d 1263, 1269 (9th Cir. 1992)).  "Under habeas corpus, the court can look directly at

27   what counsel should have done, and decide whether the defense was prejudiced."  *Hanoum*, 33 F.3d at

28   1131 (citing *Strickland v. Washington*, 466 U.S. 668, 692 (1984)).  "The extra step of looking at the

U.S. OPP. TO DEFT'S RULE 33 MTN.              6

1   effect of the ineffectiveness is already built into the analysis." *Id.*

2        Defendant's remedies under § 2255 become available once she has been sentenced.  28 U.S.C.

3   § 2255(a).  Until then, her ineffective assistance claim is premature, and not properly before this Court.

4   **C.    A NEW TRIAL IS NOT WARRANTED ON THE MERITS**

5        Defendant contends the interests of justice afford a new trial because (1) she had a mental

6   deficiency at the time of the offense conduct, and expert testimony was necessary to help the jury

7   determine whether she had the ability to form the specific intent required for conviction (mtn. at 6-7);

8   (2) mental condition deteriorated during trial, causing her to behave inappropriately, and expert

9   testimony would have helped the jury understand her behavior (mtn. at 7); (3) her mental defect may

10  have impaired her ability to consider the government's plea offer prior to trial (mtn. at 7); and (4) her

11  mental defect prevented her from making an intelligent decision on whether to testify (mtn. at 7).  She

12  also argues that Dr. Gregory's report is newly discovered evidence of the above, thus requiring a new

13  trial.

14       As already explained, Dr. Gregory's report does not constitute newly discovered evidence.  It is

15  based on pre-existing mental health records from 2005 and 2011, based on conditions and conduct of

16  which defendant's prior counsel were already aware.  The only new evidence arising out of Dr.

17  Gregory's personal assessment of defendant is that she appeared to be "malingering" – or, put more

18  simply, faking it – because she believed it might help her get her convictions reversed.

19       Nor do the interests of justice warrant a new trial, as there was no reasonable basis for

20  questioning defendant's competence, and counsel made an informed decision not to offer expert

21  testimony as to defendant's mental health.

22       Due process requires a court to conduct a competency hearing when it "is presented with

23  evidence that creates a 'bona fide doubt' about the defendant's competency to stand trial."  *United*

24  *States v. Loyola Dominguez*, 125 F.3d 1315, 1318 (9th Cir. 1997) (quoting *Hernandez v. Ylst*, 930 F.2d

25  714, 716 (9th Cir. 1991)).  "A good faith doubt about a defendant's competence arises if there is

26  substantial evidence of incompetence."  *United States v. Lewis*, 991 F.2d 524, 527 (9th Cir. 1993).

27       The substantive test for competence to stand trial is whether the defendant has "sufficient

28  present ability to consult with his lawyer with a reasonable degree of rational understanding – and

U.S. OPP. TO DEFT'S RULE 33 MTN.          7

1  whether [she] has a rational as well as factual understanding of the proceedings against [her]."  *Dusky v.*

2  *United States*, 362 U.S. 402, 402 (1960).  "There are no particular facts which invariably signal

3  incompetence, but important factors which merit a judge's attention include: irrational behavior,

4  demeanor before the trial court, and available medical evaluations."  *Lewis*, 991 F.2d at 527 (citing

5  *Drope v. Missouri*, 420 U.S. 162, 180 (1975)).

6      No one involved in the trial process thought there was a good faith doubt as to defendant's

7  competence.  Government counsel drew the attention of each attorney who represented defendant, as

8  well as the magistrate judge and both district judges to whom defendant's case was assigned, to

9  defendant's mental health issues for the express purpose of ensuring everyone was aware of them.

10  Defense counsel advised the government and the Court that they were mindful of her mental health

11  history and status.  Billingsley stated on the record that he had even spoken to defendant's therapist.

12  Notwithstanding this awareness, prior counsel determined that it was not appropriate to raise a mental

13  health defense and that there was no reasonable basis to question defendant's competence to stand trial.

14  Similarly, neither the magistrate judge, who terminated defendant's pretrial release condition of mental

15  health treatment, nor Judge Armstrong, before whom defendant appeared several times, questioned

16  defendant's competence before trial.

17      This Court had perhaps the greatest opportunity to observe defendant, as she sat in the

18  courtroom for her three-week trial.  Defendant was actively participating in her defense throughout the

19  trial.  She paid careful attention to witness testimony, pored over exhibits, took detailed notes, and

20  made numerous suggestions to counsel about questions to ask and documents to show the witnesses.

21  She wrote lengthy, coherent emails to witnesses, counsel, and the Court discussing what she believed to

22  be inconsistencies and weaknesses in the government's case.  She clearly understood the proceedings

23  against her, and was able to "consult with his lawyer with a reasonable degree of rational

24  understanding."  *Dusky*, 362 U.S. 402.

