JOHN J. JORDAN, ESQ.   (Cal. State Bar No. 175678)
400 Montgomery Street, Ste. 200
San Francisco, CA   94104
(415) 391-4814
(415) 391-4308 (FAX)

Attorney for Defendant
SUSAN XIAO-PING SU

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR-11-00288 JST |
| Plaintiff, | **REPLY BRIEF IN SUPPORT** |
| | **OF MOTION PURSUANT TO** |
| v. | **FED. R. CRIM. P. 29(c)** |
| SUSAN XIAO-PING SU, | |
| Defendant. | Date:   October 31, 2014 |
| | Time:   9:30 a.m. |
| | Hon. Jon S. Tigar |

**INTRODUCTION AND PROCEDURAL HISTORY**

The defendant, Susan Su, through her above-listed counsel, John J. Jordan, files this reply brief in support of her post-verdict motion pursuant to Fed. R. Crim. P. 29(c).

First, as to all the counts, the defendant moves for a judgment of acquittal, on the grounds that the government introduced insufficient evidence to convict the defendant.  Second, there were specific proof issues as to several counts in the indictment, such that the defendant's Rule 29 motion should be granted.

**ARGUMENT**

**A.     The Evidence was Insufficient to Convict Su on All Counts**

Su has moved, pursuant to Fed. R. Crim. P. 29 that the prosecution had not met its burden of proof on any of the counts in the indictment.  Su submitted in the opening brief that the government's evidence was insufficient to convict the defendant on the charges contained in the indictment; that the proof at trial did not establish the crimes set out in the indictment; and there

DEF RULE 29 REPLY                                              1

was insufficient proof of the defendant's intent to commit the crimes charged in the indictment.

The government has now filed a brief in opposition, arguing that the defendant's motion should be denied. The defendant disagrees, and asks this Court to grant the motion.

**B.     The Government's Proof Was Insufficient as to Multiple Counts**

There were specific proof issues as to multiple counts in the indictment, such that the defendant's Rule 29 motion should be granted.

**1.     There was insufficient proof that counts 1 and 13 were part of a scheme**

Neither count 1, involving Su's electronic submission on September 15, 2008, of the initial I-17 application to SEVP, nor count 13, involving Su's mailing on or about December 23, 2008, of the revised Form I-17 and documents to SEVP, was proven by the government at trial, because even assuming that Su engaged in a scheme to defraud, the government failed to introduce any evidence that the scheme had begun at the time of either communication.

The key question for this point is whether either communication charged in counts 1 and 13 "is part of the execution of the scheme as conceived by the perpetrator at the time." *United States v. Jinian,* 725 F.3d  725 F.3d 954, 961 (9th Cir. 2013), citing *Schmuck v. United States*, 489 U.S. 705, 715 (1989).

Su contends that neither count was proven at trial, because the government failed to meet its burden of proving that either communication was part of the execution of the scheme at the time of the communication. Reviewing the trial evidence, the defense can find no actual hard evidence that Su intended, from the onset, to conduct a scheme to defraud.

The government now argues that these two initial communications were essential to the scheme to defraud, because the I-17 petitions were a procedural prerequisite for Tri-Valley to admit non-immigrant student aliens. Opp. at 14. But, I-17 petitions are always a prerequisite for a school to admit non-immigrant student aliens, for all schools. While there could be no scheme to defraud without a school, it does not follow that establishing a school in the first place is part of the scheme to defraud, absent some evidence that the defendant had the requisite intent to

DEF RULE 29 REPLY                                        2

defraud from the onset.

The government assumes that Tri-Valley was a fraud at its inception, and infers from later activities that Su knowingly included false representations in these two initial communications about how Tri-Valley was going to be run. But, an equally strong, if not stronger, inference is that Su intended at the start to get accredited.

