# EXHIBIT A

1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3            OAKLAND, CALIFORNIA

4

5   - - - - - - - - - - - - - - - - - -

6   UNITED STATES OF AMERICA,         )

7                                     )

8              Plaintiff,      )

9   vs.                               ) Case No.

10                                    ) CR-11-00288 SBA

11  SUSAN XIAO-PING SU,               )

12                                    )

13             Defendant.      )

14  - - - - - - - - - - - - - - - - -

15

16        AUDIO TRANSCRIPTION OF PROCEEDINGS

17       BEFORE THE HONORABLE DONNA M. RYA

18           THURSDAY, MAY 12, 2011

19

20

21        BEHMKE REPORTING AND VIDEO SERVICES, INC.

22       BY:  KELLI A. RINAUDO, CSR #6411, RMR, CCRR

23               160 SPEAR STREET, SUITE 300

24             SAN FRANCISCO, CALIFORNIA 94105

25                    (415) 597-5600

1          THE CLERK:  Calling civil case -- calling

2   criminal case CR-11-00288 SBA, United States versus

3   Susan Xiao-Ping Su.

4          Please state your appearances, counsel.

5          MR. RHYNE:  Good morning, Your Honor, Wade

6   Rhyne for the United States.

7          THE COURT:  Good morning, Mr. Rhyne.

8          MR. BILLINGSLEY:  Good morning, Your Honor.

9   David Billingsley.  I'm here with Susan Su who is

10  present out of custody.

11         THE COURT:  Good morning, Ms. Su.  Good

12  morning, Mr. Billingsley.

13         Now, what I think we have on today is we had

14  asked that a Mandarin interpreter be present so that we

15  can have certified translation for Ms. Su's mom to go

16  back over the terms of the -- of Ms. Su's release, since

17  Ms. Su's mom has been asked to be a custodian and has

18  signed on as a custodian.

19         We also need to set a hearing date before Judge

20  Armstrong.  I did receive the report prepared by Sharper

21  Future (phonetic), and I have reviewed that.  Is there

22  anything else that we're doing today?

23         MR. BILLINGSLEY:  The only other thing -- the

24  only other date I would ask the Court to set would be a

25  review date here for -- regarding Ms. Su's conditions of

1  release.  We had discussed at the initial court date the
2  possibility that we might modify Ms. Su's release
3  conditions depending on what the results were from the
4  psychological evaluation and also how she performed on
5  the current pretrial -- or these conditions.
6          So in addition for setting the date for Judge
7  Armstrong, it was to ask to set a review date back in
8  this department.
9          THE COURT:  Okay.  I think that makes sense.
10  Mr. Rhyne, what do you think?
11          MR. RHYNE:  I think that would be fine.  We can
12  evaluate how she's doing at that point and discuss what,
13  if any, conditions we may relax, or we may increase
14  depending on -- on where she is.
15          And then I think setting the date out for Judge
16  Armstrong -- Mr. Billingsley, and I talked about setting
17  that out fairly longer than normal just because it's a
18  33-count white-collar indictment that's going to have
19  thousands and thousands of pages in discovery in
20  addition to about five terabytes of electronic data that
21  was seized pursuant to the search warrant back in
22  January.  It's going to take Mr. Billingsley some time
23  to go through that.
24          I have agreed to kind of walk him through and
25  point him in the right direction as far as where the

```
 1   most important evidence is, but it is going to be time
 2   consuming.  We will be making a production today.
 3   Actually, the disks are being Bates labeled right now.
 4         And I think for that reason we're asking for a
 5   day before Judge Armstrong somewhere around 60 days out,
 6   and then maybe setting the -- the bond review hearing
 7   sometime 30 days out.
 8         THE COURT:  Let me just check with Ms. Garcia.
 9         Does Judge Armstrong allow a 60-day date at
10   this point?
11         THE CLERK:  I can certainly check.
12         THE COURT:  Why don't you check?
13         Okay.  In the meantime, can I ask Ms. Su's
14   mother, Ms. Pang -- I see Ms. Sophie Su in the
15   courtroom.  If would you like to come up, Ms. Su, you
16   are welcome to to support your mom.  But whatever you
17   are comfortable with.
18         Okay.  So Judge Armstrong's indicated that
19   putting it out 60 days, as long as it's not -- it's
20   before August, because she will be gone in August, and
21   as long as everybody is in agreement with respect to the
22   suitability of exclusion of time, then that will be
23   fine.
24         MR. RHYNE:  I believe there's an ample basis
25   for it.
```

```
 1              THE COURT:  Yes, I believe so, too.  But
 2   everybody is in agreement that that should go?
 3              MR. BILLINGSLEY:  Yes.  We're looking at June
 4   12th.  And the defense would certainly be asking for
 5   time to be excluded.
 6              MR. RHYNE:  You mean July 12th?
 7              MR. BILLINGSLEY:  Excuse me, July 12th.  Thank
 8   you.
 9              THE CLERK:  That's available, Your Honor.
10              MR. RHYNE:  And, Your Honor, just for the
11   record, we've provided a proposed protective order
12   that's going to facilitate the production of additional
13   discovery that has some personal information of some
14   third parties.  And I've provided that to
15   Mr. Billingsley today, and we're currently negotiating
16   it, and I think we'll probably have it submitted to
17   Judge Armstrong today in some form.
18              THE COURT:  Okay.  Okay.  So, Ms. Garcia, is
19   our translator sworn yet?
20              THE CLERK:  Uh-huh.
21              THE COURT:  Has our translator been sworn?
22              THE CLERK:  Yes.
23              THE COURT:  Okay.  Good morning to you.
24              THE INTERPRETER:  Good morning.
25              THE COURT:  Thank you for being here.
```

