# EXHIBIT B

```
 1                UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3                    OAKLAND, CALIFORNIA
 4
 5  - - - - - - - - - - - - - - - - - - -
 6  UNITED STATES OF AMERICA,           )
 7                                      )
 8              Plaintiff,      )
 9  vs.                                 ) Case No.
10                                      ) CR-11-00288 SBA
11  SUSAN XIAO-PING SU,                 )
12                                      )
13              Defendant.      )
14  - - - - - - - - - - - - - - - - - - -
15
16          AUDIO TRANSCRIPTION OF PROCEEDINGS
17          BEFORE THE HONORABLE DONNA M. RYA
18                THURSDAY, MARCH 7, 2013
19
20
21           BEHMKE REPORTING AND VIDEO SERVICES, INC.
22        BY:  KELLI A. RINAUDO, CSR NO. 6411, RMR, CCRR
23                        160 SPEAR STREET, SUITE 300
24                       SAN FRANCISCO, CALIFORNIA 94105
25                                      (415) 597-5600
```

1            (File 0904)
2            THE CLERK:  Calling criminal case CR-11-00288
3    SBA, United States versus Susan Xiao-Ping Su.
4            Counsel, please state your appearances.
5            MR. RHYNE:  Good morning, Your Honor.  Wade
6    Rhyne for the United States.
7            THE COURT:  Mr. Rhyne.
8            MR. BABCOCK:  Good morning, Your Honor.  Erik
9    Babcock for Ms. Su who is present.
10           THE COURT:  Hi, Ms. Su, and Mr. Babcock.
11           MS. GIBSON:  Good morning, Your Honor.  Rachel
12   A. Gibson for Pretrial Services standing in for Ms. Kim.
13           THE COURT:  Good morning, Ms. Gibson.
14           Okay.  I reviewed the -- I guess the request is
15   for Ms. Su to change residence, move into the Germano
16   Way home, and that there's a -- that Pretrial doesn't
17   have an objection to that, but that the U.S. Attorney's
18   Office does.  Does that sum it up correctly or --
19           MR. RHYNE:  A little bit's changed since then,
20   Your Honor.
21           THE COURT:  Okay.
22           MR. RHYNE:  We have met and conferred,
23   Mr. Babcock and I, and I think we've come to somewhat of
24   an agreement that if Pretrial Services and the Court is
25   amenable to her moving into the Germano Way house, we're

1  okay with that as long as everybody is on notice, and
2  they should be, pursuant to a bill of particulars that
3  we filed last week, that this won't change the
4  procedural context of the forfeiture proceeding with
5  respect to Germano Way.  We believe that it was
6  purchased with SUAs of the underlying offense.
7  　　　　　So we also wanted the defendant -- obviously if
8  the Court allows her to live in that house -- to know
9  that she shouldn't do anything to deplete the property
10 of that house.  Mr. Babcock has informed me that she's
11 actually upkeeping the house, so I think that's probably
12 a win-win situation.
13 　　　　　One of the things that we did ask, and the
14 defense has agreed to do, is to at least provide the
15 Court and the Government with the names of the tenants
16 in the house, because she is subleasing the house along
17 with the amount of rent that she's collecting, because
18 that would be -- that would be subject to forfeiture at
19 the end if she is convicted and the Court finds that the
20 property is, in fact, subject to it.
21 　　　　　MR. BABCOCK:  That's correct.  She's -- as I
22 told Mr. Rhyne, she's collected about -- it's around
23 $2,400 a month at the moment, and she's happy to provide
24 the names of the people that are subleasing from her.
25 　　　　　But it was -- the house was sitting empty and

