JOHN J. JORDAN, ESQ. (State Bar No. 175678)
400 Montgomery Street, Suite 200
San Francisco, CA 94104
Tel: (415) 391-4814
FAX: (415) 391-4308
email:jjordanesq@aol.com

Counsel for Defendant
SUSAN SU

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 11-0288 JST |
| | ) | |
| Plaintiff, | ) | **DEFENDANT'S SENTENCING** |
| | ) | **MEMORANDUM** |
| vs. | ) | |
| | ) | |
| SUSAN SU, | ) | Date: October 31, 2014 |
| | ) | Time: 9:30 a.m. |
| Defendant. | ) | Hon. JON S. TIGAR |
| | ) | |
| | ) | *E-Filed Chambers Copy* |
| _____ | ) | |

Su  Sent. Mem.

1

**TABLE OF CONTENTS**

2  Introduction. . . . . . . . . . . . . . . . . . . . . . . . . 1

3  Procedural Background.. . . . . . . . . . . . . . . . . . . . 2

4  Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5  1.  Introduction. . . . . . . . . . . . . . . . . . . . . . 3

6  2.  Applicable Law. . . . . . . . . . . . . . . . . . . . . 3

7  3.  The Defendant's Objections to the Pre-Sentence Report.. . . . 4

8  a.  Objection Number One. . . . . . . . . . . . . . . . . . 5

9  i.  All offenses should be grouped. . . . . . . . . . . . . 5

10  ii. The sentencing calculations are incorrect for Group Two.. . 7

11  b.  Objection Number Two. . . . . . . . . . . . . . . . . . 9

12  c.  Objection Number Three (Listed as a second No. 2 in PSR) . 9

13  d.  Objection Number Four (Listed as Number Three in PSR).. . 11

14  e.  Objection Number Five (Listed as Number Four in PSR). . . 12

15  f.  Objection Number Six (Listed as Number Five in PSR).. . . 13

16  g.  Summary of Guidelines Argument. . . . . . . . . . . . . 13

17  4.  The Defendant's Request for a Below-Guidelines Sentence.. 14

18  a.  The nature and circumstances of the offense.. . . . . . 14

19  b.  The history and characteristics of the defendant. . . . . 16

20  c.  The need for the sentence to reflect the seriousness of
21      the offense, promote respect for the law, provide just
        punishment, afford adequate deterrence, avoid sentencing
        disparity, and protect the public.. . . . . . . . . . . 19
22

23  d.  The need to provide the defendant with needed educational
        or vocational training, medical care. . . . . . . . . . 20

24  Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . 21

25

26

# TABLE OF AUTHORITIES

**Cases:**

*Cleveland v. United States*, 531 U.S. 12 (2000). . . . . . . .   11

*Gall v. United States,* 552 U.S. 38 (2007).. . . . . . . . . . .   4

*McNally v. United States*, 483 U.S. 350 (1987).. . . . . . . .   10

*Skilling v. United States*, 561 U.S. 358 (2010). . . . . . . .   10

*United States v. Alexander,* 48 F.3d 1477 (9th Cir.)
*cert. denied,* 516 U.S. 878 (1995).. . . . . . . . . . . . . . .   6

*United States v. Ameline,* 409 F.3d 1073
(9th Cir. 2005) (en banc).. . . . . . . . . . . . . . . . . . .   4

*United States v. Booker*, 543 U.S. 220 (2005). . . . . . . . . .   3

*United States v. Cantrell,* 433 F.3d 1269 (9th Cir. 2006). . . .   3

*United States v. Carter,* 742 F.3d 440 (9th Cir. 2014).. . . .   19

*United States v. Gardner,* 988 F.2d 82 (9th Cir. 1993).. . . .   12

*United States v. Lofton*, 905 F.2d 1315 (9th Cir.)
*cert. denied,* 498 U.S. 948 (1990).. . . . . . . . . . . . . .   12

*United States v. Mares-Molina*, 913 F.2d 770 (9th Cir. 1990)..   11

*United States v. Mix*, 450 F.3d 375 (9th Cir. 2006). . . . .   3, 4

*United States v. Reese*, 2 F.3d 870 (9th Cir. 1993),
*cert. denied,* 510 U.S. 1094 (1994). . . . . . . . . . . . . .   6

