UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

USA,

Plaintiff,

v.

SUSAN XIAO-PING SU,

Defendant.

Case No. 11-cr-00288-JST-1

**ORDER DENYING PETITION FOR WRIT OF CORAM NOBIS**

Re: ECF No. 396

Before the Court is Susan Su's petition for a writ of coram nobis. ECF No. 396. The Court will deny the petition.[1]

## I. BACKGROUND

On March 24, 2014, Su was convicted of 31 felony counts, including wire fraud, in violation of 18 U.S.C. § 1343, mail fraud, in violation of 18 U.S.C. § 1341, visa fraud, in violation of 18 U.S.C. § 1546(a), alien harboring, in violation of 8 U.S.C. § 1324(a)(1)(A), and money laundering, in violation of 18 U.S.C. § 1957. ECF No. 119. These charges arose from Su's position as president of Tri-Valley University ("TVU"), a school that collected tuition and other fees from non-immigrant noncitizens in return for maintaining their student visa status. Although TVU set itself forth as a bona fide educational institution, it provided little-to-no education. ECF No. 262 at 1. Instead, it supplied falsified documentation to both students and the government allowing students to receive student visas. On October 31, 2014, the Court sentenced Su to 198 months' imprisonment, three years of supervised release, a $3,025 special assessment, and $904,198.84 in restitution, which was later amended to $1,015,795.64. ECF No. 213, 208, 209.

[1] The hearing scheduled for August 7, 2026 is vacated.

United States District Court
Northern District of California

United States District Court
Northern District of California

Su filed post-judgment motions to set aside her convictions and for a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33. ECF Nos. 166, 167. The Court denied these motions at sentencing. ECF No. 203. Su then appealed her convictions and sentence. ECF No. 205. The Ninth Circuit affirmed, denying Su's petition for rehearing en banc. *United States v. Su*, 633 Fed. App'x 635 (9th Cir. 2015); ECF No. 235 at 78. The Supreme Court then denied her petition for writ of certiorari. *Su v. United States*, 136 S. Ct. 2043 (2016) (No. 15-8973). Su filed a motion to vacate her convictions under 28 U.S.C. § 2255 on May 15, 2017, which the Court also denied. ECF Nos. 235, 244, 262. Su appealed that denial to the Ninth Circuit as well, which summarily denied her appeal. *United States v. Su*, (9th Cir. No. 18-15978), docket entry dated June 27, 2019. Su has since been released from custody and her term of supervised release has ended, but she still owes restitution. Su's instant motion was filed on May 21, 2026. ECF No. 396. The government opposed on July 2, 2026. ECF No. 399. Su replied on July 15, 2026. ECF No. 400.

## II. LEGAL STANDARD

A petitioner who has fully served her sentence may challenge her conviction through a petition for writ of error coram nobis. *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987). "Specifically, the writ provides a remedy for those suffering from the lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact and egregious legal errors." *Est. of McKinney By & Through McKinney v. United States*, 71 F.3d 779, 781 (9th Cir. 1995) (quoting *United States v. Walgren,* 885 F.2d 1417, 1420 (9th Cir.1989)) (citation modified).

The Supreme Court and the Ninth Circuit have made clear that the writ is a "highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." *United States v. Riedl*, 496 F.3d 1003, 1005 (9th Cir. 2007); *see also Carlisle v. United States*, 517 U.S. 416, 429 (1996) ("'[I]t is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate.'" (citation omitted) (alterations in original)); *Matus-Leva v. United States*, 287 F.3d 758, 760 (9th Cir. 2002) ("Coram nobis is an extraordinary writ, used only to review errors of the most fundamental character.").

To prevail on a coram nobis petition, a petitioner must establish that: "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *Hirabayashi*, 828 F.2d at 604. "Because these requirements are conjunctive, failure to meet any one of them is fatal." *Matus-Leva*, 287 F.3d at 760.

## III. DISCUSSION

Su challenges her convictions for mail and wire fraud, arguing that the government failed to show that the relevant misrepresentations were intended to solicit money or property. Rather, she argues that her falsities were aimed at the government to procure only non-property regulatory benefits. She also challenges her convictions for visa fraud, arguing that the government failed to allege and prove the statute's "forged" document requirement. Each of Su's arguments is based on a mischaracterization or misunderstanding of her conviction and each fails.