25      The court of appeals "deem[s] significant the fact that the trial judge, government counsel, and

26  [defendant's] own attorney did not perceive a reasonable cause to believe [defendant] was

27  incompetent."  *Hernandez v. Ylst*, 930 F.2d 714, 718 (9th Cir. 1991).  "While the opinion of [defense]

28  counsel certainly is not determinative, a defendant's counsel is in the best position to evaluate a client's

U.S. OPP. TO DEFT'S RULE 33 MTN.          8

1    comprehension of the proceedings." *Id.* (citing *United States v. Clark*, 617 F.2d 180, 186 (9th Cir.

2    1980)).

3          Cases finding sufficient evidence of incompetency have generally involved "either extremely

4    erratic and irrational behavior during the course of the trial . . . or lengthy histories of acute psychosis

5    and psychiatric treatment." *Boag v. Raines*, 769 F.2d 1341, 1343 (9th Cir. 1985). *See also Tillery v.*

6    *Eyman*, 492 F.2d 1056, 1057 58 (9th Cir. 1974) (defendant screamed throughout the nights, laughed at

7    the jury, made gestures at the bailiff, disrobed in the courtroom, and butted his head through a glass

8    window).

9          That defendant exhibited inappropriate courtroom decorum – displaying pleasure with her

10   attorney's performance during witness examination, speaking to her counsel in a stage whisper, and

11   showing up late for court – does not come close to rendering her incompetent.  Nor does her

12   disagreement with her attorney's approach to the case.

13         In *United States v. Woodard*, the Seventh Circuit found that defendant's mental illness and

14   behavior of "continuously firing her counsel, filing pro se motions that did not appear to be relevant to

15   her case, and checking herself into a mental health unit" did not warrant a competency hearing.  744

16   F.3d 488, 494 (7th Cir. 2014).  The record showed "that for almost four years, Woodard interacted with

17   her attorneys and participated in her defense. In fact, some of her former attorneys might argue that she

18   participated too much."  *Id.*  The defendant was actively taking notes during proceedings and "appeared

19   to be conversing with, and being helpful to, her counsel."  *Id.*  The court stated: "Although it is clear

20   that Woodard suffers from mental illness," as revealed by an earlier competency hearing, "the record

21   does not conclusively show that her mental illness prevented her from fully participating in her defense

22   preparation."  *Id.* at 494-95.  *See also Davis v. Woodford*, 384 F.3d 628, 645 (9th Cir. 2004) (finding no

23   error in failure to hold sua sponte competency hearing where, despite defendant's recalcitrance,

24   rejection of attorney's advice, and other actions detrimental to his case, "his interactions with the trial

25   judge indicated that he understood what was at stake . . . and could make informed decisions").

26         Similarly here, defendant's history of mental illness must be weighed against her interactions

27   with counsel and the court, which clearly revealed she understood the proceedings against her and was

28   an active participant in her defense case.

U.S. OPP. TO DEFT'S RULE 33 MTN.            9

1    Not only does defendant's behavior during trial fail to call her competence into question, it also

2    requires no expert testimony to explain it.  And although the Court advised defendant to sit quietly and

3    show up on time, it did so outside the presence of the jury.

4    Finally, no expert testimony was necessary to challenge defendant's mens rea underlying the

5    charged conduct.  Defendant committed fraud and her other offenses between September 2008 and

6    January 2011.  Defendant's only mental health records before she got caught committing these crimes

7    were from 2005.  When she was committed on suicide watch immediately following the search

8    warrant, she was released the next day, and her subsequent therapy upon her arrest was terminated by

9    the Court, at defendant's request, as unnecessary.  Any assessment by a forensic psychiatrist retained

10   after trial is inherently of limited use in determining defendant's ability to form an intent to defraud

11   several years before.  Nor does it add significantly to the argument defense counsel already made to the

12   jury in closing that defendant did not intend to defraud, but was simply making mistakes while trying –

13   in good faith – to start a school.

14   Because there was no reasonable basis to question defendant's competence prior to or during

15   trial, and because defense counsel made an informed and reasonable judgment not to pursue a mental

16   health defense, the interests of justice do not support a new trial.

17                                   **IV.    CONCLUSION**

18   Defendant's motion for new trial is untimely, not based newly discovered evidence, and not

19   supported by the interests of justice.  If defendant wishes to assert an ineffective assistance of counsel

20   claim, she may do so through a habeas petition.  The Court should accordingly deny defendant's

21   motion.

22

23   DATED: September 26, 2014                    Respectfully submitted,

24                                                MELINDA HAAG
                                                  United States Attorney
25
                                                       /s/
26
                                                  _____
27                                                HARTLEY M. K. WEST
                                                  WADE M. RHYNE
28                                                Assistant United States Attorneys