In any event, the government failed to meet its burden of proving beyond a reasonable doubt, that Su intended at the outset to use Tri-Valley as a scheme to defraud. Su contends that there was no evidence that any scheme started any earlier than on or about February 10, 2009, when the government alleges the articulation agreements were mailed.

Accordingly, this Court should grant defendant's Rule 29 motion for a judgment of acquittal as to counts 1 and 13.

**2. Counts 5 through 12, the wire fraud charges involving the fictitious aliens, and Counts 16 through 19, charging visa fraud, cannot stand because the crimes were all factually impossible to commit**.

Su was convicted by the jury of all 12 counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (counts one through 12) and all four counts of visa fraud, in violation of 18 U.S.C. §§ 1546(a) and 2 (counts 16 through 19) in addition to the other counts of conviction. However, the government's proof was insufficient as to the wire fraud convictions in counts 5 through 12, as well as all four visa fraud convictions in counts 16 through 19, because the charges all involve fictitious aliens. Thus it was factually impossible for Su to commit these crimes. See *United States v. Luttrell*, 889 F.2d 806, 810 (9th Cir. 1989), vacated in part on other grounds, 923 F.2d 764 (9th Cir. 1991), *cert. denied*, 112 S. Ct. 1558 (1992).

Su contends that all 12 of these charges were factually impossible for her to commit. First, for counts 5 through 12, Su could not commit wire fraud, under the theory charged in the indictment, because real victims that could be defrauded did not exist. The scheme to defraud alleged in the indictment charged Su with engaging in a scheme to defraud non-immigrant aliens. But, Sparsh Agrawat, Kadir Dirikan, Mohammad Rizwan, and Rajeev Batra were fictitious

DEF RULE 29 REPLY                              3

students, and not actual non-immigrant aliens.

The government now argues that Su's motion should be denied because real harm is not an element of wire or mail fraud.  Opp. at 15.  While that may be true, Su contends that real victims, here F-1 students, as charged in the indictment are required.  These counts all involve actions by the government to collect evidence against Su, for use at the subsequent trial.  While that might have been a legitimate law enforcement technique, the actions were outside the charged scheme to defraud, which involved actual F-1 students.

It was also factually impossible for Su to used these communications to conceal the scheme, because the "students" were federal agents who were already investigating Tri-Valley.

It was similarly factually impossible for Su to commit visa fraud, as charged in counts 16 through 19.  The indictment charges that Su committed visa fraud, by fraudulently making Form I-20s for the four individuals Sparsh Agrawat, Kadir Dirikan, Mohammad Rizwan, and Rajeev Batra.  See Indictment.  But, these "individuals" were not real students who would be able to continue their status as F-1 students thanks to any I-20s issued by Tri-Valley.  Su could never commit visa fraud, because the named individuals could never receive or use an F-1 visa.

Accordingly, Su's Rule 29 motion should be granted as to counts 5 through 12 and 16 through 19.

**3.  The government's proof was insufficient as to count 15, conspiracy to commit visa fraud.**

The government's proof at trial was insufficient to prove that the defendant was guilty in count 15 of conspiracy to commit visa fraud, in violation of 18 U.S.C. § 371, because there was insufficient proof introduced that anyone conspired with Su.

The "essence of a conspiracy" is "an agreement to commit an unlawful act." *United States v. Daychild,* 357 F.3d 1082, 1096 (9th Cir. 2004), quoting *United States v. Jimenez Recio,* 537 U.S. 270, 274 (2003) (internal quotation marks and citation omitted).  Here, there is no evidence that others entered into a conspiracy with Su to run and operate Tri-Valley as a scheme to defraud

DEF RULE 29 REPLY                                    4

or commit visa fraud.

In its opposition, the government argues that Sophie Su and Vince Wang conspired with the defendant. Opp. at 16-17. But, defense is unaware of any evidence introduced at trial that Sophie Su or Vince Wang knew about the articulation agreements, or knew about any of the other government accusations of fraudulent activities.