1          Okay.  Ms. Pang, today we've asked you to come

2     back so that we have an official court certified

3     interpreter here to explain to you what was explained to

4     you last time you were here in court.  Last time, your

5     daughter Sophie Su explained these things to you, and I

6     am sure she did a fine job.  But to make it official, we

7     have a court certified interpreter today.

8          Your daughter Susan Su is facing charges of

9     violations of federal law.  And I made a decision that

10    she should be out of custody during the time that she is

11    facing these charges, but I ordered certain conditions

12    of her release.  I'm going to go over them with you.

13         Because one of the conditions is that you

14    serve, along with your daughter Sophie Su, as SuSan Su's

15    custodian.  That's a very specific thing, and it's an

16    obligation that could make you subject to penalties if

17    you don't perform that job the way you are supposed to.

18    So I want to make sure you understand exactly what it

19    means.

20         As a custodian, you have an obligation to be

21    the eyes and ears of the Court.  Even you and your

22    daughter Sophie have to make sure that Susan follows all

23    of the conditions of release.  If she violates the

24    conditions and you knew about it and didn't tell the

25    Court, then you could be held in contempt of court,

1     which brings along penalties.

2             It is a voluntary job you are taking on, it's

3     not something you have to do, but it is a condition of

4     your daughter's release.

5             Are you willing to do it?

6             MS. PANG:  Yes.

7             THE COURT:  If you change your mind at some

8     point, you can remove yourself from that obligation, but

9     you have to notify the Court that that's what you want

10    to do, and we would set up a time for you to come into

11    court and have a proceeding to take you off that

12    obligation.

13            Do you understand that?

14            MS. PANG:  Yes.

15            THE COURT:  Okay.  Now, here are the conditions

16    of Susan Su's release that you need to help enforce.

17            MS. PANG:  Yes.

18            THE COURT:  Susan Su is being released on a

19    $300,000 unsecured bond.  She's to live at 1174 Wenig

20    Court with you, Ms. Pang, and your other daughter Sophie

21    Su.  You and Sophie Su are acting as custodians for

22    Susan Su.

23            Another concern that we had in this case is at

24    the time you were last in court, the Court was concerned

25    that Susan Su had a mental state in which she might do

1   herself harm, and so we want to make sure that you and

2   Sophie Su -- one of you, at least -- was around Susan Su

3   all day so that she doesn't do anything to harm herself.

4         Susan has since been evaluated by a doctor, and

5   that expert has given the opinion that he can't discount

6   any risk of Ms. Su harming herself, but he says that it

7   is not a high risk at this point.  It's something that

8   should be kept an eye on, but it is not -- let me make

9   sure I find the words that this expert used.  The expert

10  assessed Susan son Su to be at moderate to low risk for

11  suicide at this time; nevertheless, there is some risk.

12        So here are the other conditions:  That Susan

13  Su shall appear at all proceedings as ordered by the

14  Court and surrender for any service of sentence imposed.

15  She is not to commit any crime of any kind.  She's not

16  to harass or threaten or tamper with or retaliate

17  against any witness or victim or informant, juror,

18  officer of the court, or obstruct any investigation.

19        She is not allowed to travel outside the

20  northern district of California, which includes a number

21  of counties.  And we provided a map of those counties to

22  Ms. Su, and I believe to both you and Sophie Su; is that

23  correct?  Did you receive a copy of the counties?  No?

24  So we'll make sure that you get that.

25        The reason why it's important is because it can

1    be confusing.  The northern district of California does

2    not include Vallejo or Sacramento or some places that

3    are fairly nearby but are outside the district.  So

4    we'll make sure you get a copy of that map so you know

5    where Ms. Su can be and where she would need to get

6    permission from Pretrial Services before she goes, okay,

7    somewhere else.

8            She's reporting and being supervised by Oakland

9    Pretrial Services.  She was required to surrender all

10   passports and visas to the Court, and she's not allowed

11   to apply for any passports or travel documents.

12           She's not allowed to possess any firearm,

13   destructive device, or other dangerous weapon.