1  getting no upkeep.  And she had been living with her
2  sister for a pretty extended period, and it seemed
3  appropriate that she move back to her house, at least
4  until it's determined whether it's going to be forfeited
5  in the long run.
6          So we are hopeful the Court will agree with
7  that.
8          THE COURT:  Ms. Gibson?
9          MS. GIBSON:  Ms. Kim's been to the house, and
10 she doesn't have any issues with the move itself, and
11 she just wanted to defer to the Government in case there
12 were any legal issues with collecting rent on a house
13 that's in forfeiture proceedings.
14         THE COURT:  Okay.  So given that there haven't
15 been -- given that Ms. Su has been in compliance and
16 that there's no reason for me to believe that there's an
17 issue -- I know you were first on electronic monitoring,
18 and we took you off that.  And then curfew, and we took
19 you off that -- that there's been a gradual modification
20 based on your compliance.
21         I do know that you apparently were living there
22 without really being completely forthcoming with
23 pretrial about your living situation.  But if they are
24 telling me that they have gone -- it sounds like they've
25 gone to your home, that that is an appropriate place for

```
 1  you to be on Germano Way, that the Government has made
 2  an agreement with the defense that this should not in
 3  any way affect the Government's arguments and rights on
 4  arguing around forfeiture and proceeds from the house,
 5  then I'm not going to stand in her way.  Okay?
 6          So your conditions of release are changed so
 7  that you may now live on the Germano Way property, and
 8  your mother and sister will be removed as third-party
 9  custodians.  Well, I didn't ask specifically about that,
10  and actually I should.
11          MR. BABCOCK:  Yeah, we didn't actually even
12  discuss that.
13          THE COURT:  I'm seeing that's your request.
14          MR. BABCOCK:  They are not living with her at
15  the moment, right, your mom and sister?
16          THE COURT:  But, you know, I didn't -- there
17  isn't a recommendation one way or the other from
18  Pretrial.  So, Ms. Gibson, I don't know if Ms. Kim
19  talked to you about that.
20          MS. GIBSON:  She didn't really say, Your Honor.
21  I mean, generally custodians are living with --
22          THE COURT:  Right.
23          MS. GIBSON:  -- the defendant.  I'm not sure if
24  it would make sense to keep them on.  But are they
25  signed on as sureties?
```

```
 1            MR. BABCOCK:  They are.  I don't know off the
 2   top.  I think they are.
 3            MS. GIBSON:  Yeah, I think they are.  Well, the
 4   sister --
 5            THE COURT:  They were both signed on as
 6   unsecured co-signers to a $300,000 bond.
 7            MS. GIBSON:  Mom is a custodian.
 8            MR. BABCOCK:  They haven't -- no one's notified
 9   me that they are trying to get off the bond.
10            (End of recording.)
11            (File 0909.)
12            MR. BABCOCK:  We didn't discuss the custodian
13   issue with anybody, so they would remain as sureties at
14   least, I would think.
15            THE COURT:  They absolutely will remain --
16            MR. BABCOCK:  Yes.
17            THE COURT:  -- as co-signers.
18            Any objection from the Government?
19            MR. RHYNE:  I don't think so, Your Honor.  As
20   you noted, she's been largely compliant with the
21   conditions.  And if she's not living in the same roof
22   with those custodians, from a practical standpoint --
23            THE COURT:  (Unintelligible.)
24            MR. RHYNE:  I just don't see it making sense as
25   long as she continues to check in with Pretrial
```

1  Services, I think that would be fine to lift them as
2  custodian.
3          THE COURT:  Okay.  So I'm going to release your
4  mother and sister from their duties as custodians, but
5  they are still co-signers and responsible on the
6  $300,000 bond, along with you.
7          And I've made some modifications now to the
8  bond, but obviously everything else remains full in
9  place, and you have to comply to the letter with the
10 remaining conditions.
11         Okay.  Do you have any questions for me,
12 Ms. Su?
13         MR. BABCOCK:  I have one additional request
14 since -- do you have any questions about that?
15         THE DEFENDANT:  I -- I -- I --
16         THE COURT:  Do you understand?  I just want to
17 make sure that you don't walk away with questions about
18 what you are supposed to do and not supposed to do,
19 because we don't want you to violate because you didn't
20 know the answer.  So I want to make sure I answers your
21 questions.
22         THE DEFENDANT:  Yeah.  So do I need to turn the
23 rent right now?  I think there is some big expenses,
24 like PG&E is 450 a month, and the water has been like
25 another 500, and, you know, I just keep the house, the

```
 1  gardening --
 2          THE COURT:  Right.
 3          THE DEFENDANT:  -- the grass growing.  Right
 4  now, I redo now grasses, you know, because
 5  (unintelligible).  So I do need to turn the rent right
 6  now or in the end?
 7          MR. BABCOCK:  That's right.  You don't have --
 8          THE COURT:  Mr. Rhyne; is that correct?  The
 9  Government is not taking the position that the rent has
10  to go into escrow at this point?
11          THE DEFENDANT:  I give it back.
12          MR. RHYNE:  I think at this point that there
13  should be somewhat of an escrow account.  But I think
14  that the expenses to upkeep the house can reasonably be
15  used --
16          THE DEFENDANT:  Okay.
17          MR. RHYNE:  -- or taken from that account.  Our
18  concern is that she is making a profit on something.
19  Obviously if that -- if that money ends up -- if we end
20  up not forfeiting that asset, all that money in that
21  impound account would be hers.
22          THE COURT:  Well, let me tell you what --
23  before we started it, we didn't have any of these
24  agreements.  So I came to the bench thinking, you know
25  what, I understand that there's this forfeiture issue in
```