*United States v. Santos,* 527 F.3d 1003 (9th Cir. 2008). . . . .   9

*United States v. Smith,* 196 F.3d 1034 (9th Cir. 1999),
*cert. denied,* 529 U.S. 1028 (2000). . . . . . . . . . . . . .   6

*United States v. Stroud*, 893 F.2d 504 (2d Cir. 1990). . . . .   12

*United States v. Tank,* 200 F.3d 627 (9th Cir. 2000).. . . . 6, 11

*United States v. Zuniga,* 66 F.3d 225 (9th Cir. 1995). . . . . .   9

**Statutes:**

8 U.S.C. § 1324(a)(1)(A)(iii).. . . . . . . . . . . . . . . . 2, 7

1    18 U.S.C. § 2. . . . . . . . . . . . . . . . . . . . . 2

2    18 U.S.C. § 371. . . . . . . . . . . . . . . . . . 2, 7

3    18 U.S.C. § 981(e)(6). . . . . . . . . . . . . . . . . 19

4    18 U.S.C. § 1001(a)(2). . . . . . . . . . . . . . . 2, 7

5    18 U.S.C. § 1001(a)(3). . . . . . . . . . . . . . . 2, 7

6    18 U.S.C. § 1030(a)(3). . . . . . . . . . . . . . . 2, 8

7    18 U.S.C. § 1341. . . . . . . . . . . . . . . . . 2, 10

8    18 U.S.C. § 1343. . . . . . . . . . . . . . . . . 2, 10

9    18 U.S.C. § 1546(a). . . . . . . . . . . . . . . . 2, 7

10   18 U.S.C. § 1957(a). . . . . . . . . . . . . . . . . . 2

11   18 U.S.C. § 3553. . . . . . . . . . . . . 1, 4, 14, 19

12   **U.S.S.G. Provisions**

13   2B1.1. . . . . . . . . . . . . . . . . . . . . . . . . 9

14   2B1.1(b)(2). . . . . . . . . . . . . . . . . . . . . . 8

15   2B1.1(b)(9)(A). . . . . . . . . . . . . . . . . . 8. 13

16   3B1.1. . . . . . . . . . . . . . . . . . . . . . 11, 12

17   3B1.1(a). . . . . . . . . . . . . . . . . . . . . . . 11

18   3B1.1(b)(9)(C). . . . . . . . . . . . . . . . . . . . 15

19   3C1.1(a). . . . . . . . . . . . . . . . . . . . . . . 12

20   3D1.2(b). . . . . . . . . . . . . . . . . . . . . . . 5

21   3D1.2(c). . . . . . . . . . . . . . . . . . . . . . . 5

22   3D1.2(d). . . . . . . . . . . . . . . . . . . . . . 6, 7

23   3D1.4(c). . . . . . . . . . . . . . . . . . . . . . . 9

24   5K2.13. . . . . . . . . . . . . . . . . . . . . 14, 19

25

26

JOHN J. JORDAN, ESQ. (State Bar No. 175678)
400 Montgomery Street, Suite 200
San Francisco, CA 94104
Tel: (415) 391-4814
FAX: (415) 391-4308
email:jjordanesq@aol.com

Counsel for Defendant
SUSAN SU

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 11-0288 JST |
| | ) | |
| Plaintiff, | ) | **DEFENDANT'S SENTENCING** |
| | ) | **MEMORANDUM** |
| vs. | ) | |
| | ) | |
| SUSAN SU, | ) | Date: October 31, 2014 |
| | ) | Time: 9:30 a.m. |
| Defendant. | ) | Hon. JON S. TIGAR |
| | ) | |
| | ) | |
| _____ | ) | |

**INTRODUCTION**

     The defendant SUSAN SU, through counsel of record, John J. Jordan, hereby files this sentencing memorandum, to assist the Court at the defendant's sentencing hearing.

     Initially, the defendant objects to the U.S.S.G. sentencing calculations contained in the pre-sentence report, and asks the Court to adjust the guidelines to level 29, criminal history I.

     Dr. Su then asks the Court to downwardly depart and/or grant a variance from the Sentencing Guidelines range, after considering the factors spelled out in 18 U.S.C. § 3553, and sentence her to 70 months incarceration, followed by 3 years supervised release.

Su  Sent. Mem.                    1

**PROCEDURAL BACKGROUND**

The defendant was tried on a thirty-five count superseding indictment, charged with a scheme to defraud non-immigrant aliens of money and property.