### A. Mail and Wire Fraud

A description of the theory under which Su was charged and convicted of mail and wire fraud is necessary to frame her objections. In the superseding indictment, the government charged Su with defrauding the noncitizens whom she charged tuition and fees in exchange for invalid visas. ECF No. 21 at 8–9. Certain communications to the government were used to satisfy the statute's requirements that mail and wire transmissions be part of the scheme, but not to satisfy the requirement that fraudulent statements be used to obtain money or property. ECF No. 396-2 at 1, 4, 5. The government was therefore required to prove that Su made fraudulent representations to students tending to induce them to part with money, and the trial record contains ample evidence of such representations. For example, government witness Vandana Satija testified that Su told her that TVU's courses would be interactive, with a lecturer providing information and answering questions, and that enrolling would allow Satija to obtain a student visa. ECF No. 145 at 40–41. The courses turned out to be far less substantive than Su had promised, and Su subsequently resisted Satija's attempts to seek a refund, including by threatening to get her deported. *Id*. at 42–47. More fundamentally, the Government introduced evidence that TVU provided I-20 forms to

its students falsely certifying that they were engaged in or admitted to a course of study qualifying for a student visa. ECF No. 145 at 194–200; ECF No. 150 at 71–72, 88. While it was true that the students were admitted to or enrolled in TVU, it was not true that TVU offered them a course of study of in-person classes as the visas required. ECF No. 145 at 43–44, 153–54; ECF No. 147 at 69–70, 150; ECF No. 150 at 43–44, 74–75. Students would then use these fraudulent I-20 forms to apply for student visas. ECF No. 145 at 96–98. Su and TVU provided these fraudulent documents to students who relied on them to seek visas and who paid tuition with the expectation of being able to study under those visas.

### 1. ***Cleveland*, *Kelly*, and *Ciminelli***

Su's first argument is that her conduct is not within the scope of the mail and wire fraud statutes because the false statements were made to government officials, but the money was obtained from third parties—the students. In order to obtain a conviction, Su believes the government needed to prove that the money or property of the United States was the object of the scheme to defraud. ECF No. 396 at 1–3. She argues that the government attempted to side-step this deficiency by describing her scheme as one to defraud TVU's students of tuition and fees, but that it did not allege facts establishing that students were defrauded. ECF No. 396 at 8. In light of the record just described, Su's argument is plainly incorrect. Nonetheless, the Court examines each of the three Supreme Court cases Su marshals in support of her position.

In *Cleveland v. United States*, the Supreme Court held that the federal mail fraud statute, 18 U.S.C. § 1341, did not reach false statements made in an application for a state license. 531 U.S. 12, 15 (2000). "It does not suffice . . . that the object of the fraud may become property in the recipient's hands; for purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim." *Id.* As such, "[s]tate and municipal licenses in general, and Louisiana's video poker licenses in particular, . . . do not rank as 'property,' for purposes of § 1341, in the hands of the official licensor." *Id.*

Su relied on *Cleveland* in a prior motion brought under 28 U.S.C. § 2255, arguing that fraud to obtain government licenses and certificates does not target the government's interest as a property holder, so such conduct is outside the scope of the mail and wire fraud statutes. *See* ECF

No. 244 at 6, 9, 11. Denying that motion, the Court held that Su was "procedurally barred from presenting her arguments challenging the mail fraud, wire fraud, and visa fraud convictions because she failed to raise them on direct appeal and also fails to demonstrate cause and prejudice to overcome the procedural default." ECF No. 262 at 5. The Court has therefore already found that as to this argument, the requirement that "valid reasons exist for not attacking the conviction earlier" is not met. *Hirabayashi*, 828 F.2d at 604.[2] Su could have raised this argument on direct appeal and showed no cause for failing to do so. And she *did* raise this argument in her Section 2255 motion, which was denied. In any case, *Cleveland* is not applicable because Su was indicted and convicted under a theory that she defrauded noncitizen students, not the government.

Su's present motion seeks another bite at the same apple. She argues that her position is supported by new authority in *Kelly v. United States*, 590 U.S. 391 (2020) and *Ciminelli v. United States*, 598 U.S. 306 (2023). ECF No. 396 at 6. As the government argues, however, each of these cases merely applies *Cleveland* and is in fact far less relevant to Su's claims than *Cleveland* itself. ECF No. 399 at 4.