The government also argues that the ABS members were co-conspirators. Opp. at 17. But, again, the defendant is unaware of any testimony that any of the recruiters or consultants knew about the articulation agreement. The government also argues that the ABS workers knew Tri-Valley was not a legitimate school. Even assuming this is true, mere knowledge of a criminal activity is insufficient to show participation in a conspiracy. See *United States v. Price*, 542 F.3d 617, 620 (8th Cir. 2008) ("Mere knowledge of a criminal conspiracy is insufficient").

Moreover, while there was testimony by some of the workers that Tri-Valley was not holding physical classes, workers such as Dirisanala testified he was worried about this circumstance (TR 1186), not that he voluntarily engaged in a conspiracy with Su. In fact, the government contended that Su threatened the workers and refused to allow transfers. This fails to show that any of the workers knowingly and voluntarily joined a conspiracy. See *United States v. Damra*, 621 F.3d 474, 499 (4th Cir. 2010), *cert. denied*, 131 S.Ct. 2930 (2011) (defendant must knowingly and voluntarily join conspiracy).

Finally, there is no testimony that defendant is aware of that established that some unidentified co-conspirator shared in proceeds from Tri-Valley.

Thus, the government failed to prove that Su conspired to commit visa fraud.

**4.      The evidence is insufficient to convict Su of the two counts of harboring**

The jury convicted Su in counts 22 and 24 of alien harboring of Vishal Dasa and Anji Dirisanala, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and 2.

However, viewing the evidence in the light most favorable to the government, no rational trier of fact could have found the defendant guilty beyond a reasonable doubt of either count of

DEF RULE 29 REPLY                                5

alien harboring, because the government failed to prove two separate elements of the crime. First, contrary to the assumptions of the government, neither Dasa nor Dirisanala was actually an illegal alien at the times specified in the counts in the indictment. Second, the government failed to prove that Su concealed, harbored, or shielded from detection either alien.

**a.     Both Dasa and Dirisanala were not illegal aliens**

For both counts 22 and 24, the government had the burden of proving that both aliens named in the indictment were illegal aliens. *United States v. Noriega-Perez*, 670 F.3d 1033, 1037 (9th Cir. 2012), *cert. denied,* 133 S.Ct. 834 (2013), citing 8 U.S.C. § 1324(a)(1)(A)(ii)-(iii), (B)(ii). However, neither was actually an illegal alien at the time period charged in the indictment. Instead, both had valid F-1 visas and were enrolled at Tri-Valley, which at the date specified in both counts 22 and 24, was still an authorized school in SEVP.

The government's position is that both Dasa and Dirisanala were here illegally because Tri-Valley was fraudulent. The government argued this to the jury (TR 1849) and argues it now in its brief in opposition. Opp. at 18.

But, as pointed out in Su's opening memorandum, at the times charged in the indictment, Tri-Valley was authorized throughout that time period by Homeland Security to admit foreign students with F-1 visas. Potentially being out of status at a future date is not the equivalent of being an illegal alien at the time period charged in the indictment.

In Su's opening brief, the defense argued that there is strong support for Su's position, and cited the Supreme Court's very recent statement that "As a general rule, it is not a crime for a removable alien to remain in the United States." *Arizona v. United States,* 132 S.Ct. 2492, 2496 (2012), citing *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984). This Supreme Court holding is the most recent pronouncement on the issue and appears to firmly settle the issue in favor of Su. The government's opposition, however, fails to acknowledge or discuss in any way the *Arizona* case.

In an even more recent Ninth Circuit criminal case, the court in *United States v. Lopez*

DEF RULE 29 REPLY                              6

quoted *Arizona* in holding, "'As a general rule, it is not a crime for a removable alien to remain present in the United States.' Rather, the criminal act is returning to the United States after the government has ordered the alien excluded, deported, or removed." *United States v. Lopez,* 762 F.3d 852 (9th Cir. 2014), quoting *Arizona v. United States*, 132 S. Ct. at 2505.