14           As I mentioned before, she's to remain in the

15   custody of Sophie Su and Xiang Jing Pang at the

16   Pleasanton home that I mentioned earlier.

17           She must participate in mental health

18   counseling as directed by Pretrial Services.

19           She cannot change residence without the prior

20   approval of Pretrial Services.

21           She'll be subject to electronic monitoring and

22   can only leave home for court appearances, Pretrial and

23   attorney visits, medical emergencies, and as directed by

24   Pretrial Services.

25           She was ordered to undergo a mental health

1  evaluation at the direction of Pretrial Services, and
2  she did so.
3       Do you have any questions about any of those
4  conditions?
5       MS. PANG:  No.
6       THE COURT:  Okay.  Ms. Garcia, can you make
7  sure that Sophie Su and Ms. Ping receive a copy of the
8  map --
9       THE CLERK:  I did.
10      THE COURT:  -- of the northern district.  I
11 think it's on the form, isn't it?
12      THE CLERK:  It's on the back.
13      THE COURT:  So if you could give them just a
14 blank form and give them the map in that way, I think
15 that would be helpful to them.
16      Okay.  Counsel, anything further with respect
17 to this verification and reiteration of the conditions
18 of release?
19      MR. BILLINGSLEY:  No.  Thank you, Your Honor.
20      MR. RHYNE:  I may have missed it.  Did you
21 advise her that she can pull out if she wants to?
22      THE COURT:  Yes, I did.
23      MR. RHYNE:  Okay.  I think we covered it all
24 then.
25      THE COURT:  Okay.  So let's set a date for

1    further bail review here in about 30 days.

2              MR. BILLINGSLEY:  I was going to suggest June

3    13th, which is a Monday.

4              THE COURT:  It will be a special setting

5    because I'm not on duty that month, but we'll figure out

6    the time for you.

7              Okay.  So 9:30 on June 13th in front of me.

8              Ms. Su, that will be your next court appearance

9    for bail review hearing.  And after that, your next

10   court date will be in front of Judge Armstrong on July

11   12th at ten o'clock, and that will be for status

12   conference in front of the district court judge who is

13   in charge of your case.

14             Based on the nature of the case involving many

15   counts and lots of paper, I find that time should be

16   excluded under the speedy trial act between now and July

17   12th for effective preparation of counsel.  I see that

18   you've checked continuity.

19             MR. RHYNE:  I guess Mr. Billingsley has been on

20   the case for long enough now to where probably

21   continuity wouldn't apply.  I think it would be

22   effective preparation is probably the most appropriate.

23             THE COURT:  Okay.  I find that time should be

24   excluded through July 12th, 2011, for effective

25   preparation of counsel and will sign the order to that

1  effect.

2          MR. RHYNE:  And, Your Honor, in anticipation of

3  the bail review hearing in June, will court be releasing

4  the mental health evaluation for the Government to

5  review?  Because I'm managing that they are going to

6  want our opinion on where things stand at that point.  I

7  think that that would be relevant in any discussions we

8  may have.

9          THE COURT:  I'm not sure, actually.

10          Mr. Billingsley?

11          MR. BILLINGSLEY:  I mean, on the one hand I

12  certainly understand Mr. Rhyne's position to the extent

13  that he needs to articulate the Government's position

14  regarding the possibility that Su might -- Ms. Su might

15  be a danger to herself, I can understand why you might

16  want to have it released.

17          Given the fact that it involves some sensitive

18  personal information from Ms. Su, I think as long as the

19  Court is in a position to have reviewed it, I'm not sure

20  that necessarily I or the Government needs to have

21  access to it.

22          THE COURT:  I agree.  I think this is personal.

23  It's for the Court's use in evaluating the risk and not

24  for other reasons, so I don't think it should be

25  released.

1          MR. RHYNE:  Very well.

2          THE COURT:  Okay.  Anything further?

3          MR. RHYNE:  I don't think so, Your Honor.

4          MR. BILLINGSLEY:  Nothing for Ms. Su.  Thank

5    you.

6          THE COURT:  Okay.  Ms. Pang, Ms. Su, thank you

7    again for being here today.

8          MR. RHYNE:  Thank you, Your Honor.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1  STATE OF CALIFORNIA    ) ss

 2

 3

 4         I, KELLI A. RINAUDO, do hereby declare that I

 5  transcribed from an audio file provided to me to the

 6  best of my ability, due to the quality of the recording,

 7  the foregoing pages 1 through 14;

 8         That I am a disinterested person, not being in

 9  any way interested in, nor connected with the matter,

10  nor related to any parties or to their respective

11  counsel in any manner whatsoever.

12         IN WITNESS WHEREOF, I have hereunto signed on

13  this 26th day of September 2014.

14

15

16

17         KELLI A. RINAUDO, CSR #6411 RMR, CCRR

18         STATE OF CALIFORNIA

19

20

21

22

23

24

25
```