1  your mind and all, but nobody has briefed this to me.  I
2  don't know what the law is with respect to rents and
3  escrow and the like.  So I'm not going to make any
4  ruling on that.
5           MR. RHYNE:  Okay.
6           THE COURT:  If you want to reach some
7  agreement, fine.  If you want to brief it to me, I'll
8  decide it.  But this -- it's on a blank record.
9           MR. BABCOCK:  I'm not -- I think I was
10 appointed in the criminal case.  I don't know that I'm
11 actually technically her counsel in the forfeiture
12 proceedings.  I mean, I would be happy to brief it if
13 the Court needs briefing, but --
14          THE COURT:  Well, it just sounds like there's a
15 loose agreement here that I don't fully know what it is.
16 Ms. Su asked a very important question, can she use
17 those proceeds in any way?  And I think that should be
18 spelled out.
19          So if you're saying, Mr. Rhyne, that she can
20 use the proceeds to -- for reasonable upkeep of the
21 house but has to account for it, I don't know if that's
22 something that you've discussed with Mr. Babcock or what
23 that looks like, but maybe you should do that.
24          MR. RHYNE:  We can certainly do that.  I know
25 with respect to the law on the forfeiture, if she's

1  utilizing an asset that has been used in the commission
2  of the crime or purchased from specified unlawful
3  activities of the crime, any money she derives from that
4  asset is likewise subject to forfeiture, so --
5           THE COURT:  Well, that may be what you know the
6  law to be, but nothing has been presented to me.  So I'm
7  not going to make a ruling on that without being briefed
8  on it properly with, you know, citations to the law.
9           So I'm not going to rule on it.  You can work
10 it out, or you can put it to me for a decision.
11          MR. BABCOCK:  In fairness to Mr. Rhyne, he's
12 not counsel in the forfeiture cases.  That's being
13 handled by a different section of the U.S. Attorney's
14 Office, so I'm sure he would have to consult with
15 whoever is handling it.
16          MR. RHYNE:  I think that we can probably come
17 to an agreement and get the Court a little more
18 information if we're not able to reach an agreement on
19 that point.
20          So I think at this point it's our interest in
21 just making sure that Ms. Su is on notice that this
22 additional forfeiture could happen at the end of the
23 day.
24          MR. BABCOCK:  Fair enough.
25          THE COURT:  Well, you can talk about it and

```
 1  I'll --
 2          THE DEFENDANT:  So, um --
 3          MR. BABCOCK:  Excuse me.  It's okay.  Leave it
 4  as it is, okay?  Let me deal with it, please.
 5          THE DEFENDANT:  Okay.  I live -- I mean, before
 6  the (unintelligible) --
 7          MR. BABCOCK:  They're not -- they're not trying
 8  to take any money from you right now.
 9          THE COURT:  Do you want a moment, Mr. Babcock?
10          MR. BABCOCK:  No.
11          (End of recording.)
12          (File 0914.)
13          THE COURT:  Mostly, I want to make sure that
14  Ms. Su doesn't walk away with any questions in her mind
15  that might jeopardize her compliance with Pretrial
16  conditions.
17          MR. BABCOCK:  She's not --
18          THE COURT:  If there's questions about
19  forfeiture, I can't answer them.  If they are questions
20  about forfeiture that somehow relate to the bail
21  question, then I think we need to iron them out,
22  because --
23          MR. BABCOCK:  The judge is not addressing the
24  rent issue right now, okay?  I'll talk with the U.S.
25  Attorney's Office about that.
```