The indictment charged 12 counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (counts 1 through 12); two counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 2 (counts 13 and 14); one count of conspiracy to commit visa fraud, in violation of 18 U.S.C. § 371 (count 15); four counts of visa fraud, in violation of 18 U.S.C. §§ 1546(a) and 2 (counts 16 through 19); one count of using a false document, in violation of 18 U.S.C. §§ 1001(a)(3) and 2 (count 20); one count of false statements, in violation of 18 U.S.C. §§ 1001(a)(2) (count 21); three counts of alien harboring, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and 2 (counts 22 through 24); one count of unauthorized access of a government computer, in violation of 18 U.S.C. §§ 1030(a)(3) and 2 (count 25); and ten counts of money laundering, in violation of 18 U.S.C. §§ 1957(a) and 2 (counts 26 through 35).  The superseding indictment also contained four forfeiture allegations.

Trial on the superseding indictment began on March 3, 2014, with jury selection.  On March 18, 2014, the court granted the government's motion to dismiss counts 23, 28, 30 and 33.

On March 24, 2014, the trial ended with the jury finding Su guilty of all 31 remaining counts in the indictment.

The defendant has reviewed the final pre-sentencing report

(PSR) prepared by the U.S. Probation Department.  The PSR calculates a final offense level of 40, criminal history I, with an advisory guideline range of 292-365 months incarceration.

Probation Officer Goldsberry, however, recommends that the Court impose a below-Guidelines sentence of 168 months, followed by 3 years supervised release, restitution in the amount of $904,198.84, and a special assessment of $3100.00.

The defendant alternatively recommends that the Court impose a sentence of 70 months, followed by 3 years supervised release.

**ARGUMENT**

**1.   Introduction**

The defense asks this Court to impose a below Guidelines sentence of 70 months, with a requirement of mental health/alcohol treatment both before and after incarceration.

**2.   Applicable Law**

In this post-*Booker* sentencing, a district court is "not mandated to sentence within an applicable Guideline range because the Sentencing Guidelines are advisory--not mandatory." *United States v. Mix,* 450 F.3d 375 (9th Cir. 2006), citing *United States v. Cantrell,* 433 F.3d 1269, 1279-81 (9th Cir. 2006) and *United States v. Booker,* 543 U.S. 220, 259-60 (2005).  District courts, however "'must consult [the] Guidelines and take them into account when sentencing,' even though they now have the discretion to impose non-Guidelines sentences." *United States v. Cantrell,* 433 F.3d at 1279, quoting *Booker,* 543 U.S. at 264.

This Court should begin the sentencing proceeding by

correctly calculating the applicable Sentencing Guideline range. See *Gall v. United States,* 552 U.S. 38 (2007) (stating that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guideline range.").

"In addition, a district court must apply the factors enumerated in 18 U.S.C. § 3553(a) in its sentencing decision." *United States v. Mix, supra,* citing *United States v. Cantrell,* 433 F.3d at 1279-80; see also *United States v. Ameline*, 409 F.3d 1073, 1085-86 (9th Cir. 2005) (en banc).

Thus, in addition to the advisory Guideline range, the district court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" as well as the need for the sentence to reflect the seriousness of the offense and provide the defendant with needed training and medical care. 18 U.S.C. § 3553(a)(1)-(2).

**3. The Defendant's Objections to the Pre-Sentence Report**

While appreciative of the work done by the Probation Officer, Su objects to several of the Guidelines calculations.

Initially , there appear to be a few minor corrections to the final PSR.

In paragraph 85, the name is "David Kerns." In paragraph 26, the salary should read "$1000 per month." See TR 1192-93 ("she would pay me a thousand dollars per month."). In paragraphs 22 and 35, the lowest grade should read "B-." See TR 1575 ("The least you can give is B-minus.").

**a.    Objection Number One**

**i.    All offenses should be grouped**

The defense submits that all counts of conviction should be grouped under U.S.S.G. § 3D1.2(b) and (c).  As noted in the PSR, the government also agrees that grouping is appropriate.

U.S.S.G. § 3D1.2 provides that for purposes of sentencing, "[a]ll counts involving substantially the same harm shall be grouped together into a single Group."  Application Note 2 to § 3D1.2 explains that ambiguities should be resolved in accordance with the purpose of § 3D1.2, which is to identify counts involving substantially the same harm.