In *Kelly*, the Supreme Court considered a scheme by New Jersey public officials to punish the mayor of Fort Lee for refusing to support Governor Chris Christie's reelection bid, by decreasing the number of dedicated lanes available for Fort Lee residents commuting into New York City. 590 U.S. at 393. The Court held that while the officials' conduct evinced deception, corruption, and abuse of power, it did not violate the federal statutes governing wire fraud and fraud on a federally funded program or entity. *Id.* This was so because "[b]oth of those laws target fraudulent schemes for obtaining property" and the officials conduct was "an exercise of

[2] Su suggests two possible "valid reasons" for failing to raise her arguments earlier. The first is that she needed time to recover from incarceration at FCI-Dublin and perform legal research. ECF No. 396 at 6. Given that she had earlier filed unrepresented Section 2255 petitions from custody, it is not clear why *release* from custody should have delayed her further. Her incarceration and release also do not explain why her counsel could not have raised these arguments during her trial or on direct appeal. In her reply brief, Su suggests that she received ineffective assistance of counsel. ECF No. 400 at 13. The details she provides in support of her ineffective assistance claim are not compelling. In addition, arguments raised for the first time in reply are improper. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1416 n.12 (9th Cir. 1990). The Court therefore does not consider this to be a "valid reason" for coram nobis purposes. In addition, Su has been unrepresented for some time and could have raised (and in some cases did raise) these arguments earlier on her own—for example, through her Section 2255 petitions.

regulatory power—something this Court has already held fails to meet the statutes' property requirement." *Id*. at 393–94. And the labor of the Port Authority employees used in the scheme "was just the incidental cost of that regulation, rather than itself an object of the officials' scheme." *Id*. at 394. "While a government's right to its employees' time and labor . . . can undergird a property fraud prosecution," it must be "an object of the fraud" rather than "an incidental byproduct of the scheme." *Id*. at 402. Here, the government has never argued that the "time and labor" of its employees were implicated by Su's scheme. ECF No. 399 at 4. Rather, the fraud was not perpetrated against the government at all, but against students paying tuition and fees for an illusory educational program and invalid visas.

In *Ciminelli*, one defendant paid a lobbyist tied to the administration of Governor Andrew Cuomo large annual fees in exchange for his assistance securing major contracts under the governor's upstate development initiative. 598 U.S. at 309–10. The target of the scheme was Fort Schuyler, the nonprofit management corporation that administered the initiative. *Id*. The jury was instructed that it could find that the "defendants harmed Fort Schuyler's right to control its assets if Fort Schuyler was 'deprived of potentially valuable economic information that it would consider valuable in deciding how to use its assets.'" *Id*. at 311. Applying *Cleveland*, the Supreme Court held that because "'potentially valuable economic information' 'necessary to make discretionary economic decisions' is not a traditional property interest, . . . the right-to-control theory is not a valid basis for liability under [Section] 1343." *Id*. Like *Kelly*, *Ciminelli* does not apply here: Su's case does not involve a scheme to conceal information from any victim to secure preferential treatment in contract allocation, nor has the government sought to establish her liability through a violation of its right to control its assets. ECF No. 399 at 5. Su analogizes her conduct to *Ciminelli* because it deprived the government of information useful to its decision-making, but the conviction rested on no such theory—and regardless, the decision-making at issue was not economic in nature. ECF No. 396 at 13.

Su maintains that "the factual allegations show [that] the real object was regulatory approval," because "the central object of the scheme was the maintenance of immigration status, not the acquisition of money as property." ECF No. 396 at 10–11. But while *students* may have

sought immigration status, *Su's* scheme was plainly designed to secure money. And it did so successfully, making her millions of dollars at noncitizen students' expense before she was ultimately halted. ECF No. 262 at 1.

**2. Additional Arguments**

Su also raises two related arguments. First, she argues that the theory upon which she was convicted—that she defrauded noncitizen students of tuition and fees—was unsupported by allegations or evidence that Su made false representations to those students or that they were deceived. ECF No. 396 at 8, 14. The trial evidence, in her view, showed only that the alleged victims "received the educational arrangement that they expected, while taking classes." *Id*. at 14. This objection is groundless. As the Court outlined above, the indictment alleges and trial produced ample evidence of materially false representations inducing students to pay Su tuition and fees for an education they would never receive and for student visas that were in fact invalid. Su also made this argument previously in her Section 2255 motion. She relies on no new caselaw, so the coram nobis requirement that valid reasons exist for not attacking the conviction earlier is again plainly not satisfied.