Here, neither named alien had been ordered excluded, deported, or removed at the time charged in the indictment. Indeed, it appears neither alien has ever been ordered excluded, deported, or removed. Thus, *Arizona* is an insurmountable roadblock to this prosecution.

Su also cited *United States v. Salman,* 266 F. Supp. 2d 1367 (C.D. Fl. 2003), rev'd on other grounds, *United States v. Salman,* 378 F.3d 1266 (11th Cir. 2004), for support. The government argues that *Salmon*'s support is limited, because it relied on a district court holding that was reversed by the Tenth Circuit in *United States v. Atandi,* 376 F.3d. 1186 (10th Cir. 2004). However, *Salman* also cited and relied for support on other cases, such as *United States v. Hernandez,* 913 F.2d 1506, 1513 (10th Cir. 1990), *cert. denied*, 499 U.S. 908 (1991), and *United States v. Brissett,* 720 F. Supp. 90 (S.D. Tex. 1989) which also held that "because the defendant had an application for adjustment of status to permanent resident pending at the time he obtained the firearm, he was not an alien illegally or unlawfully in the United States." *Id.,* at 90. But, the government fails to cite or discuss either *Hernandez* or *Brissett,* both of which remain valid precedents.

Moreover, the case principally relied on by the government, *United States v. Atandi,* 376 F.3d. 1186 (10th Cir. 2004), involved a defendant who put himself out of status in 1999 by stopping attendance at school; had removal proceedings instituted against him in 2000; was found deportable by an immigration judge in March, 2002; and then was arrested as an illegal alien in possession of a firearm in May, 2002. *Id.,* at 1187. These facts distinguish *Atandi* from this case.

Similarly, in another case cited by the government, *United States v. Bazargan,* 992 F.2d 844 (8th Cir. 1993), the alien again put himself out of status; was warned by an immigration official that his asylum application had been denied; and was served with an order to show cause

DEF RULE 29 REPLY                              7

why he should not be deported; all before he was arrested for possession of a firearm by an illegal alien. *Id*., at 845. These facts again distinguish *Bazargan* from this case.

The third case cited by the government, *Mohammadi-Motlagh v. INS,* 772 F.2d 1450 (9th Cir. 1984), has little or no relevance to this case, as it is a simple removal case.

Here, in contrast, at the time charged in the indictment, there was no immigration finding or warning of a status violation for either Dasa or Dirisanala, nor any finding by an immigration judge that either alien was removable. Even after Tri-Valley was closed down, the affected F-1 students were given time to transfer and preserve their legal status.

Accordingly, the government has not proven that either was an illegal alien at the time period specified in counts 22 and 24.

**b.    Su did not harbor either Dasa or Dirisanala**

The government also failed to prove that Su harbored Dasa or Dirisanala, because its theory in the indictment that merely providing employment constitutes harboring is flawed. Instead, the government must also show that Su engaged in conduct that is intended both to substantially help an unlawfully present alien remain in the United States and to help prevent the detection of the alien by the authorities. "The mere act of providing shelter to an alien, when done without intention to help prevent the alien's detection by immigration authorities or police, is thus not an offense under § 1324(a)(1)(A)(iii)." *United States v. Vargas-Cordon,* 733 F.3d 366, 382 (2nd Cir. 2013), see also *United States v. Costello,* 666 F.3d 1040 (7th Cir. 2012).

The government argued to the jury that Su harbored Dasa and Dirisanala by providing employment at Tri-Valley. This evidence is insufficient under the holdings of *Costello* and *Vargas-Cordon.* There is no credible evidence that either alien needed this employment to stay in the United States, or that Su provided employment with the intent to help prevent the detection of the aliens by the authorities.