1         THE DEFENDANT: How -- how am I supposed to
2    live?
3         MR. BABCOCK: You're supposed to live the same
4    way you've been living. That hasn't changed, for now.
5         I have one other request, since we're here,
6    Your Honor, and we haven't been before you in a long
7    time.
8         As you mentioned, Ms. Su has now been on
9    Pretrial release, I think, for over 2 years, 26 months
10   or so, coming up on 26 months. And one of the original
11   conditions was that she attend therapy, which she has
12   been doing weekly for more than two years now, and would
13   ask the Court to consider -- excuse me -- releasing her
14   from that condition. I was not, as the Court may
15   remember, counsel of record when she was originally
16   released.
17        I know there were -- I understand secondhand
18   there were some concerns raised about her emotional and
19   mental stability at the time, which I understand were
20   valid and, hence, the condition.
21        THE COURT: Did you raise this with Pretrial?
22        MR. BABCOCK: I discuss it with Ms. Kim before
23   court, with Mr. Rhyne. And if I understand her --
24   understood her, and correct me if I am wrong, Wade, she
25   didn't really have any objection to it. She wasn't --

```
 1  but she wasn't taking -- well --
 2          THE COURT:  I don't -- Ms. Gibson is filling in
 3  for Ms. Kim.
 4          MR. BABCOCK:  I understand.
 5          THE COURT:  Ms. Kim is the supervising officer.
 6          MS. GIBSON:  I heard the conversation, Your
 7  Honor, and she doesn't have any particular objection to
 8  removing the mental health condition.  She doesn't have
 9  any concerns about Ms. Su's mental state at this time.
10          MR. BABCOCK:  She's been going weekly for two
11  years, so --
12          THE COURT:  Mr. Rhyne, any objection?
13          MR. RHYNE:  We haven't seen the report, so we
14  don't know what they say.  Assuming, if -- I am assuming
15  Ms. Kim has seen them, she's comfortable with them, and
16  if she's -- she's comfortable with that, then we have no
17  objection to that.
18          THE COURT:  I remember the circumstances at the
19  beginning of the case and why those provisions were put
20  into place.  If you feel comfortable, Ms. Gibson, having
21  talked to Ms. Kim and understanding what the supervising
22  officer's recommendation is on this, then I'm happy to
23  follow the recommendation.  I just don't want to put you
24  on the spot if you are not totally sure.
25          MS. GIBSON:  What Your Honor could do is leave
```

```
 1  the condition in place but just note that Pretrial has
 2  discretion to discontinue it or to decrease the
 3  frequency of it, that may be a better way to do it.
 4          MR. BABCOCK:  That would be fine, too.
 5          THE COURT:  Okay.  That's what I'm going to do
 6  then.  Modify it to put the condition on mental health
 7  counseling at the direction and discretion of Pretrial.
 8  So they -- without having to come back to court, you can
 9  talk to Ms. Kim, and if she thinks you really don't need
10  to go, then she can decide that you don't need to go.
11  Okay?
12          Anything further?
13          MR. BABCOCK:  Not this morning, Your Honor.
14          THE COURT:  Do you have your next court date?
15          MR. BABCOCK:  It's --
16          THE COURT:  Oh, I got it.  April 9th --
17          MR. BABCOCK:  That's right.
18          THE COURT:  -- for pretrial in front of Judge
19  Armstrong at 11:00.
20          MR. RHYNE:  That's correct, Your Honor.
21          THE COURT:  Okay.  All right.  Thank you.
22          MR. RHYNE:  Thank you.
23          MR. BABCOCK:  Thanks, Your Honor.
24          MS. GIBSON:  Thank you.
25          (End of recording.)
```

```
 1  STATE OF CALIFORNIA    ) ss
 2
 3
 4         I, KELLI A. RINAUDO, do hereby declare that I
 5  transcribed from an audio file provided to me to the
 6  best of my ability, due to the quality of the recording,
 7  the foregoing pages 1 through 15;
 8         That I am a disinterested person, not being in
 9  any way interested in, nor connected with the matter,
10  nor related to any parties or to their respective
11  counsel in any manner whatsoever.
12         IN WITNESS WHEREOF, I have hereunto signed on
13  this 26th day of September 2014.
14
15
16
17               KELLI A. RINAUDO, CSR #6411 RMR, CCRR
18               STATE OF CALIFORNIA
19
20
21
22
23
24
25
```