Grouping is appropriate under U.S.S.G. § 3D1.2(b) because all the counts charged in the indictment involve the same set of victims and the acts are all connected by a common objective or are part of a common scheme or plan.

Grouping is also appropriate under U.S.S.G. § 3D1.2(c) because all the counts share the same conduct that is treated as the specific offense characteristics, and the same adjustments for both "groups" identified in the PSR.  Both "groups" used the same loss figure and the same number of victims, such that the offenses must all be included in a single group.

The defense appreciates that the probation officer consulted with an official at the sentencing commission.  However, the official perhaps did not have the benefit of the trial transcripts fully describing the behavior at issue here.

Another way of looking at the issue is to consider that if

1   the PSR's position stands, it will result in impermissible double

2   counting.

3   "Impermissible double counting occurs only when 'one part of

4   the Guidelines is applied to increase a defendant's punishment on

5   account of a kind of harm that has already been fully accounted

6   for by application of another part of the Guidelines.'" *United*

7   *States v. Smith,* 196 F.3d 1034, 1036-37 (9th Cir. 1999), *cert.*

8   *denied,* 529 U.S. 1028 (2000), citing *United States v. Alexander*,

9   48 F.3d 1477, 1492 (9th Cir.), *cert. denied,* 516 U.S. 878 (1995),

10  quoting *United States v. Reese*, 2 F.3d 870, 895 (9th Cir. 1993),

11  *cert. denied,* 510 U.S. 1094 (1994).

12  Here, the PSR enhances Group Two (in paragraph 59), 18

13  additional levels for loss, using the exact same loss figure that

14  is already being used to enhance Group One in paragraph 51.

15  Similarly, the PSR enhances Group Two (in paragraph 60), 6 levels

16  for the number of victims, using the exact same victims figure

17  that is already being used to enhance Group One in paragraph 52.

18  Thus, not grouping would result in impermissible double counting.

19  Finally, while unauthorized use of a computer offense cannot

20  be grouped under U.S.S.G § 3D1.2(d), the Ninth Circuit, in *United*

21  *States v. Tank*, 200 F.3d 627 (9th Cir. 2000), held that "the list

22  of exclusions under § 3D1.2(d) only bars grouping of the listed

23  offense sections under subsection § 3D1.2(d) itself.  In fact,

24  the last sentence of § 3D1.2(d) states "exclusion of an offense

25  from grouping under this subsection does not necessarily preclude

26  grouping under another subsection.""   *Id.*, at 633-34.

**ii.   The Sentencing Calculations are incorrect for Group Two**

Alternatively, if the Probation Officer is correct that there are two groups because of separate victims, then the sentencing calculations in Group Two are incorrect.  The sentencing calculations use the loss and number of victim figures from Group One.  But, the crimes listed in Group Two have much more limited loss and victim figures.

Count 15, charging conspiracy to commit visa fraud, in violation of 18 U.S.C. § 371, charges a conspiracy to commit an offense against one victim, the United States.

Counts 16 through 19 charge four counts of visa fraud, in violation of 18 U.S.C. §§ 1546(a), with the same victim, the United States.  All four counts, count 16 (Sparsh Agrawat); count 17 (Kadir Dirikan); count 18 (Mohammad Rizwan); and count 19 (Rajeev Batra); involve government created fictitious students, not actual students.

Count 20, charging using a false document, in violation of 18 U.S.C. § 1001(a)(3), charges only one transaction, involving the United States and its fictitious student "K.D." (Kadir Dirikan).

Count 21, charging one count of false statements, in violation of 18 U.S.C. § 1001(a)(2), charges only one transaction, involving the government and its fictitious student "M.R." (Mohammad Rizwan).

Count 22 and 24, charging two counts of alien harboring, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), involve two discrete

1    incidents involving two alleged victims, Dasa and Dirisanala.

2         Finally, Count 25, charging one count of unauthorized access

3    of a government computer, in violation of 18 U.S.C. § 1030(a)(3),

4    has only one victim, the United States.

5         Thus, for the counts in Group Two, the victims are only the

6    United States (with its four fictitious students) and two others,

7    Dasa and Dirisanala.  The victim total is thus 3 (or at most 7,

8    if counting the fictitious students), so there should be no

9    increase for number of victims.  See U.S.S.G. §2B1.1(b)(2).