Second, Su avers that the jury was improperly instructed that "it could convict based on a 'scheme to defraud' without requiring that obtaining money or property from the victim be the objective." ECF No. 396 at 14–15. She points to the Court's instruction requiring the government to prove that "the defendant knowingly participated in, devised or intended to devise a scheme or plan to defraud or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." *Id*. at 16 (citing ECF No. 396-2 at 3). But there was nothing improper about this instruction, which merely *defined* a "scheme or plan to defraud" as one to "obtain[] money or property by means of false or fraudulent pretenses." Contrary to Su's misinterpretation, the jury instructions clearly required the government to prove that the false representations were an intended means to secure money or property. *See generally* ECF Nos. 396-2.

**B. Visa Fraud**

Su finally argues that her visa fraud convictions should be overturned because the Court

instructed the jury that it could convict her of visa fraud based on the use of forged documents. ECF No. 396 at 19–20. She argues that not only were the documents she submitted not "forged," but the indictment also failed to adequately allege that they were. *Id*.

First, this claim is untimely, like Su's other claims. Su offers no explanation why she could not have raised it on direct appeal or in her Section 2255 petition. The merits of her argument rely on cases predating both. *Id*. The failure to put forth "valid reasons exist for not attacking the conviction earlier" is "fatal" to a coram nobis petition. *Matus-Leva*, 287 F.3d at 760.

Second, as the government argues, a conviction for visa fraud under 18 U.S.C. § 1546(a) may be based on either an immigration document that was "forged, counterfeited, altered, or falsely made" or one that was "procured by means of a false claim or statement." *See United States v. Krstic*, 558 F.3d 1010, 1017 (9th Cir. 2009). This is exactly what the Court instructed the jury. ECF No. 396-4 at 2 ("Under the first theory, the Government must prove that, first, the defendant forged or falsely made a document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States. . . . Under the second theory, the Government must prove that first, the defendant knowingly used, attempted to use, possessed, obtained, or received [such] a document" [and] "knew the document to be forged, falsely made, or procured by fraud or unlawfully obtained."). The jury could find the statute satisfied if the immigration documents at issue were "forged," "falsely made," or "procured by fraud."

And the jury was presented with sufficient evidence to convict on the forged documents theory. For each of the four I-20 forms that formed the basis of the four visa fraud counts, witnesses testified that they saw Su sign another TVU employee's name on each form. ECF No. 152 at 99, 100–101, 121, 200–201. A DHS official in charge of certifying schools that bring in foreign students to study and overseeing those students' immigration status testified at trial that the identity of each university "designated school official," or DSO, issuing and signing a Form I-20 is important to the "integrity of the system." ECF No. 145 at 105, 198. By forging signatures material to the validity of the forms, Su made them forgeries under the statute. *See United States v. Price*, 655 F.2d 958, 960 (9th Cir. 1981) (holding that "impersonating another in the signature of an instrument or signing in such a way as to make the writing purport to be that of another are

United States District Court
Northern District of California

. . . acts of forgery" (citations omitted)).

Su also appears to argue that the indictment contained deficiencies related to the visa fraud counts, ECF No. 396 at 20, but the indictment (1) described the same elements of visa fraud that were ultimately provided to the jury, ECF No. 21 at 13; and (2) described Su's conduct as involving both forgery and procurement by fraud. *See id*. at 9 ("Su and others caused TVU student-employees to access DSOs' SEVIS accounts to enter data concerning TVU students, and to create SEVIS entries according to Su's instructions," many of which "contained materially false representations regarding the applicant's residence, means of support, court of study, and purpose of entry, among other things. Su then signed the printed I-20s from SEVIS, sometimes forging the signature of the DSO from whose account the form was printed."). The indictment and jury instructions correctly stated the law and the evidence supported a visa fraud conviction under either the theory that Su forged immigration documents or that she used or possessed such documents procured by fraud.

**CONCLUSION**

Su has identified no error in her conviction warranting coram nobis relief. Her petition is denied.

**IT IS SO ORDERED.**

Dated: August 5, 2026

JON S. TIGAR
United States District Judge