The government now argues that it can meet the test of *Vargas-Cordon*. But, it is too late for that, because the jury would have had to have done so. In any event, the case cited by the government, *United States v. Dann,* 652 F.3d 1160 (9th Cir. 2011), is fatal to the government's

DEF RULE 29 REPLY                                  8

position.  In *Dann,* the defendant restricted the nanny's movement and forbade her to talk to anyone outside the house.  *Id.,* at 1174.  There is no such evidence here that Su restricted Dasa or Dirisanala's movement, or forbade them to talk to anyone.

There was brief testimony at trial by Santosh Ignatius that in the one day he worked at Tri-Valley, Su locked the door when she left for lunch.  TR 1385, 1848.  Su argued in her opening memorandum that this testimony is insufficient, as there was no testimony that all access was blocked; there was no evidence why Su locked the door; there was no evidence that anyone wanted to leave during the lunch hour; and, critically, there was no evidence that Su knew an immigration raid was imminent and locked the door to keep the agents out.

Despite this argument, the government, in its opposition, repeats this point.  Opp. at 20.  However, Ignatius is not even one of the named aliens in either count 22 or count 24.  While Ignatius testified that Dasa was there that day, there was no testimony by Dasa that he was locked in, that he wanted to leave, or that he ever had his movements curtailed by Su.  So, the circumstance that a door was briefly locked the one day Ignatius worked in the office has nothing to do with the named aliens, Dasa and Dirisanala.

Thus, this Court should grant Su's Rule 29 motion as to counts 22 and 24.

**5.      The money laundering charges should be dismissed**

Su was found guilty by the jury of seven counts of money laundering, in violation of 18 U.S.C. §§ 1957(a) (counts 26, 27, 29, 31, 32, 34 and 35).

However, under the merger doctrine, if this Court upholds the scheme to defraud charged in the wire and mail fraud counts, then the money laundering charges cannot stand, because the withdrawal of funds was an essential element of the wire and mail fraud scheme and consequently cannot constitute a financial transaction involving the proceeds of independent illegal activity.  See *United States v. Bush,* 626 F.3d 527 (9th Cir. 2010), citing *United States v. Santos,* 553 U.S. 507, 516-517 (2008).

As the government itself argues, the appropriate test for merger is whether the charged money transaction "was a central part of the defendant's criminal scheme." *United States v.*

DEF RULE 29 REPLY                              9

*Phillips,* 704 F.3d 754, 765 (9th Cir. 2012), *cert. denied,* 133 S.Ct. 2796 (2013), citing *United States v. Van Alstyne*, 584 F.3d 803, 815 (9th Cir. 2009).

    The government now argues that Su's argument fails because "it blends her initial receipt of the F-1 student proceeds with her future expenditure of those proceeds." Opp. at 21. But, that is the problem here, the charged money laundering transactions were blended with the receipt of the money, making the charged money laundering transactions a central component of the scheme to defraud. See *United States v. Phillips,* 704 F.3d at 765.

    Su was charged in the indictment with engaging in a scheme for her to defraud immigrant aliens of money and property, specifically tuition and other fees. She could not defraud anyone of money and property unless the money was transferred from Tri-Valley's accounts to her custody. Her withdrawal of funds is thus an essential element of the charged frauds and consequently cannot constitute a financial transaction involving the proceeds of independent illegal activity. Under the merger doctrine, the money laundering charges must be dismissed.

    Alternatively, if the Court grants the Rule 29 motions on the wire, mail, and visa fraud accounts, then the money laundering charges cannot stand, as Su has been acquitted of the underlying criminal activity.

## CONCLUSION

The Court should grant defendant's motion.

Dated: October 9, 2014.　　　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　　/s/ John J. Jordan
　　　　　　　　　　　　　　　　　　　JOHN J. JORDAN
　　　　　　　　　　　　　　　　　　　Attorney for Defendant
　　　　　　　　　　　　　　　　　　　SUSAN XIAO-PING SU

DEF RULE 29 REPLY　　　　　　　　　　10