10        In addition, the loss figure in Paragraph 59 should be

11   deleted, because there is no financial loss, or very little, in

12   connection with the criminal offenses in Group Two.  There is no

13   financial loss to the United States for the various counts in

14   which it is the victim, and there are only two civilian victims

15   on the two harboring counts.

16        Finally, as argued below, the enhancement for Su

17   misrepresenting that she was acting on behalf of an educational

18   institution, under U.S.S.G. §2B1.1(b)(9)(A), should be stricken.

19   This is not a case where Su was falsely claiming she represented

20   an institution with which she had no actual connection.  There

21   was testimony that there some instructors (TR 818); there were

22   some online classes (TR 818); and there were assignments (TR 818-

23   19, 923).

24        Thus, the offense level for Group Two should be corrected to

25   offense level 6.  The grouping rules provide that the Court

26   should "Disregard any Group that is 9 or more levels less serious

than the Group with the highest offense level." U.S.S.G. §
3D1.4(c).  Group One has an offense level of 39.  PSR 57, 66.  As
level 6 is well below level 39, Group Two should be disregarded.

The defense also notes that even if only the 6-level number
of victims enhancement is stricken from Group Two, that change
alone would bring the offense level for Group Two to 26, well
below the 9 level threshold.

**b.    Objection Number Two**

The defendant submits that the scheme does not appear to be
so sophisticated as to require a further 2 level adjustment.

**c.    Objection Number Three (Listed as a second No. Two in PSR)**

The defense submits that the loss is best estimated as
between $1M and $2.5M, and that any further increase is not fully
supported by the evidence, such that only a 16-level increase is
justified.

"The government bears the burden of proving loss for the
purposes of § 2B1.1 by a preponderance of the evidence." *United
States v. Santos,* 527 F.3d 1003, 1006-07 (9th Cir. 2008), citing
*United States v. Zuniga*, 66 F.3d 225, 228 (9th Cir. 1995).

The defense is aware of the testimony by Special Agent
Mackey at trial regarding the total proceeds traced into Tri-
Valley accounts.  See, e.g., TR 1635-36.  However, this falls
short of establishing loss to the victims of the scheme to
defraud, because there is no showing that every F-1 student was a
victim.

The defense points to the trial testimony of Parth Patel,

Su  Sent. Mem.                         9

who testified there were two types of students enrolled at Tri-Valley.  TR 1543.  Patel testified that the first group just wanted to maintain their status to stay in the United States, while the second group were students who really want to attend the classes.  TR 1543.  Patel believed that 65 percent to 70 percent of the students were just interested in maintaining their immigration status.  TR 1543-44.

There is no showing by the government that the first group of students, those who just wanted to maintain their status in the United States, are victims, or have any complaints.

It must be remembered that the victims in the scheme to defraud are limited to actual foreign students, and not the United States.

The defendant draws the Court's attention to Su's October 11, 2011 pre-trial motion to dismiss the indictment.  CR 19.  The original indictment filed by the government attempted to criminalize a scheme to defraud the U.S. Government with respect to its ability to control entry of foreign nationals.  But, Su, citing Supreme Court case law, argued that the indictment did not charge a property interest for purposes of 18 U.S.C. §§ 1341 and 1343.  In *McNally v. United States*, 483 U.S. 350, 360 (1987), the Supreme Court held that the federal mail fraud statute is "limited in scope to the protection of property rights."  When Congress amended the law to cover the intangible right of honest services, the Supreme Court then ruled in *Skilling v. United States*, 561 U.S. 358 (2010) that "honest services fraud" applies

only to bribes and kickbacks.  Finally, in *Cleveland v. United States*, 531 U.S.12 (2000), the Supreme Court explained that the property being protected is property of the victim.

The government filed a superseding indictment that it said addressed Su's concerns.  CR 20, 21.  The superseding indictment charges a scheme to defraud non-immigrant aliens of money and property.  The superseding indictment does not cover willing participants, and thus the blanket inclusion of all F-1 students as victims is unsupported by any evidence.

**d.  Objection Number Four (Listed as Number Three in PSR)**

The defense objects to a 4 level increase for role in the offense, under U.S.S.G. § 3B1.1(a), because under the government's theory of the case and the evidence introduced at trial, Su acted alone in the scheme to defraud.  While other defendants were charged with lesser crimes, no defendant conspired with Su in the scheme to defraud.

The government bears the burden of proving aggravating role for the purposes of § 3B1.1 by a preponderance of the evidence.  *United States v. Mares-Molina,* 913 F.2d 770, 773 (9th Cir. 1990).

In *United States v. Tank*, 200 F.3d 627, 633-34 (9th Cir. 2000), the Ninth Circuit held that a defendant cannot be deemed an "organizer or leader" when the evidence did not show that he had any control over his co-conspirators.  The *Tank* case also noted that the Sentencing Guidelines clearly indicate that "the defendant must have been the organizer, leader, manager, or supervisor of one or more other [criminally responsible]

1   participants ... [or must have] exercised management

2   responsibility over the property, assets, or activities of a

3   criminal organization" to merit an upward adjustment.  *Id.,*

4   citing U.S.S.G. § 3B1.1, comment notes 1-2.

5        Here, because no other defendant shared in the common plan,

6   no other defendant shared in the proceeds, no one else was

7   criminally responsible for the crimes for which Su was convicted.

8        Alternatively, if an addition for role is appropriate, then

9   the increase should be limited to two points, as the trial

10  evidence showed, at best, that only 4 individuals, Ramakrishna

11  Reddy Karra, Vishal Dasa, Anji Dirisanala, and Parth Patel, were

12  conceivably involved.  TR 809, 813-14, 845, 1157-68, 1501-13.

13  **e.    Objection Number Five (Listed as Number Four in PSR)**

14       The defense submits that no adjustment for willful

15  obstruction of justice under U.S.S.G. § 3C1.1(a) is justified,

16  because the defendant's mental state negated the specific mens

17  rea needed.  Dr. Su's mental condition and the stress of trial

18  were the root cause of the incidents in question.

19       "Sentencing Guidelines § 3C1.1 contains a clear mens rea

20  requirement that limits its scope to those who 'willfully'

21  obstruct or attempt to obstruct the administration of justice."

22  *United States v. Lofton*, 905 F.2d 1315, 1316 (9th Cir.), *cert.*

23  *denied,* 498 U.S. 948 (1990).  The "term 'willfully' requires that

24  the defendant 'consciously act with the purpose of obstructing

25  justice.'" *Id.* at 1316-17 (quoting *United States v. Stroud*, 893

26  F.2d 504, 507 (2d Cir. 1990)); *United States v. Gardner,* 988 F.2d

Su  Sent. Mem.                        12

82, 84 (9th Cir. 1993).

The report of Dr. Gregory corroborates and supports Su's position here.  Su's delusional thinking can easily be seen as the motivation behind her efforts to have the various witnesses she contacted testify consistently with her version of the evidence.

It should also be noted that the email communications detailed in PSR 39-46 do not appear to be attempts to dissuade or prevent the witnesses from appearing at court and testifying.

**f.   Objection Number Six (Listed as Number Five in PSR)**

An adjustment under the specific offense characteristics for misrepresentation that the defendant was acting on behalf of an educational organization under U.S.S.G. § 2B1.1(b)(9)(A) is not justified, as Tri-Valley was an educational organization.

This is not the situation where a defendant falsely represents him or herself to be a school to which the defendant actually has no connection.  Here, in contrast, even under the government's evidence, Tri-Valley did have a physical location, had instructors, and did have online classes.

**g.   Summary of Guidelines Argument**

Applying the above objections of the defendant, the defense submits that the adjusted offense level should be level 29, or alternatively level 31, if a 2 point adjustment for role is justified.  This would result in a final Guideline sentencing range of 87 to 108 months under level 29, or 108-135 months, if level 31.

**4.    The Defendant's Request for a Below-Guidelines Sentence**

The defense requests that the Court grant a downward departure/variance due to the defendant's diminished mental capacity, under U.S.S.G. § 5K2.13, and the mitigating factors under 18 U.S.C. § 3553, based on the defendant's mental condition; lack of criminal record; and the overly high guidelines score.

The probation officer rightly concludes that a variance from the harsh guidelines sentence is appropriate in this case. As argued above, Su believes that Guidelines calculations should result in a lower final offense level, such that the "starting point" for the downward departure/variance should be lower. However, regardless of the final offense level, an examination of the factors set out in 18 U.S.C. § 3553(a)(1)-(2) support a variance to the 70 month sentence recommended by the defense.

**a.    The nature and circumstances of the offense**

The defense acknowledges that this is a serious offense. The PSR concludes there were numerous victims, and a large financial loss.

However, the 70-month sentence recommended by the defense is a lengthy prison sentence, particularly for a 44 year old woman who has no prior criminal record and who appears to present little risk of recidivism.

This sentence takes into account the pre-trial negotiations between the parties, where the government submitted a draft plea agreement to the defense which contained a proposed stipulated

recommended sentence of 41 months, based on a proposed guideline offense level of 22.  The plea agreement did contain a 3-level reduction for acceptance of responsibility, and did not contain a 2-level adjustment for obstruction of justice.

The defendant did go to trial and did not accept the plea agreement.  But, the agreement was drafted when all the facts about the nature and circumstances of the underlying offense were known, and concluded that 41 months was a reasonable sentence for this offense.  At this time, assuming that the 3-level reduction for acceptance of responsibility in not appropriate, and even assuming a 2-level adjustment for obstruction, that results in a 5-level increase from the plea agreement calculations.  This leads to an offense level of 27, and a guideline sentencing range of 70-87 months.  The defense recommendation is at the low end of that range.

The defense acknowledges that this is a range below the guideline ranges calculated by the parties in this case.  But, even assuming the accuracy of the calculations proposed by the probation officer, several of the enhancements have the effect of overstating the appropriate offense level.

First, the loss figure of $5.6 million overstates the actual harm done.  As argued above, government witness Parth Patel testified that 65 percent to 70 percent of the students were just interested in maintaining their immigration status.  TR 1543-44.

Second, while there is a provision for a 2-level increase for sophisticated means (U.S.S.G. § 3B1.1(b)(9)(C)), there is

already a large increase for loss, even if the Court adopts the defendant's view of the loss.  The defendant submits that the large increase for loss already adequately reflects the seriousness of the scheme to defraud.

Third, assuming the Court rejects Su's argument that she lacks the mens rea for obstruction of justice, the Court may still conclude that her mental condition at least explains that she had significant problems controlling her behavior, such that mitigation of her sentence is appropriate.

Fourth, assuming the Court rejects Su's argument that a 4-level adjustment for role is not appropriate, then the Court may consider that this case is not the typical large-scale criminal conspiracy, such that a full increase for role is appropriate.

**b.   The history and characteristics of the defendant**

The defendant submits that this factor supports her sentencing recommendation.

The defendant has been suffering from a mental condition that has been largely untreated.  There were prior documented incidents, including a hospitalization in 2005.  PSR 92, see also Recommendation, page 3.  As the probation officer notes, despite the family noting that the defendant had significant mental health issues, "the family chose not to pursue help for her, even after her two hospitalizations.  Left untreated and sometimes ignored by her family, Su was able to create her own world without being held accountable by anyone."  PSR Rec. at p. 3.

In addition to the material provided by Doctor Gregory (PSR

93), the PSR notes corroboration from Sophie Su that her sister would "talk nonsense" during the trial.  PSR 89.  Years before the trial, Sophie Su noticed "weird behavior" that included imaginations such as believing she was Princess Diana.  PSR 89-90.

In addition, the attached letters of Su's two daughters, her former husband Hong Yang, and Sophie Su all corroborate this mental condition.

Following the trial, the defense retained Dr. Amanda Gregory to evaluate the defendant, in light of a series of events, that culminated in Su's bizarre behavior at the conclusion of the jury trial.  A copy of Dr. Gregory's report had been previously submitted under seal, and is incorporated here by reference.

Dr. Gregory states that "the current assessment results, the inpatient psychiatric records from 2005, and the treatment records from 2011, all suggest that Ms. Su has significant mental health issues. Ms. Su has a history of unstable mood including depressive symptoms and more prominently episodes of mania involving euphoric or abnormally elevated or irritable mood, agitation, impulsivity and poor decision-making, pressured speech, racing thoughts, decreased need for sleep, and increased energy and hyper focus on specific goal-directed activities."  The report details that "Su also has a history of psychotic symptoms, which appear to escalate during episodes of mania.  Psychotic features include grandiose and paranoid delusions (thinking she can communicate with God, thinking she is being

followed and people are trying to harm her), disorganized speech and hallucinations.  Ms. Su also appears to have a history of psychotic symptoms in the absence of prominent mood symptoms." Report at 11.

Dr. Gregory concludes that Su's symptoms are consistent with a diagnosis of Schizoaffective Disorder, Bipolar Type, and explains that Schizoaffective Disorder is a combination of symptoms of bipolar disorder and schizophrenia and tends to involve episodes of severe symptoms followed by periods of improvement and less severe symptoms.  *Id*.  Dr. Gregory also stated that "Other diagnoses to be considered for Ms. Su include Bipolar Disorder with Psychotic Features and Schizophrenia, depending on the relative prominence over time of psychotic versus mood symptoms. These disorders are all considered to be major mental illnesses."  Report at 11.

In Dr. Gregory's opinion, Su's "untreated mental illness appears to have played a role in her behavior that resulted in her convictions and her erratic behavior during the trial. People experiencing manic and psychotic symptoms often exhibit impulsive behavior and extremely poor judgment. These symptoms likely played a role in Ms. Su's decisions to contact the judge and witnesses during her trial. Her grandiose delusional thinking and unstable mood may also have played a role in her behavior that resulted in her charges, i.e. enrolling large numbers of students without the staff to teach classes, not paying adequate attention to the rules of the process."  Report at 12.

Dr. Gregory, after interviewing family members, has now provided an updated report that again corroborates Su's mental condition.  See attached report.

The defense submits that Su's mental condition justifies a downward departure due to diminished mental capacity, under U.S.S.G. § 5K2.13, and is a significant mitigating factor under 18 U.S.C. § 3553.  Her mental condition mitigates her actions regarding Tri-Valley and her actions during the litigation of this case.  Su's delusional thinking, counsel submits, persisted throughout this time period, and differentiates her from someone acting merely from greed.  Perhaps the simplest and best way to make this point is to quote from Rachel Yang, Su's youngest daughter, who wrote this Court that her mother "*thought* what she was doing was right."  See attached letter, emphasis in original.

Su's condition is also relevant to the obstruction enhancements.  This Court itself expressed a belief that Su had difficulties controlling her behavior during the trial.  TR 1935.

Dr. Su has no prior criminal record.  She achieved significant success by obtaining a doctorate in engineering, and should be able to obtain work upon release.

In addition, Dr. Su is fortunate to be supported by her family and her boyfriend, David Kerns.  See attached letters.  This support system should held ensure a good transition back into society.  Dr. Su's family is now aware of the seriousness of Su's mental condition, and the need for continued treatment.

Su  Sent. Mem.                      19

**c.     The need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, avoid sentence disparity, and protect the public.**

The defense acknowledges that this is a serious offense. However, 70 months is a lengthy prison sentence, particularly for a 44-year old woman who has no prior criminal record and appears to present little risk of recidivism.

Moreover, the government has seized and moves to forfeit substantial properties.  Proceeds from those properties can be used to compensate victims in this case.  See *United States v. Carter,* 742 F.3d 440, 446 (9th Cir. 2014) ("the Government may choose to assign forfeited proceeds to victims, as was the case here."), citing 18 U.S.C. § 981(e)(6).

Finally, the sentence recommended by the defendant minimizes sentencing disparity with the other criminal defendants in this investigation.  The defendant takes note of the public record in CR 11-0742-KAW, which indicates that Anji Dirisinala was sentenced to 1 day probation and a $25 special assessment; Vishal Dasa was sentenced to 30 days probation and a $25 special assessment; Ramakrishna Karra was sentenced to 6 months probation; a $2000 fine; and a $25 special assessment; and Tushar Tambe was sentenced to 3 years probation and a $25 special assessment.  See CR 11-0742-KAW.

**d.     The need to provide the defendant with needed educational or vocational training, medical care.**

This factor also supports the defendant's recommendation.

1    The defendant can receive mental health counseling during

2    incarceration.  After her release and placement on supervised

3    release, the probation department can require that she receive

4    the treatment she needs.

5                            **CONCLUSION**

6    The defendant asks this Court to impose a 70-month sentence,

7    followed by 3 years supervised release.

8    DATED: October 24, 2014.        Respectfully submitted,

9

                                     */s/ John J. Jordan*
10                                   JOHN J. JORDAN
                                     Attorney for Defendant
11                                   Dr. Susan Su